MASSACHUSETTS DEPARTMENT OF CORRECTION

IDENTIFICATION, TREATMENT AND CORRECTIONAL MANAGEMENT OF INMATES
DIAGNOSED WITH GENDER DYSPHORIA

103 DOC 652

TABLE OF CONTENTS

652.01    Definitions ........................................ 2

652.02    Policy ............................................ 5

652.03    Responsibilities of the Gender Dysphoria Clinical
          Supervision Group ................................ 5

652.04    Responsibilities of the Gender Dysphoria Treatment Committee
          .................................................. 6

652.05    Identification and Diagnosis of Inmates with Gender
          Dysphoria ........................................ 7

652.06    Treatment Planning for Inmates with Gender Dysphoria . 9

652.07    Reporting ........................................ 14

652.08    Security Review .................................. 14

652.09    Management and Placement ......................... 15

Attachment A    Gender Dysphoria Mental Health Referral Form .. 17

Attachment B    Internal Housing Risk Assessment ........... ..18


EXHIBIT
2

| MASSACHUSETTS DEPARTMENT OF CORRECTION | DIVISION: HEALTH SERVICES |
|---|---|
| TITLE: IDENTIFICATION, TREATMENT AND CORRECTIONAL MANAGEMENT OF INMATES DIAGNOSED WITH GENDER DYSPHORIA | NUMBER: 103 DOC 652 |

**Purpose:** The purpose of this policy is to establish guidelines for the identification, treatment, and institutional management of inmates diagnosed with Gender Dysphoria.

**References:** M.G.L. Chapter 124, sections 1 (c) and (q)

**Applicability:** Staff                    **Public Access:** Yes

**Location:** DOC Central Policy File/Facility Policy File
Health Services Division Policy File/
Inmate Library

**Responsible Staff for Implementation and Monitoring of Policy:**

- Assistant Deputy Commissioner of Clinical Services
- Director of Behavioral Health
- Mental Health Regional Administrators; Superintendents; Program Directors and Staff of the Contractual Medical, Mental Health, Sex Offender Treatment and Program/Substance Abuse Providers

**EFFECTIVE DATE: 05/19/2016**

**CANCELLATION:** 103 DOC 652 cancels all previous department policy statements, bulletins, directives, orders, notices, rules or regulations regarding Internal Regulations/Policies which are inconsistent with this document.

**SEVERABILITY CLAUSE:** If any part of 103 DOC 652 is for any reason, held to be in excess of the authority of the Commissioner, such decision shall not affect any other part of this policy.

**652.01     DEFINITIONS**

Clinical Supervision Group – The Gender Dysphoria Clinical Supervision Group shall be comprised of all mental health primary care clinicians who are assigned to work with an inmate or inmates diagnosed with Gender Dysphoria, the contractual mental health provider's Psychiatric Medical Director, who may serve as Chair, or appoint a designee as Chair, the contractual Director of Clinical Programs, the contractual Gender Dysphoria Consultant, based upon identified need, and a Department of Correction Health Services representative. Other treatment disciplines (i.e. medical, sex offender treatment or substance abuse treatment) may participate on an as needed basis. The role of the DOC Health Services representative shall be to monitor the Group's activities for contract compliance and to ensure the integrity of the supervision process through direct observation.

DSM-5 – Diagnostic and Statistics Manual of Mental Disorders Fifth Edition (DSM-5). A publication of the American Psychiatric Association (APA), which lists specific criteria that enable a clinician to establish diagnosis of mental disorders. The DSM-5 defines the criteria for Gender Dysphoria listed below. In the case that the DSM-5 is revised, the latest published version of the DSM applies.

Director of Clinical Programs - The contractual mental health provider who is responsible for the administration, management, supervision, and development of mental health programs and delivery of behavioral health services at all Department correctional facilities. The Director of Clinical Programs provides and supervises mental health care services throughout the Department; evaluates patient care and assesses what is required by way of treatment; determines the condition and adequacy of treatment facilities and programs; identifies the need for appropriate equipment; acts as a consultant for physicians and behavioral health care staff; delivers emergency and ongoing direct clinical service; develops and reviews Treatment Plans; and evaluates inmates when clinically indicated.

Gender Dysphoria is defined by the DSM-5 as the following:

A.    A marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months' duration, as manifested by at least two of the following:

1.    A marked incongruence between one's experiences/expressed gender and primary and/or secondary sex characteristics (or in young adolescents, the anticipated secondary sex characteristics).

2.    A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender (or in young adolescents, a desire to prevent the development of the anticipated secondary sex characteristics).

3.    A strong desire for the primary and/or secondary sex characteristics of the other gender.

4.    A strong desire to be of the other gender (or some alternative gender different from one's assigned gender).

5.    A strong desire to be treated as the other gender (or some alternative gender different from one's assigned gender).

6.    A strong conviction that one has the typical feelings and reactions of the other gender (or some alternative gender different from one's assigned gender).

B.    The condition is associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning.

Gender Dysphoria Consultant – The Gender Dysphoria Consultant is an individual who is hired by/subcontracted to the Department of Correction's contractual mental health services provider. The Gender Dysphoria Consultant is Board Certified in Psychiatry and has documented experience in working with a transgender population.

