103 CMR 420: DEPARTMENT OF CORRECTION

103 CMR 420:    CLASSIFICATION

Section

420.01   Purpose
420.02   Statutory Authorization
420.03   Cancellation
420.04   Applicability
420.05   Access to Regulations
420.06   Definitions
420.07   Classification System Goals and Objectives
420.08   Initial Classification Process
420.09   Reclassification Reviews and Hearings
420.10   Department Review Board
420.11   Time Limits
420.12   Inmate Transfer
420.13   Audits
420.14   Inmates Held In Other Jurisdictions
420.15   Emergency
420.16   Responsible Staff
420.17   Annual Review
420.18   Severability

420.01   Purpose

> The purpose of 103 CMR 420 is to establish rules and procedures which govern the Department of Correction (DOC or Department) inmate classification system. 103 CMR 420 is not intended to confer any procedural or substantive rights or any private cause of action not otherwise granted by state or federal law.

420.02   Statutory Authorization

> 103 CMR 420 is issued pursuant to M.G.L. c. 124, §§ 1 (c), (f), (g), (q) and M.G.L. c. 127, §§ 20, 49A, 97 and 97A.

420.03   Cancellation

> 103 CMR 420 cancels all previous DOC policy statements, bulletins, directives, orders, notices, rules or regulations regarding inmate classification.

420.04   Applicability

> 103 CMR 420 is applicable to all DOC employees and to all criminally sentenced inmates housed within the Massachusetts DOC unless/or otherwise noted.

420.05   Access to Regulations

> 103 CMR 420 shall be maintained within the Central Policy File of the DOC and will be accessible to all DOC employees. A copy of the 103 CMR 420 shall also be maintained in each Superintendent's Central Policy File and at each inmate library. Internet access for this regulation can be obtained at: http://www.mass.gov/eopps/law-enforce-and-cj/prisons/doc-policies.

420.06   Definitions

> **Assistant Deputy Commissioner of Reentry** – A senior level manager who reports to the Deputy Commissioner of Clinical Services and Reentry, and is responsible for ensuring policy compliance and standardization of procedures in such areas as classification, date computation, victim services, inmate records, inmate programs & reentry, and inmate training & education.

December 1, 2017              EXHIBIT 4              103 CMR 420 - 1

Business Day – Any day except Saturday, Sunday, or a Massachusetts legal holiday.

CJIS/LEAPS – Nation-wide computer details of any outstanding warrant entered by the agency holding the warrant.

Classification Board – A committee of three (3) DOC employees which makes recommendations concerning an inmate's custody level and program participation.

Commissioner – The chief executive officer of the DOC.

Commissioner's Designee – A DOC manager who is authorized by the Commissioner to review classification board recommendations and to render final decisions for the Commissioner as the Commissioner's designee.

Correctional Program Officer (CPO) – The staff person at an institution who, when assigned classification duties, collects information obtained through inmate interviews and available casework records, and who prepares a summary of this information for classification. A CPO is also responsible for monitoring an inmate's participation and compliance with a personalized program plan or program recommendations and facilitates reentry preparation.

Custody Level – The level of risk posed by an inmate to the safety and security of the institution and the public as determined by the Objective Classification Score and any applicable restriction(s) or override(s).

Departmental Disciplinary Unit (DDU). A restricted area or areas designated by the Commissioner to which an inmate has been sentenced by a special hearing officer.

Departmental Review Board – A classification board appointed by the Commissioner or designee to review an inmate's case history and program needs and to make recommendations to the Commissioner or designee regarding the inmate's classification in unusual or complex situations.

Deputy Commissioner of Clinical Services and Reentry – A Department Deputy Commissioner whose duties include, but are not limited to, the management of the Classification Division, Inmate Education and Training Division, Reentry and Program Services Division, and the Health Services Division.

Emergency – A threat to the safety, security or orderly administration of an institution or to the safety or security of staff, inmates, or other persons.

Higher Security Transfer – The transfer of an inmate to an institution that is more secure than the institution from which the inmate is being transferred. A transfer to an out of state or federal facility shall be considered a higher security transfer.

Inmate Management System (IMS) – The DOC's automated information system that provides processing, storage and retrieval of inmate-related information needed by DOC personnel and other authorized users within the criminal justice system.

