## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTION; THOMAS A. TURCO III; SEAN MEDEIROS; JAMES M. O'GARA JR.; and STEPHANIE COLLINS,<br><br>Defendants. | Civil Action No. 1:17-CV-12255-RGS<br><br>**Leave to File Granted on February 26, 2018** |

### REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF JANE DOE'S MOTION FOR PRELIMINARY INJUNCTION

Jennifer Levi (BBO# 562298)
Bennett Klein (BBO# 550702)
GLBTQ Legal Advocates & Defenders
30 Winter Street, STE 800
Boston, Massachusetts 02108
Tel.: +1 617 426 1350
Email: jlevi@glad.org

Elizabeth Matos (BBO# 671505)
Joel Thompson (BBO# 662164)
Prisoners' Legal Services
10 Winthrop Square, 3rd Floor
Boston, MA 02110
Tel.: +1 617 482 6383
lmatos@plsma.org
jthompson@plsma.org

J. Anthony Downs (BBO# 552839)
Tiffiney F. Carney (*pro hac vice* pending)
Louis L. Lobel (BBO# 693292)
Ashley E. Moore (BBO# 694731)
Goodwin Procter LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
jdowns@goodwinlaw.com
tcarney@goodwinlaw.com
llobel@goodwinlaw.com
amoore@goodwinlaw.com

*Attorneys for Plaintiff*

Plaintiff Jane Doe submits this brief reply to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction:

## I. Defendants' Statements Reveal Animus and Demonstrate That Its Purported Consideration of Jane Doe for Transfer to the Women's Correctional Facility is Illusory and Pretextual.

The Department of Correction's ("DOC") assertion that it relies on a purported policy – rather than on assigned birth sex or anatomy – that would on a case-by-case basis authorize the placement of some transgender women who have not had genital surgery in the women's correctional facility is belied by statements that reveal animus, fears, and stereotypes about transgender prisoners and that support Plaintiff's claims of discrimination.[1]

Specifically, DOC's Director of Behavioral Health, Mitzi Peterson, states that "Jane Doe's presence at MCI-Framingham, as a pre-operational male to female transgender, may create climate issues with female offenders, the vast majority of whom have experienced significant trauma as a result of domestic abuse and sexual assaults." Peterson Aff. at ¶ 18. This proffered reason of "climate issues" for excluding Jane Doe from Framingham has nothing to do with her individually and, if credited, would be reason to categorically preclude all placement of transgender women who have not had genital surgery in women's facilities. DOC's reliance on it as justification for refusing Ms. Doe's transfer contradicts its denial of a categorical rule, *see* Mem. of Law in Support of Def's Opp. to Pl's Mot. For a Preliminary Injunction ("Opp.") at 5, 19-22, 25, and supports Ms. Doe's claims that the reason she was not transferred upon her request was, instead, because she is transgender and because she has Gender Dysphoria.[2]

---

[1] DOC's conclusory statements offer absolutely no reason or insight at all into the reasons that it denied Plaintiff's request. Affidavit of Mitzi Peterson, Doc. 45-3 ("Peterson Aff.") at ¶ 15. While it states that "[t]he GD treatment committee has not recommended that Jane Doe be placed at MCI-Framingham by reason of her GD diagnosis," there is no indication either that the GD treatment committee actually considered Jane Doe's request or that DOC gave "serious consideration" to Jane Doe's own views as required by its policy. *Id.* at ¶¶ 14-15.
[2] These speculative and stereotyped fears were rejected by the Department of Justice in its PREA regulations. *See* 28 C.F.R. Sec. 115.42 (contemplating placement of transgender inmates in facilities based on their health and safety

1

In addition, the DOC has stated as a reason for refusing her request to be strip searched by female correctional officers that "female correction officers may refuse to conduct strip searches of GD inmates." Affidavit of Sean Medeiros, Doc. 45-1 ("Medeiros Aff.") at ¶ 26. Putting aside the fact that it is the job of correctional officers to conduct strip searches, this statement also contradicts the DOC's disavowal of a categorical refusal to assign transgender women to Framingham. *See* Opp. at 5, 19-22, 25. DOC's strip-search policy provides that prisoners will be searched by officers of the gender associated with their housing placement. *See* 103 CMR 506.04(1), Doc. 45-5 at 7. This means that if Ms. Doe were transferred to Framingham, DOC would have to ensure equal treatment of transgender women by female correction officers in the women's facility, something it apparently seeks to avoid. *See* Opp. at 19-22, 25; Peterson Aff., Doc. 45-3 at ¶ 18.