Gender Dysphoria Treatment Committee – The Gender Dysphoria Treatment Committee shall be appointed by the Assistant Deputy Commissioner of Clinical Services of the Department of Correction. The Gender Dysphoria Treatment Committee shall be chaired by the

contractual mental health provider's Psychiatric Medical Director or designee, and other members shall include the contractual Gender Dysphoria Consultant, based on identified need, the contractual Director of Clinical Programs, and the Department of Correction's Director of Behavioral Health. The role of the Director of Behavioral Health shall be to monitor the committee activities for contract compliance and to ensure the integrity of the process through direct observation.

Open/Active Mental Health Case (OMH) Inmate – An inmate who is diagnosed with a mental illness or determined to be in need of mental health intervention on an ongoing basis. At any time during his or her incarceration, an inmate may become an open mental health case (OMH) based on a mental health crisis, including suicidal threats or self-injurious behavior and/or the display of signs and/or symptoms of mental illness or emotional distress. Based upon clinical indications and within the discretion of the Primary Care Clinician in consultation with the site Psychiatrist (if on medication) and/or Mental Health Director, an inmate may also be removed from the active mental health caseload. However, any inmate carrying the Gender Dysphoria diagnosis will remain an open mental health case. In the case that an inmate is suspected to no longer meet the clinical criteria for a Gender Dysphoria diagnosis, approval to change the diagnosis must be granted by the Gender Dysphoria Treatment Committee, with consultation from the contractual Gender Dysphoria Consultant as deemed necessary.

Primary Care Clinician (PCC) – a Qualified Mental Health Professional who is responsible for case management, direct treatment services and the overall mental health care of inmates assigned to his or her caseload while at a Department correctional facility. Annual training specific to diagnosis and treatment for Gender Dysphoria is required for PCCs who treat inmates with Gender Dysphoria.

Primary Care Provider (PCP) – A Qualified Medical Professional, including a medical doctor or advanced practitioner (nurse practitioner or physician assistant).

Program Medical Director – The physician in charge of the Department's medical services.

Psychiatric Medical Director – The physician in charge of the Department's mental health services provider, including Bridgewater State Hospital. The Psychiatric Medical Director is Board Certified in Psychiatry. The Psychiatric Medical Director provides and supervises psychiatric and mental health care services in the correctional setting throughout the Department; evaluates patient care and assesses what is required by way of treatment; determines the condition and adequacy of treatment facilities and programs; identifies the need for appropriate equipment; acts as a consultant for physicians and behavioral health care staff; delivers emergency and ongoing direct clinical service; reviews medical orders for mental health patients; evaluates pharmacy utilization, and develops and reviews Treatment Plans; and evaluates inmates when clinically indicated.

Qualified Mental Health Professional – includes treatment providers who are psychiatrists, psychologists, clinical social workers, licensed mental health counselors, Advanced Practice Registered Nurses, Clinical Nurse Specialists, and others, who by virtue of their education, credentials, and experience, are permitted by law to evaluate and care for the mental health needs of patients.

**652.02    POLICY**

It is the policy of the Massachusetts Department of Correction to appropriately diagnose, treat, and manage inmates with Gender Dysphoria in a humane, safe, correctional environment, sensitive to their unique adjustment issues, consistent with the core values, vision, and mission of the Department and its commitment to provide adequate medical care and mental health services to all inmates in its custody.

**652.03    RESPONSIBILITIES OF THE GENDER DYSPHORIA CLINICAL SUPERVISION GROUP**

A.    Duties

The role of the Gender Dysphoria Clinical Supervision Group is to provide orientation and specialized training to mental health PCCs and other practitioners; to serve as a resource to PCCs as they develop Gender Dysphoria-related specifications to incorporate into an inmate's

individualized Treatment Plan for any inmate who has or may have Gender Dysphoria; to conduct clinical reviews of specific cases; to provide supervision to the PCCs assigned to work with inmates who have Gender Dysphoria; and to provide a forum for the discussion of challenging issues related to Gender Dysphoria. This group shall meet at least monthly or as otherwise determined by the Psychiatric Medical Director or his/her designee.

B.    Supervision

1.    Each Primary Care Clinician (PCC) for an inmate diagnosed with Gender Dysphoria shall meet at least monthly or as scheduled with the Gender Dysphoria Clinical Supervision Group for the purpose of receiving supervision in a group setting regarding the PCC's provision of care to those inmates diagnosed with Gender Dysphoria. Additionally, annual specialized training in the assessment and treatment of Gender Dysphoria is required for all PCCs working with Gender Dysphoria clients.

2.    The Gender Dysphoria Consultant shall routinely be available for consultation to the Gender Dysphoria Clinical Supervision Group. Participation with the Gender Dysphoria Consultant may occur via conference call, in person, or by videoconference.

3.    For those inmates receiving other clinical services, such as substance abuse or sex offender treatment, or who are receiving cross hormonal therapy, it may be appropriate for providers of those services to participate in the Gender Dysphoria Clinical Supervision Group process on an as needed basis, to ensure that integrated and consistent treatment is being provided to the inmate, in which case access to the inmate's relevant treatment records will be made available to them.

**652.04    RESPONSIBILITIES OF THE GENDER DYSPHORIA TREATMENT COMMITTEE**

A.   Duties

1.   The role of the Gender Dysphoria Treatment Committee is to review the individualized Treatment Plans developed for inmates diagnosed with Gender Dysphoria to determine if the proposed treatment recommendations related to the management of Gender Dysphoria are clinically appropriate and medically necessary.