Institution – Any facility within which a Massachusetts state-sentenced inmate may be incarcerated, including, but not limited to, a state or county correctional facility, a federal or other state's correctional facility, the Bridgewater State Hospital, and the Massachusetts Treatment Center.

Institutional Director of Classification – The staff person at an institution who has been designated to oversee the classification process and implementation of 103 CMR 420 at the institution level.

Internal Classification Status Review – A periodic review conducted by a CPO and subject to review by the Institutional Director of Classification.

Needs Assessment - The identification, evaluation, and estimation of criminogenic needs of an inmate and the identification of appropriate programming and placement to address those criminogencic needs areas.

<u>Objective Point Base Classification Operational Manual</u> – A training manual with operational definitions and instructions. The Operational Manual is used to assist staff in applying the classification criteria and appropriately scoring the variables and any applicable overrides and/or restrictions.

<u>Objective Point Base Classification System</u> – The standardized evaluation and custody assignment of an inmate based on objectively defined criteria. The criteria are weighed, scored, and organized into a valid and reliable classification instrument accompanied by an operational manual for applying the instrument to inmates in a systematic manner.

<u>Official Version (OV)</u> – A statement of the facts upon which the inmate's sentence was based.

<u>Override</u> – A departure from a scored custody level, based on the professional judgment of trained staff. Overrides are contained in the Male and Female Objective Point Base Classification Manuals.

<u>Personalized Program Plan</u> – A plan that charts the course of action for the inmate, the CPO, and the service providers on addressing the criminogenic needs of the inmate, progress made, and compliance issues. The plan begins at intake and is continuously updated based on the inmate's risk, needs assessment, if applicable, and record review including but not limited to any secondary assessment.

<u>Receiving Institution</u> – The institution to which an inmate will be transferred upon approval by the Commissioner or designee.

<u>Reception Center</u> – The institution to which the inmate is initially committed.

<u>Reclassification</u> – Any and all classification processes that occur after initial classification.

<u>Restriction</u> – A departure from a scored custody level, based on DOC's practices of restricting or limiting the custody level of certain inmates. Staff do not have the authority to disregard restrictions. Restrictions are contained in the Male and Female Objective Point Base Classification Manuals.

<u>Risk Assessment</u> - The identification, evaluation, and estimation of the levels of criminogenic risk factors which are characteristic of an inmate or his/her situation which then assist in predicting future criminal behavior .

<u>Security level</u> – The degree of security afforded by the architectural and staffing attributes of the institution and housing units within that institution.

<u>Sending Institution</u> – The institution from which an inmate will be transferred upon approval by the Commissioner or designee.

<u>Secure Treatment Unit</u> - A maximum security residential treatment program designed to provide an alternative to Segregation for inmates diagnosed with SMI who cannot be housed in general population due to safety and/or security concerns. The Department currently operates two STUs: the Secure Treatment Program (STP) and the Behavioral Management Unit (BMU). The Department also operates RTUs which are not deemed STUs because the Department operates them as general population units.

<u>Superintendent</u> – The chief administrative officer of an institution or a county correctional institution.

<u>Telephone Interpreter Service</u> – A service contracted by the DOC to provide over-the-phone interpretation services to non-English speaking inmates.

<u>Transfer</u> – The act of moving an inmate from one institution or security level to another institution or security level upon approval by the Commissioner or designee. An inmate's movement to an out of state or federal facility shall be considered a transfer for purposes of 103 CMR 420.

420.07    Classification System Goals and Objectives

The primary goals of the Massachusetts DOC classification process are to promote public safety and the responsible reintegration of inmates. To achieve these goals, the classification process shall objectively assess the inmate's custody requirements and programmatic needs and match those to the appropriate security level in a manner that

minimizes the potential for escape, prison violence, and inmate misconduct. In doing so, the DOC will incorporate the following objectives:

A. Rationally use a reliable, validated set of variables to support classification decisions.
B. Place inmates in the level of security required to ensure protection of the public, correctional staff, themselves, and other inmates.
C. Promote, successful reintegration to a law abiding and productive community life.
D. Involve inmates in determining individualized appropriate goals.
E. Establish a fair and equitable mechanism for inmates to appeal classification recommendations.
F. Maximize the use of factual and quantifiable data to make decisions and to facilitate research.
G. Share information with other criminal justice agencies for the purpose of enhancing public safety.
H. Establish both centralized and decentralized quality control, monitoring and evaluation of the classification process to ensure that it continues to meet its primary goals and these stated objectives.