It is well-established that contradictory and conflicting statements and positions is evidence of discrimination and animus. *See Domingo-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000) ("different and arguably inconsistent explanations" serve as evidence of pretext); *McDonough v. City of Quincy*, 452 F.3d 8, 18 (1st Cir. 2006) (same); *Truax v. City of Portsmouth*, 2001 WL 716120, at *12 (D.N.H. June 18, 2001) ("Where, as here, [a defendant] asserts that he relied on a previously unarticulated factor in reaching [a] decision, a factfinder may infer that the actual reason for the decision was discriminatory animus."). Here, the statements in the affidavits of Sean Medeiros and Mitzi Peterson reflect the baseless fears and beliefs behind denying Jane Doe's request for a placement at Framingham and reveal the DOC's

---

and implicitly rejecting categorical exclusion based on generalized and unfounded apprehensions). The baselessness of this concern is also reflected in DOC's acknowledgement that there are males in the male correctional facility with histories of sexual victimization. *See* DOC Form "Internal Housing Risk Factors (Males)," Doc. 45-2, at 19. DOC addresses the needs of these inmates within the context of the male correctional facility as reflected in the assessment made through this form and it presumably does the same in the female correctional facility.

stated policy of individual consideration as pretextual and its actual reason as a discriminatory one.[3]

## II. Defendants' Denial of Ms. Doe's Request for a Transfer to Framingham Pursuant to Its Alleged Policy, Even if True, Is No Substitute for the Reasonable Modification of Policies and Practices Required By the Americans with Disabilities Act.

DOC's conclusory, one-sentence statement that it denied Ms. Doe's request for a transfer to Framingham under its own policy is wholly insufficient to meet its obligation to respond to a request for a reasonable accommodation under the Americans with Disabilities Act ("ADA"). Ms. Doe has requested a transfer to the women's correctional facility as a reasonable modification under Title II of the ADA. *See* 28 C.F.R. § 35.130(b)(7)(i).[4] Courts have adopted a burden-shifting framework for assessing the reasonableness of modifications. As the Second Circuit recently explained in the prison context, "[a]dopting the well-established ADA and RA burden shifting framework here, the plaintiff 'bears the initial burdens of both production and persuasion as to the existence of an accommodation' that is 'facial[ly] reasonable[].' The burden of persuasion then shifts to the defendant to 'rebut the reasonableness of the proposed accommodation.'" *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 76 (2d Cir. 2016) (quoting *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 190 (2d Cir. 2015)); *see also K.K. v. N. Allegheny Sch. Dist.*, 2017 WL 2780582, at *11, (W.D. Pa. June 27, 2017) ("[T]he plaintiff first bears the burden of articulating a reasonable accommodation. The burden of proof then shifts to the defendant, who must establish that the requested relief would

---

[3] In spite of the serious doubt raised about the legitimacy of DOC's policy, DOC has asserted that it has such a policy. In light of this assertion, the Plaintiff chooses not to pursue her claim for a violation of Due Process (Count IV of the Complaint) in the context of her motion for preliminary injunctive relief as discovery and factual development is needed on this issue. Plaintiff has, however, stated a legally adequate claim for a violation of Due Process and the Court should deny DOC's motion to dismiss that count of her complaint.

[4] That regulation provides: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *See also* 29 C.F.R. Sec. 1614.203(d)(3) ("reasonable accommodation" under Rehabilitation Act).

3

require an unduly burdensome or fundamental alteration of state policy . . .") (quoting *Frederick L. v. Dep't of Pub. Welfare of Com. Of Pa.*, 364 F.3d 487, 492 (3d Cir. 2004)).