2.   The Gender Dysphoria Treatment Committee shall also be responsible for reviewing the overall treatment of all Gender Dysphoria diagnosed inmates on a quarterly basis.

**652.05   IDENTIFICATION AND DIAGNOSIS OF INMATES WITH GENDER DYSPHORIA**

A.   Provisional Diagnosis

Upon admission to the Department, or at any other time during an inmate's incarceration, if the inmate either self-identifies as meeting the criteria for Gender Dysphoria or is referred secondary to possible Gender Dysphoria, a facility-based Primary Care Clinician (PCC) assigned to the inmate shall evaluate the inmate to determine whether the inmate meets the clinical criteria for a provisional diagnosis of Gender Dysphoria. This diagnosis shall be based, in part, upon a face-to-face evaluation of the inmate and a review of the medical and mental health history, as well as current medical record documentation. For persons returned to the custody of the Department of Correction with a previously confirmed diagnosis of Gender Dysphoria, a new evaluation will not be required unless clinically indicated.

1.   After making this provisional diagnosis, a PCC shall seek the inmate's authorization of the appropriate Releases of Information (ROI) for access to his/her medical and mental health records prior to incarceration and shall place the inmate on the "open mental health (OMH) case" list. For a newly admitted Gender Dysphoric inmate, every effort shall be made to promptly secure medical and mental health records regarding

the delivery of Gender Dysphoria services prior to incarceration, to enhance continuity of care.

2. The PCC will review the case with the site treatment team, including the Mental Health Director and psychiatric providers. If clinically indicated, the inmate will be assigned to the on-site psychiatric provider.

3. The PCC shall inform the Psychiatric Medical Director or designee, Director of Clinical Programs or designee, of the provisional diagnosis of an inmate having Gender Dysphoria, using the Gender Dysphoria Mental Health Referral Form (Attachment A). This written referral from the PCC shall be made upon determination of the provisional Gender Dysphoria diagnosis.

4. In cases where the inmate self-identifies as Gender Dysphoric and the site treatment team does not assess the inmate as meeting the clinical criteria for Gender Dysphoria, the case will be referred to the Psychiatric Medical Director and the Director of Clinical Programs for a subsequent face to face evaluation within thirty (30) calendar days of the referral.

B. Confirmation of Diagnosis

The Psychiatric Medical Director or designee of the mental health service provider shall confirm if the inmate meets the clinical criteria for diagnosis of Gender Dysphoria. This diagnosis shall be based upon, at a minimum, a review of the inmate's medical and mental health record, the referral from the PCC, a consultation with the referring site psychiatrist who has personally assessed the patient, and a face-to-face evaluation of the patient by the Psychiatric Medical Director of the mental health service provider. If there are any concerns with the validity of the Gender Dysphoria diagnosis, the Gender Dysphoria Consultant may be contacted for further evaluation. This decision by the Psychiatric Medical Director regarding an inmate's Gender Dysphoria diagnosis shall be made

within thirty (30) calendar days after the referral has been received from the PCC.

C.    Confirmation of Community Diagnosis

Upon admission to the Department of Correction and verification of prescribed hormones for the treatment of Gender Dysphoria, the Psychiatric Medical Director may designate a PCC to confirm the diagnosis. This designee will be an existing member of the Gender Dysphoria Supervision Group and will have direct experience treating persons with Gender Dysphoria.

**652.06    TREATMENT PLANNING FOR INMATES WITH GENDER DYSPHORIA**

A.    Development of the Gender Dysphoria Treatment Plan:

Following a confirmed Gender Dysphoria diagnosis, the inmate's PCC shall prepare an individualized, initial treatment plan, and/or review and revise an existing treatment plan, which incorporates the diagnosis, along with all other outstanding co-occurring mental health issues.

1.    The PCC shall develop this Treatment Plan in whole or in part with consultation from the Gender Dysphoria Clinical Supervision Group. In addition, the PCC shall also consult with the inmate's treating psychiatrist and any other clinician or practitioner who may provide clinical services to the inmate. The treatment plan should be focused on the inmate's individualized needs based upon the provision of adequate medical care utilizing prudent, professional standards, to include the most current version of the "Standards of Care" set forth by the World Professional Association for Transgender Health (WPATH).

B.    Treatment Plan Review and Approval:

Once the Treatment Plan has been developed, it shall be forwarded to the Gender Dysphoria Treatment Committee for review, to ensure that

all recommendations are clinically appropriate, and taking into consideration the inmate's individualized needs based upon the provision of adequate medical care utilizing the most current version of the standards of care referenced by WPATH. The Gender Dysphoria Treatment Committee may refer the inmate for specialty physician consultations if its members believe that such consultations are advisable.

1. If the Gender Dysphoria Treatment Committee recommends that cross-gender hormone therapy should be added as a component of the individualized Treatment Plan, then the inmate shall be referred and evaluated by the assigned institutional Primary Care Provider (PCP – physician or advanced practitioner). If the site medical PCP does not believe that hormone therapy presents a significant physiological threat or contraindication to the patient for medical reasons, then the PCP shall make a referral to the designated endocrinologist under agreement to the contractual medical services provider.