420.08    Initial Classification Process

A. Upon commitment to the DOC, each inmate shall be admitted to a Reception Center or assigned by the Commissioner or designee to an institution where the inmate shall undergo an initial classification process. The process shall provide an opportunity for the Reception Center staff members to become acquainted with each inmate through individual assessment, testing, and structured interviews. In instances where language barriers exist, the Telephone Interpreter Service shall be used, and its use documented. Moreover, hearing impaired inmates may request a hearing impaired interpreter pursuant to the procedures set forth in 103 DOC 408 Special Accommodations for Inmates, available at http://www.mass.gov/eopss/law-enforcement-and-cj/prisons/doc-policies. The initial classification process shall normally be completed within four (4) weeks of admission except in unusual circumstances which may include, but are not limited to:

1. Lack of data necessary to conduct the hearing (i.e. problems with mittimus, inmate sentence listing with date calculation, OV, CJIS checks, and adjustment information on prior incarcerations/awaiting trial);
2. Intervening medical/mental health placement;
3. Female inmates waiting to complete the First Step Program at MCI-Framingham.

In cases where the initial classification has been delayed, a board shall be scheduled as soon as possible, but no later than ninety (90) days from admission when the board shall proceed on the basis of all available information.

B. Case Preparation. The CPO shall review all classification information compiled in the IMS database, consult with key staff members, when appropriate, and review other records as necessary, including the six-part folder, pre-sentence summary reports, the OV, and prior incarceration records, to compile the information required for initial classification. Information used for classification shall be reviewed, entered or updated as necessary. The CPO shall complete the appropriate Objective Point Base Classification Form, which involves the scoring of classification variables and the identification of potential overrides or restrictions. A risk assessment shall be completed by designated staff for male inmates serving a sentence of more than one (1) year and female inmates serving a sentence of more than 90 days as part of the initial classification process. Designated staff need only complete the criminal history section of the risk assessment for inmates serving a nonparoleable life sentence. A new assessment shall not be required for parole violators released from custody for less than a six (6) month period.

C. Initial Classification Hearing. An inmate shall be scheduled for an initial classification hearing by the institutional Director of Classification or designee. Prior to the hearing, the inmate shall be interviewed by the assigned CPO to discuss pertinent aspects of the inmate's case. The discussion shall include, but not be limited to, the inmate's custody status, the inmate's version of the crime, the objective point base classification score including possible restrictions or overrides, and the classification appeal process. A classification board shall be convened to make recommendations to the Commissioner or designee concerning an inmate's placement. The following standards shall be adhered to regarding the initial classification process:

1. Board Membership. All classification boards shall be comprised of three (3) DOC staff members appointed by the Superintendent or designee. One (1) board member shall be selected by the

Superintendent to act as Chairperson, and shall be responsible for the overall quality of the review process and for ensuring compliance with existing classification policies and procedures, in accordance with M.G.L. c. 127 § 20. Chairpersons shall normally be in a supervisory position. All chairpersons must complete a specialized training program prior to being assigned chairperson responsibilities.

In an institution designated by the Commissioner as maximum or medium custody, one (1) member shall be a Correction Officer. In an institution designated by the Commissioner as minimum or pre-release custody, one (1) member shall be an employee whose primary role includes security responsibilities.

Members of a Department Review Board (as described in 103 CMR 420.10) shall be appointed by the Commissioner or a designee.

2. **Legal Representation.** Whenever an inmate could be considered for an increased custody level, except at initial classification, the inmate may be represented by an attorney or law student at that hearing. A legal representative shall be allowed a request to reschedule so long as the request does not cause undue delay or is otherwise unreasonable. The legal representative may only make a statement on behalf of the inmate. The legal representative shall be directed by the chairperson to leave the hearing room with the inmate when the board deliberates and votes on the case.

3. **Notice of Hearing.** The inmate shall be provided with at least forty-eight (48) hours advance written notice of the scheduled classification hearing. Notice shall be documented and may be waived by the inmate in writing.

4. **Case Presentation.** The inmate's assigned CPO shall make a comprehensive oral presentation to the classification board, utilizing information compiled during the case preparation while focusing on the inmate's objective classification score and any applicable restriction(s) or override(s), as outlined in the Objective Classification Operational Manual.