Ms. Doe has met her initial burden. She is a 53 year-old transgender woman who transitioned in her teen years, has a female body including typical female breast development and overall body fat distribution, has lived her entire life as a woman, and was never socialized as a man. *See* Affidavit of Randi Ettner Aff., Doc. 35-2 ("Ettner Aff."), at ¶¶ 28-29. DOC does not dispute Dr. Ettner's testimony that a key component of medical treatment for gender dysphoric individuals is to live, function in society, and be regarded by others consistent with their gender identity. "If any aspect of this social role transition is impeded, it will undermine an individual's core identity and psychological health." *Id.* at ¶ 19. Nor does DOC dispute that "Ms. Doe's Gender Dysphoria requires life-long medical care and monitoring in accordance with the treatment protocols in the SOC, including with respect to hormone therapy and the requirement that she live and function as a woman." *Id.* at ¶ 23.[5] It is beyond cavil that a person cannot live and function as a woman in a men's prison, even absent the aggravating factors such as sexual objectification and lack of privacy that Ms. Doe regularly experiences at MCI-Norfolk.

The DOC has utterly failed to meet its burden under the ADA's standards to explain and come forward with evidence about why Ms. Doe's requested accommodation is unreasonable, unduly burdensome, or a fundamental alteration of the women's prison. In fact, DOC cannot claim undue burden or fundamental alteration because it has represented to this Court that its policy provides for the placement of transgender women, regardless of surgical status, in the women's correctional facility.[6] DOC cannot simultaneously argue that it would place a

---

[5] Notably, DOC does not dispute that Ms. Doe is a woman. *See* Ettner Aff. at ¶ 24.
[6] If DOC has any reasons pertaining to Ms. Doe individually, they have not provided evidence of them. There is no evidence in the record that Ms. Doe would be a safety risk in a women's correctional facility. *See* Ettner Aff. ¶¶ 41-42; Supplemental Affidavit of Jane Doe ("Doe Supp. Aff.") at ¶ 3 (clarifying DOC's erroneous assertion that she has

transgender woman who has not had genital surgery at MCI-Framingham and that doing so for Ms. Doe would be an undue burden or a fundamental alteration of its facilities. *Disability Advocates, Inc. v. Paterson*, 598 F.Supp.2d 289, 335 (E.D.N.Y. 2009) ("Where individuals with disabilities seek to receive services in a more integrated setting—and the state already provides services to others with disabilities in that setting—assessing and moving the particular plaintiffs to that setting, in and of itself, is not a 'fundamental alteration.'")  For these reasons, Ms. Doe has a reasonable likelihood of success on the merits of her claim that she was unlawfully denied a requested reasonable modification under the ADA.

### III. Jane Doe is Profoundly Harmed by Placement in a Men's Prison.

Defendants fail to rebut Ms. Doe's demonstration that she is seriously harmed by her placement in a men's prison.  She is harmed because she cannot live and function as a woman in a men's facility. *See* discussion of Ettner affidavit, *supra* at 4.  DOC's glib assertion that everything is fine for Ms. Doe as a transgender woman at MCI-Norfolk is disingenuous.  The best insight into DOC's whitewashing of the harm Jane Doe is experiencing at MCI Norfolk is its response to Dr. Ettner's diagnosis of Ms. Doe with Posttraumatic Stress Disorder ("PTSD") and a Generalized Anxiety Disorder as a direct result of being housed in a men's prison.  Ettner Aff. at ¶ 33.  Dr. Ettner noted that Ms. Doe has no history of trauma or psychiatric disorders prior to her incarceration at MCI-Norfolk. *Id.*  In response, Ms. Peterson's affidavit states that "Jane Doe's PTSD diagnosis was recently added by Dr. Berger-Hershkowitz, M.D. due to symptoms of sleeplessness, anxiety and reports of dysphoria."  Peterson Aff., at ¶ 13. In the absence of any prior history of psychiatric diagnosis, which DOC does not dispute, the only reasonable explanation for this symptomology is Ms. Doe's experience in a men's prison.  These

---

had erections).  Ms. Doe has approved the contents of the Doe Supp. Aff., but due to logistical issues, her counsel expect Ms. Doe to sign the supplemental affidavit in Court on Wednesday February 28, 2018.