2. The endocrinologist shall conduct the inmate's assessment for consideration of cross-hormonal therapy as a clinical intervention in the inmate's Gender Dysphoria Treatment Plan and determine the appropriate course of hormonal treatment, when indicated, if no medical contraindications are present. The medical PCP referral to the endocrinologist shall be made no later than thirty (30) calendar days after the medical PCP has made the initial determination that there are no physiological threats or contraindications to cross-gender hormonal therapy.

3. The purpose of the referral to the endocrinologist is to determine the appropriate cross-gender hormone regimen or any medical contraindications to initiating or continuing treatment with cross-gender hormones. Any approved update to an inmate's Treatment Plan shall not include cross-gender hormone therapy as a formal

recommendation until after an endocrinologist has evaluated the inmate and determined that cross hormonal therapy does not present with any medical contraindications.

4. In the event treatment with cross-gender hormonal therapy is medically contraindicated by the endocrinologist, the determination shall be communicated to the Program Medical Director. Any and all follow-up evaluations shall be conducted by the endocrinologist on a periodic basis as clinically indicated. Any inmate refusing to be evaluated by the site PCP and/or the endocrinologist shall not receive cross-gender hormonal therapy due to the potential for clinical ramifications; medical risks involved, and need for expert medical management from an endocrinologist.

C. Essential Elements of the Treatment Plan for Gender Dysphoria Diagnosed Inmates:

1. The goal of Gender Dysphoria-related modifications to the individualized mental health Treatment Plan is to assist the Gender Dysphoria-diagnosed inmate in exploring and managing his/her issues related to Gender Dysphoria as well as any co-occurring mental health disorders.

2. Although individualized, the Treatment Plan for all inmates diagnosed with Gender Dysphoria shall contain, at a minimum, these essential elements:

a. The inmate is offered participation in at least monthly individual psychotherapy provided by the contractual mental health service provider;

b. The Treatment Plan may contain recommendations regarding access to cross-gender clothing and canteen/cosmetic items approved for inmates in accordance with the 103 CMR 403 Inmate Property policy. Commensurate with the security level of

the housing placement, Gender Dysphoria inmates housed in a male institution (Male to Female, or MTF) shall be permitted to purchase and retain clothing items and articles authorized for other male inmates housed in that institution, as well as those items authorized for females commensurate with their particular security level at the female institution. Similarly, Gender Dysphoria inmates housed in a female institution (Female to Male or FTM) shall be permitted to purchase and retain clothing items and articles authorized for other female inmates housed in that institution, as well as those items authorized for males commensurate with their particular security level at the male institutions. Inmates diagnosed with Gender Dysphoria will only be permitted to purchase and retain canteen items that are allowed within the level of security that is commensurate to their housing assignment.

3.  The Treatment Plan shall become effective after the Gender Dysphoria Treatment Committee has developed clinically appropriate and medically necessary treatment recommendations. If an inmate refuses to participate in any or all aspects of the Treatment Plan as it relates to his/her treatment of Gender Dysphoria, this will be documented pursuant to 103 DOC 630.19, and clinically driven modifications will be made to the Treatment Plan.

All inmates diagnosed with Gender Dysphoria shall have their Treatment Plans updated in accordance with the 103 DOC 650 policy. All treatment plans for inmates diagnosed with Gender Dysphoria shall be revised as necessary to reflect changes in treatment recommendations, as appropriate. Such revisions shall be made in consultation with the Gender Dysphoria Clinical Supervision Group and must be approved by the Gender Dysphoria Treatment Committee.

D.    Continuation of Cross-gender Hormonal Therapy upon Admission

Upon admission to the Department, any inmate for whom cross-gender hormonal therapy is currently, lawfully prescribed as part of an established regimen for Gender Dysphoria shall have this cross-gender hormonal therapy continued at the time of receipt into the Department unless a contractual medical services provider determines that such treatment is clinically contraindicated. Cross-gender hormonal therapy as described above shall be continued within the Department until an appropriate treatment plan has been developed by the PCC through consultation with the Gender Dysphoria Clinical Supervision Group, reviewed and approved by the Gender Dysphoria Treatment Committee.

1.    All newly admitted Gender Dysphoria inmates receiving hormone therapy for the management of Gender Dysphoria shall be evaluated by the medical Primary Care Provider (PCP) on-site and then referred to the identified contractual endocrinologist for assessment and continuity of therapy. The endocrinologist determines whether there are any medical contraindications to cross-gender hormone treatment. If no such contraindications exist, the endocrinologist recommends the appropriate medication, dose and route for management with cross-gender hormone therapy. The site Medical Director reviews the endocrinologist's recommendation and either writes a corresponding medical order or documents the rationale for alternative treatment.

2.    A refusal by an inmate to provide a Release of Information (ROI) so that medical and mental health records prior to incarceration may be obtained and reviewed may be cause for discontinuing cross-gender hormonal therapy and for interrupting or tapering the medication(s), within the discretion of the Psychiatric Medical Director. However, regardless of the status of cross-gender hormone therapy, the inmate shall be identified as OMH and continue to receive mental health services on an ongoing basis.

3.    In those instances where the PCC may believe that the inmate is not competent to provide informed consent for treatment, the PCC shall consult with the Psychiatric Medical Director of the mental health service provider. If the inmate is under a guardianship then the PCC will consult with the inmate's attorney/guardian. If the inmate is in need of a guardianship, then the procedures set forth in 103 DOC 650 shall be followed.