5. **Inmate Presentation.** Following the CPO's presentation, the inmate shall appear before the classification board. In an effort to promote responsible reintegration and aid in the reentry process, inmates are expected to attend and participate in every classification hearing. The classification hearing allows for discussions regarding the objective point base classification score and applicable restrictions or overrides, adjustment issues, program goals and institution requests. In the event that the inmate is unable or unwilling to attend the classification board hearing, the Chairperson of the board shall, in the absence of justifiable reasons for the inmate's failure to attend, proceed with the hearing. Hearings held in absentia shall be documented in IMS as such.

6. **Classification Board Recommendation.** Once all relevant information is presented to the classification board, the Chairperson shall direct the inmate to leave the hearing room so that the board may deliberate. The board shall utilize the scored custody level and any applicable restriction or override in its final recommendation to the Commissioner or designee concerning the inmate's placement and programming within the correctional system. The final recommendation shall be determined by a majority vote. Each board member, including the Chairperson, shall have one (1) equal vote. The board's recommendation and rationale, as well as reasons, if any, for a minority vote shall be recorded. Further, any use of a restriction or override must be noted and a rationale provided for any override. The inmate shall normally be called back into the hearing room and verbally notified of the board's recommendation and thereafter in writing by receiving a copy of the decision page of the Classification Report. The recommendation will include the date of reclassification. The reclassification date will be one (1) year after the date of the hearing unless an override was used in which case the reclassification date will be six (6) months after the date of the hearing. This will be the inmate's next scheduled classification unless an earlier classification is deemed appropriate by the classification board or institutional Director of Classification. The recommendation and related materials should be submitted for quality assurance to the institutional Director of Classification or designee and then to the Commissioner or designee normally within ten (10) business days after the hearing.

7. **Quality Assurance.** All classification board recommendations shall undergo a quality assurance process which involves a review by the Institutional Director of Classification or designee (the

designee must not have been a member of that classification board) who shall review the report for completeness and accuracy. In the event that any data is found to be incomplete or inaccurate, the report shall be returned to the assigned CPO for correction. Further, any incomplete or inaccurate data in any source screen that contributes information to the classification report must be promptly reported and corrected. Once the quality assurance has been completed, the report will be forwarded to the Commissioner or designee.

8. Inmate Appeal. Where an inmate disagrees with the classification board recommendation; supports a recommendation made or waives the appeal process, the inmate or a legal representative shall submit an Inmate Placement Request/Appeal Form within five (5) business days of written notification of the board's recommendation. The Inmate Placement Request/Appeal Form shall be provided to inmates at the conclusion of every classification hearing or review. The Inmate Placement Request/Appeal Form will not be accepted after five (5) business days have elapsed unless otherwise approved by the Institutional Director of Classification or designee. Upon receipt of the Inmate Placement Request/Appeal Form, the CPO shall enter the information into IMS.

9. Commissioner or Designee Review. The Commissioner's designee shall review the classification information to include the objective point base classification score and applicable restrictions or overrides, and any Inmate Placement Request/Appeal submitted. The Commissioner or designee shall utilize the scored custody level and any applicable restrictions or overrides to render a final placement decision, but is not limited to consideration of same. The goal in each case is to render a decision within twenty (20) business days. Institutional personnel shall notify the inmate of the final decision by providing a copy of the decision page to the inmate. The decision of the Commissioner/designee is final and cannot be appealed.

10. Staff signatures. Staff signatures are documented via electronic signatures.

11. Decision Modifications. Classification hearing transfer decisions may be modified by the Commissioner or designee only in the following instances:

    a. The inmate's medical/mental health cannot be met at the receiving facility;
    b. The existence of an inmate or staff conflict;
    c. The inmate's refusal to transfer;
    d. Where a modification would result in an equal or lesser custody level.

    Modifications must be made as soon as the need for modification is known, but no later than sixty (60) business days after an inmate's transfer. Institutional personnel shall notify the inmate of the modification by providing a copy of the decision page to the inmate.

420.09    Reclassification Reviews and Hearings

    A.    Frequency:
        1. The reclassification process begins with an Internal Classification Status Review, which shall be completed at least annually for each inmate by a CPO.

        2. Inmates housed in the DDU, or a secure treatment unit while serving their DDU sanction, shall receive an Internal Classification Status Review within fourteen (14) days of admission and approximately sixty (60) days prior to their projected discharge in addition to the annual Internal Classification Status Review.