5

symptoms are, in fact, consistent with the facts reported by Ms. Doe in her affidavits filed with this court. *See* Affidavit of Jane Doe, Doc. 35-3 ("Doe Aff."), at ¶¶ 10-31; Doe Supp. Aff. at ¶ 10. Ms. Peterson's hearsay and unsupported statement that Ms. Doe's PTSD diagnosis is "related to 'prior undisclosed trauma' which [the provider] and Jane Doe have yet to address in therapy" (Peterson Aff. at ¶ 13) should not be credited by this court. It is illogical to conclude that Ms. Doe's PTSD is based on prior trauma when she has never been diagnosed with PTSD, or any psychiatric disorder, prior to her incarceration at MCI-Norfolk and the provider has not even "address[ed]" the "undisclosed" matter in therapy or elsewhere. *Id.*

Neither should this Court credit DOC's bald statements that Ms. Doe is afforded privacy while showering. She is not. DOC's assertion is contradicted by Ms. Doe's detailed accounts which are confirmed by the photo shared with this Court by the Defendants. *See* Doe Aff. at ¶¶ 12-17; Doe Supp. Aff. at ¶¶ 2, 4-6. The shower rooms at MCI-Norfolk have no doors for entry. This means that whatever the set up for the individual shower stalls (and Ms. Doe has experienced several) within the shower room, Ms. Doe remains vulnerable to being viewed and harassed by male prisoners in the shower room.

Since being incarcerated, Ms. Doe has been made to shower in rooms with different configurations including in Blocks 8, 7, and 3. In the 8 Block, she could be observed by men from the tier situated above her. *See* Doe Aff. at ¶ 23. In the 7 block, her body could be viewed by men who walked in and out of the shower room while she was behind a curtain that insufficiently blocked her 5'3" frame who regularly made lewd and sexualized comments about her female body. Doe Supp. Aff. At ¶ 5. In the 3 block, where she currently showers, she remains sexually vulnerable by a setup which, while it provides more shielding of her from men while she is actually naked, does not remedy the situation. *Id.* at ¶ 6. Men continue to come in

6

and out of the shower room while she is in the shower stall putting her at risk of sexual violence in a way not experienced by non-transgender prisoners. *Id.*

## CONCLUSION

For the foregoing reasons, and those set forth in plaintiff's opening memorandum, this Court should grant Plaintiff Jane Doe's Motion for Preliminary Injunction.

    Respectfully submitted,

    /s/ J. Anthony Downs
    J. Anthony Downs (BBO# 552839)
    Tiffiney F. Carney (*pro hac vice* pending)
    Louis L. Lobel (BBO# 693292)
    Ashley E. Moore (BBO# 694731)
    GOODWIN PROCTER LLP
    100 Northern Avenue
    Boston, Massachusetts 02210
    Tel.: +1 617 570 1000
    E-mail: jdowns@goodwinlaw.com
    tcarney@goodwinlaw.com
    llobel@goodwinlaw.com
    amoore@goodwinlaw.com

    Jennifer Levi (BBO# 562298)
    Bennett Klein (BBO# 550702)
    GLBTQ Legal Advocates & Defenders
    30 Winter Street, STE 800
    Boston, Massachusetts 02108
    Tel.: +1 617 426 1350
    Email: jlevi@glad.org
    bklein@glad.org

    Elizabeth Matos (BBO# 671505)
    Joel Thompson (BBO# 662164)
    Prisoners' Legal Services
    10 Winthrop Square, 3rd Floor
    Boston, MA 02110
    Tel.: +1 617 482 6383
    E-mail: lmatos@plsma.org
    jthompson@plsma.org

Dated: February 26, 2018

## **CERTIFICATE OF SERVICE**

      I, J. Anthony Downs, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on February 26, 2018.

                                                                                          /s/ J. Anthony Downs