**652.07    REPORTING**

A.    Gender Dysphoria Treatment Committee:

1.    The Gender Dysphoria Treatment Committee shall prepare a quarterly report regarding its review of all cases of inmates diagnosed with Gender Dysphoria. The format of this report shall be approved by the Department's Director of Behavioral Health.

2.    The quarterly report of the Gender Dysphoria Treatment Committee shall be submitted within thirty (30) calendar days after the end of the quarter to the Department's Director of Behavioral Health.

3.    The quarterly report shall be reviewed by the Department's Director of Behavioral Health and made available to the Deputy Commissioner of Re-Entry through the Assistant Deputy Commissioner for Clinical Services.

4.    This quarterly report shall be available for review by Department staff and others on a need-to-know basis as determined by the Deputy Commissioner of Re-Entry or Commissioner.

**652.08    SECURITY REVIEW**

1.    In the event that a treatment recommendation is made that may potentially present overwhelming security, safety, or operational difficulties within the correctional environment, the Director of

Behavioral Health shall refer the <u>treatment</u> recommendation to the Deputy Commissioner of the Prison Division and the Deputy Commissioner of Re-entry for a security review. The security review shall take into account the inmate's individual history of incarceration and present circumstances.

2.    In the event that the treatment recommendation is determined to present overwhelming security, safety or operational difficulties, the security review will be forwarded to the Commissioner for final review. If the Commissioner determines that the treatment recommendation presents overwhelming security, safety or operational difficulties, he shall articulate specific and justifiable reasons for the denial of the recommended treatment, based on his overwhelming security, safety and/or operational concerns, in writing. The security review shall be completed within sixty (60) calendar days of the referral from the Director of Behavioral Health.

3.    If the Gender Dysphoria Treatment Committee determines that no clinical alternatives are viable, the Commissioner shall provide articulate, specific and justifiable reasons, in writing, for the denial of the recommended treatment, based on his overwhelming security, safety and/or operational concerns.

**652.09    MANAGEMENT AND PLACEMENT**

Initial Classification and Placement:

A.  At the time of commitment, adjudicated individuals are court ordered into Department of Correction custody and are transported to the reception institution based upon said court order. For all new commitments, an Internal Housing Risk Factor Assessment (Attachment B) is completed and examines issues of risk of victimization and risk of violence/predatory behavior and/or abusiveness. Should an individual identify as Gender Dysphoric or appear to need additional clinical assessment, the process of confirmation will commence as

outlined in 103 DOC 652.05. An assessment will inform housing, work, education, and program assignments and will focus on individual safety. These assessments will occur on a case by case basis and will include security level, criminal and discipline history, medical and mental health assessment of needs, vulnerability to sexual victimization and potential of perpetrating abuse based on prior history. A Gender Dysphoric inmate's own views with respect to his or her own safety shall be given serious consideration. In addition, consideration of specific cases with partial completion of sex reassignment surgery, removal or augmentation of breasts, removal of testicles, etc. shall be evaluated on a case-by-case basis by the Program Medical Director and reported to the Assistant Deputy Commissioner of Classification for consideration of any safety, security and/or operational concerns presented. Consideration of these clinical recommendations should be given by the Department of Correction when making determinations regarding such issues. Final determination as to the most appropriate housing, however, is the responsibility of the Department.

B.  Bi-Annual Review

An Internal Housing Risk Factor Assessment (Attachment B) will be completed at least every six months in collaboration with medical, mental health and correctional professionals to assess ongoing placement for each Gender Dysphoric inmate. This bi-annual review will include a review any threats to safety experienced by the inmate.

C.  Internal Placements

Site mental health directors may provide clinical input as to their clinical recommendations related to housing of an inmate diagnosed with Gender Dysphoria within their respective facility. Consideration of these clinical recommendations should be given by the Department of Correction when making determinations regarding such issues; however, final determination regarding housing placement is the responsibility of the Department and site Superintendent.

D.  Transportation

Inmates diagnosed with Gender Dysphoria will be transported per 103 DOC 530.07 Transportation Policy.

E.  Hygiene

Inmates diagnosed with Gender Dysphoria shall be given the opportunity to shower separately from other inmates per 103 DOC 750.11 Hygiene Standard.

Attachment A

**MASSACHUSETTS DEPARTMENT OF CORRECTION**
**MENTAL HEALTH SERVICES**
**GENDER DYSPHORIA**
**MENTAL HEALTH REFERRAL**
(To be completed by Primary Care Clinician, PCC)

**Inmate Name:** _____    **Date:** _____

**ID Number:** _____    **Facility:** _____

**Primary Care Clinician (PCC):** _____

**Referral Source (if other than PCC):** _____

**Brief Criminal History:**
      **Date of State Incarceration (most recent):** _____
      **Charge(s):** _____
      **Sentence Structure:** _____
      **Anticipated Release Date:** _____

**Brief Psychiatric History (including self-injurious behavior and suicidality):**

**DSM-5 Diagnosis:**

**Other Conditions That May Be a Focus of Clinical Attention:**

**Psychotropic Medications (current):** _____

**Psychiatric Hospital Admissions (include 18(a) to Bridgewater State Hospital or DMH) and Dates:** _____

**History of Self-Injurious and/or Suicidal Behavior:** _____

**History of Gender Dysphoria Diagnosis by Qualified Mental Health Professional:** _____
      **Prior Cross-Gender Hormone Therapy with Dates:**    ☐ **Yes**    ☐ **No**