        3. Classification Schedule for Minimum and Pre-Release. All inmates transferred to minimum or pre-release security shall have an Internal Classification Status Review completed within fourteen (14) days of admission.

        4. Inmates with Parole Reserve Dates. Any inmate who receives a parole reserve date contingent upon completing a specified time in a lower level of security shall be reviewed in accordance with 103 CMR 420.08(A) and (D)(1) through (11).within thirty (30) days of receipt of the Parole Board's decision.

5. Inmates diagnosed with Gender Dysphoria shall be classified in accordance with 103 DOC 652.

6. <u>Request for an Early Reclassification Review Date</u>. An inmate may request a hearing or review earlier than scheduled by submitting a written request to the Institutional Director of Classification or designee at the institution in which the inmate is housed. This request should include the reason for the request and any other pertinent information. Upon receipt of such a request, the Institutional Director of Classification or designee shall review pertinent information, and make a recommendation to the Superintendent or designee whether or not an earlier reclassification hearing is warranted. The inmate shall be informed of the Superintendent or designee's decision in writing by institutional personnel.

B. Process:

The CPO periodically reviews the inmate's custody level and compliance with the personalized program plan through the Internal Classification Status Review process, as described herein:

1. The CPO shall do the following as part of an Internal Classification Status Review:

   a. Update the inmate's Objective Point Base Classification Form;
   b. Verify the receipt of all documents per 103 DOC 417, <u>Criminal History Records Information</u>, OV, and adjustment information on present and, when applicable, prior incarcerations/awaiting trial;
   c. Review the inmate's criminal history as updated by Criminal History Records Information staff in accordance with the 103 DOC 417.00 <u>Criminal History Records Information</u>, available at: http://www.mass.gov/doc/policy;
   d. Review work and housing evaluations, disciplinary history, and segregation placements;
   e. The assigned CPO shall complete a risk/needs assessment for each inmate who scores moderate or high in either the Risk of Violence or Risk of Recidivism scale. The risk/needs assessment shall be completed upon transfer from the reception center during orientation at the receiving facility.
   f. Review and update (if applicable) the inmate's personalized program plan and the inmate's compliance with same. An inmate's personalized program plan shall be reviewed within fourteen (14) days of admission at Minimum and Pre-Release and every six months thereafter. A review of the personalized program plan shall also occur sixty (60) days prior to an inmate's release

2. <u>Scheduling Reclassification Board Hearings</u>.

   If a review of the inmate's objective classification form and factors noted in 103 CMR 420.09 (A) and (B), indicates the need for a transfer (higher, lower or lateral), the Institutional Director of Classification or designee shall schedule a classification hearing by a three (3) person board in accordance with 103 CMR 420.08(A) and (C)(1) through (11). Once this classification hearing by a three (3) person board has been scheduled, the reclassification process shall follow the process in accordance with 103 CMR 420.08.

3. <u>Recommendations and Reclassification Dates</u>.

   The CPO shall make recommendations and enter the results of the Internal Classification Status Review into IMS. The Institutional Director of Classification or designee shall approve, modify or deny recommendations made by the CPO and the next reclassification date will be established which shall not exceed six (6) months where a discretionary override was used; and one year in all other cases. Shorter reclassification dates should be established for inmates when it is anticipated that their status may change; and for those inmates approaching parole and/or release. The inmate shall be notified verbally of the Internal Classification Status Review results and thereafter in writing by receiving a copy of the decision page.

C. <u>Inmate Appeal.</u>

Where an inmate disagrees with the CPO Recommendation, supports a CPO Recommendation made, or waives the appeal process, the inmate or legal representative shall complete the Inmate Placement Request/Appeal Form, and shall submit the completed Form to the inmate's assigned CPO within five (5) business days of written notification of the review results. The Inmate Placement Request/Appeal Form shall not be accepted after five (5) business days have elapsed unless otherwise approved by the Institutional Director of Classification or designee. Upon receipt of the Inmate Placement Request/Appeal Form, the CPO shall enter the information into IMS. The Superintendent or designee (the designee shall not be the Institutional Director of Classification) shall be the reviewing authority for appeals of Internal Classification Status Reviews. His/her decision is final and cannot be appealed.