            **When:** _____
            **Duration:** _____
            **Prescriber:** _____
            **Medication(s) – including drug name, dosage and start date:** _____

            **Pharmacy:** _____
            **Current Name:** _____   **Name Change:** _____

**Diagnostic Impressions (prompting Gender Dysphoria referral):** _____

**Signatures:**
      **PCC:** _____   **Date:** _____
      **Site Psychiatrist:** _____   **Date:** _____
      **Site Mental Health Director:** _____   **Date:** _____

Attachment B

**Massachusetts Department of Correction**
**Internal Housing Risk Factors (Males)**

Inmate Name_____#_____Institution_____

**Risk of victimization**

*To be completed by medical/mental health*

| | |
|---|---|
| 1) Victim of institutional sexual assault | yes/no |
| 2) Mental Disability | yes/no |
| 3) Physical Disability | yes/no |
| 4) Developmental Disability | yes/no |
| 5) History of sexual victimization | yes/no |
| 6) Does offender perceive self as vulnerable | yes/no |
| 7) Is or perceived to be transgender, intersex, Gender Dysphoria, Gay, Bi-sexual, gender non-conforming | yes/no |

*To be completed by the CO/ CPO*

| | |
|---|---|
| 8) Youthful age (21 or younger) | yes/no |
| 9) Elderly (65 +) | yes/no |
| 10) Physical stature (5'6" or less/ less than 140 lbs.) | yes/no |
| 11) First incarceration ever | yes/no |
| 12) Any convictions for sex offense against child or adult including current offense | yes/no |
| 13) Exclusively  non-violent criminal history | yes/no |
| 14) Effeminate presentation | yes/no |
| 15) History of Protective Custody placement | yes/no |

**Risk of Violence/Predatory Behavior**

| | |
|---|---|
| 1) History of institutional sexual abuse on others, as known | yes/no |
| 2) History of domestic violence on others | yes/no |
| 3) Security Threat Group Affiliation | yes/no |
| 4) History of extortions or assault on others in prison | yes/no |
| 5) History of violent offenses | yes/no |

Victim □  Potential Victim □   Unknown □  Aggressor □  Potential Aggressor □   Unknown □

Override to: Victim □  Potential Victim □   Unknown □  Aggressor □  Potential Aggressor □ Unknown □

Rationale if override used_____

Completed by_____Date_____

Override approved/denied_____Date_____

**Reference Guide**

**Vulnerable/Victim identifiers**

1. *Victim of institutional sexual assault (documented):* Check "yes" if there is any formal documentation or admission by the offender that there is a history of being the victim of a sexual assault while incarcerated in any correctional facility as either an adult or juvenile. This will be answered by medical/mental health staff. The CO/CPO should check other sources for validation (i.e. intake forms, IPS, Certified Sexual Assault Investigator/ PREA database) when the response is NO. Yes responses should result in notification to the institutional Certified Sexual Assault Investigator.

2. *Mental Disability:* a substantial disorder of thought, mood, perception, cognition or memory that grossly impairs their judgment, behavior, capacity to recognize reality or meet ordinary demands of life. This question will be answered by medical/mental health staff.

3. *Physical Disability:* any impairment which limits the physical function of limbs or fine or gross motor ability to include impairments which limit other facets of daily living. This question will be answered by medical/mental health staff.

4. *Developmental Disability:* a mental disorder described as mental retardation in the current edition of the DSM-IV which may impair the offender's ability to function in a correctional setting. This question will be answered by medical/mental health staff.

5. *History of institutional sexual abuse on others:* Check "yes" if there is any indication in any source documents that the offender has been sexually abused in any setting. Also check "yes" if the offender self-reports as being sexually abused in any setting. This will be answered by medical/mental health staff.

6. *Does inmate perceive self as vulnerable*: check "yes" if inmate self reports perception of there is any indication in source documents that inmate has self reported in the past.

7. *Is or perceived to be transgender, intersex, Gender* Dysphoria*, Gay, Bi-sexual, gender non-conforming*: as determined and confirmed by medical/mental health staff. This will be answered by medical/mental health staff.

8. *Youthful Age (21 or younger):* Check "yes" if the offender is 21 or younger at the time of the screening based on the inmate's official date of birth. This will default from IMS.

9. *Elderly (65 or older):* Check "yes" if the offender is 65 years or older at the time of the screening based on the inmate's official date of birth. This will default from IMS.

10. *Physical stature (5'6' or less and/or less than 140 lbs)* Check "yes" if the male inmate is 5'6" or less and/or is less than 140 pounds in weight based on the official record , self report or visual assessment. This will default from IMS.

11. *First Incarceration ever:* Check "yes" if the offender is serving their first incarceration of any kind, in state or out of state, adult or juvenile. This will default from IMS when possible otherwise will be answered by the CO/CPO.

12. *Any convictions for sex offense against child or adult including current offense:* Check yes if inmate has any conviction for sex offenses against an adult or a child. This will default from IMS.