D. Pre-Classification Transfer.

An initial or reclassification hearing shall normally occur before an inmate's transfer. Inmates may be transferred prior to a classification hearing whenever:

1. an inmate is being investigated for possible disciplinary offenses;
2. an inmate is charged with a disciplinary offense;
3. an inmate is found guilty of a disciplinary offense;
4. security issues exist;
5. an inmate fails to meet preconditions of the current placement;
6. an inmate has a change in medical or mental health status; or
7. otherwise as deemed necessary or appropriate by the Commissioner or designee.

Pre-Classification transfers shall be approved by the Commissioner or designee prior to their occurrence. The receiving institution shall be responsible for conducting a hearing in accordance with 103 CMR 420.08(A) and (B), which shall normally be held within twenty (20) business days of such a transfer. However, where an investigation is pending or necessary information is otherwise unavailable due to ongoing administrative processes, the hearing may be postponed until completion of the pending matter. In cases where the hearing has been delayed, a hearing will be scheduled as soon as possible, but no later than ninety (90) days from transfer when the board shall proceed on the basis of all available information.

420.10   Department Review Board

All Department Review Boards shall be held in accordance with 103 CMR 420.08 and 103 CMR 420.09.

420.11   Time Limits

A. All procedural time limits set forth in 103 CMR 420 are directory and may be waived by the Superintendent or the Commissioner or their designees.

B. Initial classification and reclassification may be delayed when:
1. an inmate is on remand status;
2. an inmate is being held on an Interstate Agreement on Detainers (IAD);
3. an inmate is admitted to an infirmary or hospital;
4. an inmate is awaiting medical clearance
5. an inmate is admitted to a state hospital or the Massachusetts Treatment Center.
6. an inmate is awaiting action on SMU status

C. The CPO must review the inmate as soon as the above conditions no longer apply or interfere with classification. IMS should be used to track and monitor inmate review dates.

420.12   Inmate Transfer

Whenever an inmate has been approved for transfer through the appropriate classification process, the inmate shall be transferred in accordance with 103 DOC 461, Inmate Transfer, available at: http://www.mass.gov/doc/policy. Nothing in 103 CMR 420 is intended to limit, in any way, the discretion of the Commissioner to transfer an inmate pursuant to M.G.L. c. 127, § 97A.

420.13   Audits

    The Assistant Deputy Commissioner of Reentry or designee will be responsible for conducting regular audits of the classification system. These audits shall include, at a minimum, the override rate, accuracy of IMS generated review dates,, appeals and personalized program plan.

420.14   Inmates Held in Other Jurisdictions

    A.    State inmates being held in out of state or federal facilities shall be reviewed in accordance with the classification procedures and guidelines of the jurisdictions in which they are being held.

    B.    State inmates held in county facilities in Massachusetts may be reviewed in accordance with the classification procedure and guidelines of the jurisdiction in which they are being held or shall be reviewed in accordance with 103 CMR 420 to the extent possible given available technology and resources.

420.15   Emergency

    Whenever, in the opinion of the Commissioner or designee, or the Superintendent of a state correctional facility, an emergency exists which requires suspension of all or part of these regulations, the Commissioner or designee or the Superintendent may authorize such suspension, provided that any suspension lasting more than forty-eight (48) hours must be approved by the Commissioner.

420.16   Responsible Staff

    The Deputy Commissioner Clinical Services and Reentry shall be responsible for implementing and monitoring 103 CMR 420 throughout the Department. The Superintendent of each correctional institution shall be responsible for implementing and monitoring compliance with 103 CMR 420 within the institution.

420.17   Annual Review

    103 CMR 420 shall be reviewed at least annually by the Commissioner or a designee. The party or parties conducting the review shall develop a memorandum to the Commissioner with a copy to the Central Policy File indicating revisions, additions or deletions which shall be included for the Commissioner's written approval and shall become effective pursuant to applicable law.

420.18   Severability

    If an article, section, subsection, sentence, clause or phrase of 103 CMR 420 is for any reason held to be unconstitutional, contrary to statute, in excess of the authority of the Commissioner, or otherwise inoperative, such decision shall not affect the validity of any other article, section, subsection, sentence, clause or phrase of 103 CMR 420.

REGULATORY AUTHORITY

    103 CMR 420: M.G.L. c. 124, §§ 1(c), (f), (g), (q) and M.G.L. c. 127, ,§§ 20, 49a, 97 and 97A.