13. *Exclusively Non-*Violent Criminal History – Including the current offense check "yes" if inmate's criminal history does not include any convictions for violent offenses. Violent offenses include: murder, manslaughter, vehicular homicide, assault w/I to commit murder, attempted murder, armed robbery, unarmed robbery, carjacking, assault w/DW, armed assault w/I to rob or murder, confining and putting in fear, armed assault in a dwelling, A&B (any type), A&B on a child, A&B DW, assault w/I to commit a felony, mayhem, violation of civil rights, rape adult or child (any type), assault w/i to rape, indecent A&B, unnatural acts w a child, armed burglary,  B&E w/i to assault.

14. *Effeminate presentation:* Check "yes" if the offender presents in an effeminate way and by doing so may result in victimization.  The "effeminate" attribute is limited to males and will be based on the staff's observation of the offender.  This will be answered by the CO/CPO.

15. *History of Protective Custody Placement (adult/juvenile):* Check "yes" if there is a documented history of being placed in a protective custody unit in an adult or juvenile correctional facility. Also check yes if the offender self reports as having been classified as a protective custody offender. This will be answered by the CO/CPO

## Reference Guide

### Violence/Predatory Identifiers
1. *History of institutional sexual abuse on others*: Check "yes" if there is any formal documentation or admission by the offender that there is a history of involvement in institutional sexual predatory behavior. This will default from IMS when it is known otherwise will be answered by the CO/CPO. Yes responses should result in notification to the institutional Certified Sexual Assault Investigator.
2. *History of Domestic Violence on Others*: Check "yes" if inmate has or admits to any prior history for domestic violence on others. 209A violations may be used as an indicator of a domestic violence history. This will be answered by the CO/CPO.
3. *STG (Gang) affiliation: Check* "yes" if inmate has been identified as being a validated member of a security threat group; self reports being an active member of a street gang or security threat group as indicated in IMS or when documentation exists that the inmate is likely a member of a security threat group. This will default from IMS but should be validated through other source documents if needed by the CO/CPO.
4. *History of Extortion/assaults in prison:* Check "yes" if inmate has or admits to a history of extortion of other offenders or assaulting staff or other inmates. This will be default from IMS when possible but will be answered by the CO/CPO.
5. *History of Violent Offenses (adult and juvenile):* including current offense, check "yes" if inmate has any convictions for a violent felony. This will default from IMS when possible but will be answered by the CO/CPO.

## Override Rules

Once a designation(s) has been determined, the screener should consider the accuracy of that designation. The screener, having knowledge of the inmate and/or the inmate's history should be confident in the designation. In cases where the designation is questioned, the screener may choose to have the housing risk assessment reviewed by the Deputy Superintendent of Classification and Treatment for a possible override of the designation to a different category. The rationale for that type of action needs to be documented. For example, some inmates may have the characteristics of a victim yet when observed; victimization is not likely to occur perhaps based on the offender's ability to adapt to the prison environment.

### Cell Assignment Rules
- Staff responsible for cell/room assignments shall consult the Internal Housing Designation Risk Factor information prior to making a cell/room assignment.
- Staff shall not place known or potential victims with known or potential predators
- Inmates not identified in either category can be housed with anyone including those identified as a known victim or predator
- Staff shall also review for enemy issues prior to making any housing assignments
- Staff shall consider matching other factors such as length of sentence, age, medical and mental health issues, size and weight as matching these characteristics may result in a positive housing situation.

**FEMALE INTERNAL HOUSING RISK FACTORS**

Inmate Name_____#_____Institution_____

**Risk of victimization**

*To be completed by medical/mental health*

1.  Victim of institutional sexual assault                                yes/no
2.  Mental disability                                                      yes/no
3.  Physical disability                                                    yes/no
4.  Developmental disability                                               yes/no
5.  History of sexual victimization                                        yes/no
6.  Does offender perceive self as vulnerable                             yes/no
7.  Is or perceived to be gay, lesbian, bisexual, transgender, intersex, gender nonconforming or
    gender dysphoria                                                       yes/no


*To be completed by the CO/ CPO*

8.  Youthful age (25 or younger)                                          yes/no
9.  Elderly (60 or older)                                                 yes/no
10. Small in physical stature (less than 110lbs)                          yes/no
11. First incarceration/confinement ever                                 yes/no
12. Conviction for sex offense against an adult or child                  yes/no
13. Exclusively non-violent criminal history                             yes/no

**Risk of abusiveness**

1.  History of institutional sexual abuse toward others, as known         yes/no
2.  History of institutional violence, as known                          yes/no
3.  History of sexual abuse or sexual assault toward others              yes/no
4.  History of violent offense                                           yes/no

Victim □  Potential Victim □   Unknown □  Aggressor □  Potential Aggressor □  Unknown □

Override to: Victim □ Potential Victim □   Unknown □  Aggressor □  Potential Aggressor □ Unknown □

Rationale if override used_____

Completed by_____Date_____

Override approved/denied_____Date_____

January 2017                                                                   652-      22

## Reference Guide

**Risk of Victimization**

16. *Victim of institutional sexual assault*: Check "yes" if there is any formal documentation or admission by the offender that there is a history of being the victim of a sexual assault while incarcerated in any correctional facility as either an adult or juvenile. This will be answered by medical/mental health staff.

17. *Mental Disability*: A substantial disorder of thought, mood, perception, cognition or memory that grossly impairs their judgment, behavior, capacity to recognize reality or meet ordinary demands of life. This question will be answered by medical/mental health staff.

18. *Physical Disability*: Any impairment which limits the physical function of limbs or fine or gross motor ability to include impairments which limit other facets of daily living. This question will be answered by medical/mental health staff.

19. *Developmental Disability*: A mental disorder described as mental retardation in the current edition of the DSM-IV which may impair the offender's ability to function in a correctional setting. This question will be answered by medical/mental health staff.

20. *History of Sexual victimization:* Check "yes" if there is any indication in any source documents that the offender has been sexually abused in any setting. Also check "yes" if the offender self-reports as being sexually abused in any setting. This will be answered by medical/mental health staff.

21. *Does offender perceive self as vulnerable*: Check "yes" if offender self reports perception of vulnerability or if there is any indication in source documents that inmate has self reported in the past. This will be answered by medical/mental health staff.

22. *Is or is perceived to be, gay, lesbian, bisexual, transgender, intersex, gender nonconforming or gender dysphoria:* As determined and confirmed by medical/mental health staff. This will be answered by medical/mental health staff.

23. *Youthful Age (25 or younger):* Check "yes" if the offender is 25 or younger based on the inmate's official date of birth. This will default from IMS.

24. *Elderly (60 or older):* Check "yes" if the offender is 60 years or older based on the inmate's official date of birth. This will default from IMS.

25. *Small Physical stature: (less than 110 lbs):* Check "yes" if the female offender is less than 110 pounds in weight based on the official record, self report or visual assessment. This will default from IMS

26. *First Incarceration/confinement ever:* Check "yes" if the offender is serving their first incarceration/confinement of any kind, in state or out of state, adult or juvenile, H/C, awaiting trial or civil commitment. This will default from IMS when possible otherwise will be answered by the CO/CPO.

27. **Conviction for sexual assault on adult or child**: Check "yes" if inmate has any **conviction** for sex offenses against an adult or a child. This will default from IMS when possible otherwise will be answered by the CO/CPO.

28. **Exclusively non-violent criminal history**: Check "yes" if criminal history does not include any violent offenses (regardless of disposition). Violent offenses include: murder, manslaughter, vehicular homicide, assault w/I to commit murder, attempted murder, armed robbery, unarmed robbery, carjacking, assault w/DW, armed assault w/i to rob or murder, confining and putting in fear, armed assault in a dwelling, A&B (any type), A&B on a child, A&B DW, assault w/i to commit a felony, mayhem, violation of civil rights, rape adult or child (any type), assault w/i to rape, indecent A&B, unnatural acts w a child, armed burglary, B&E w/i to assault. This will default from IMS when it is known otherwise will be answered by the CO/CPO.

## Risk of Abusiveness

6. **History of institutional sexual abuse toward others**: Check "yes" if there is any formal documentation or admission by the offender that there is a history of involvement in institutional sexual aggressive behavior. This will default from IMS when it is known otherwise will be answered by the CO/CPO.

7. **History of Institutional Violence**:.Institutional violence is normally captured in category 1 or category 2 DOC disciplinary reports or other incident or disciplinary reports if occurred in another jurisdiction. This will default from IMS when it is known otherwise will be answered by the CO/CPO.

8. **History of sexual abuse or sexual assault toward others**: Check "yes" if criminal history includes charges (regardless of disposition) for rape- child or adult (any type), assault w/i to commit rape, indecent assault and battery or unnatural acts with a child. Additionally, if during the interview the offender admits to sexual abuse or sexual assault on others for which no charges were sought a "yes" response is appropriate. This will be answered by the CO/CPO.

9. **History of violent offense**: Check "yes" if criminal history includes charges (regardless of disposition) for a violent offense. Violent offenses include murder, manslaughter, vehicular homicide, assault w/i to commit murder, attempted murder, armed robbery, unarmed robbery, carjacking, assault w/dw, armed assault w/i to rob or murder, confining and putting in fear, armed assault in a dwelling, A&B (any type), A&B on a child, A&B DW, assault w/i to commit a felony, mayhem, violation of civil rights, rape adult or child (any type), assault w/i to rape, indecent A&B, unnatural acts w a child, armed burglary, B&E w/i to assault. This will be answered by the CO/CPO.

## Override Rules

Once a designation(s) has been determined, the screener should consider the accuracy of that designation. The screener, having knowledge of the offender and/or the offender's history should be confident in the designation. In cases where the designation is questioned, the screener may choose to have the housing risk assessment reviewed by the Deputy Superintendent of Classification and Treatment for a possible override of the designation to a different category. The rationale for that type

of action needs to be documented. For example, some offenders may have the characteristics of a victim yet when observed; victimization is not likely to occur perhaps based on the offender's ability to adapt to the prison environment.

**Cell Assignment Rules**

- Staff responsible for cell/room assignments shall consult the Internal Housing Designation Risk Factor information prior to making a cell/room assignment.

- Staff shall not place known or potential victims with known or a potential aggressor.

- Inmates not identified in either category can be housed with anyone including those identified as a known victim or aggressor.

- Staff shall also review for enemy issues prior to making any housing assignments

- Staff shall consider matching other factors such as length of sentence, age, medical and mental health issues, size and weight as matching these characteristics may result in a positive housing situation.

Victim if yes to question 1. Potential victim if yes to 4 or more victimization identifiers (2-13). Status unknown if yes to 3 or less victimization identifiers.

Aggressor if yes to question 1. Potential aggressor if yes to 2 or more abusiveness identifiers (2-4). Status unknown if yes to 1 or zero identifiers.