UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JANE DOE,<br>    Plaintiff,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT<br>OF CORRECTION, et al.,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      C.A. NO. 17-12255-RGS |

## SECOND AFFIDAVIT OF SEAN MEDEIROS

I, Sean Medeiros, do on oath depose and state:

1. I am an employee of the Massachusetts Department of Correction ("DOC") and presently serve as the Superintendent of the Massachusetts Correctional Institution in Norfolk, Massachusetts ("MCI-Norfolk"), a medium security correctional facility located in Norfolk, Massachusetts.

2. I have been employed by the DOC since September 1987. I was the Deputy Superintendent of Operations at MCI-Norfolk from September 2011 until February 2014, when I was promoted to Acting Superintendent of MCI-Norfolk. Prior to becoming the Deputy Superintendent of Operations, I held the position of Director of Security at MCI-Norfolk.

3. The statements in this affidavit are based on my personal knowledge and/or upon my review of DOC records that are kept and maintained in the normal course of business.

4. As the Superintendent of MCI-Norfolk, I am responsible for the overall operation of the prison, including the maintenance of security, safety and order within the prison. *See* M.G.L. c. 125, § 14.

5. I am familiar with the Court's March 5, 2018 Order for Preliminary Injunction. Paragraph 1 of the March 5, 2018 Order provides:

> The defendants shall, consistent with staffing concerns and the collective bargaining agreements in place between prison administrators and corrections officers, utilize female correction officers whenever feasible when conducting strip searches of Jane Doe.

6. In response to the March 5, 2018 Order, I have met with MCI-Norfolk senior staff and correctional staff in determining how best to implement the Order providing that Jane Doe's strip searches be conducted by female correction officers to the extent feasible.

7. As acknowledged in paragraph 1 of the Order, the feasibility of providing two female correction officers to conduct Jane Doe's strip searches requires a consideration of numerous issues, including MCI-Norfolk's staffing concerns, collective bargaining agreements, and the need to provide for the safety and security of all inmates and staff.

8. As stated in my first affidavit, the feasibility of any plan to conduct strip searches of Jane Doe and other gender dysphoric ("GD") inmates at MCI-Norfolk must address the limitations on the number of female correction officers at the facility. MCI-Norfolk employs thirty-one (31) female correction officers to cover three shifts a day over seven (7) days. MCI-Norfolk has fourteen (14) female correction officers assigned to the 7:00 a.m. to 3:00 p.m. shift; six (6) female correction officers are assigned to the 3:00 p.m. to 11:00 p.m. shift; four (4) female correction officers are assigned to the 1:00 p.m. to 9:00 p.m. shift; two (2) female correction officers are assigned to the 11:00 p.m. to 7:00 a.m. shift; and there are five (5) female house officers who vary between the day and evening shifts. By comparison, MCI-Norfolk employs approximately 340 male correction officers. Approximately 1323 inmates are currently incarcerated at MCI-Norfolk.

9. Pursuant to the DOC's strip search policy, 103 DOC 506.00, *et seq.*, MCI-Norfolk

conducts routine strip searches of inmates under certain circumstances, including before and after visits, before and after some work assignments, and before and after trips to court and outside medical appointments. 103 DOC 506.04(1). The policy also requires that two correction officers be present for the strip search. 103 DOC 506.04(6)(A). Presently there are two female correction officers assigned to the 11:00 p.m. to 7:00 a.m. shift. Should Jane Doe or other GD inmates be scheduled for early morning trips to court or outside medical appointments, it is not feasible to implement a search procedure requiring that both correction officers present for the strip searches be female.

10. In addition, a search procedure requiring that two female corrections conduct strip searches of Jane Doe is not feasible on other shifts where the number of female correction officers available may be reduced due to sick days, days off, or vacations.

11. Nor is a search procedure requiring that two female corrections conduct strip searches of Jane Doe feasible, where it would necessitate that two female correction officers accompany Jane Doe on trips outside MCI-Norfolk to court and medical appointments where strip searches are required as part of security procedures.

12. Pursuant to collective bargaining agreements, all correction officers are able to bid for preferred shifts and days off. Approval of correction officer bids for particular shifts and days off is determined on the basis of seniority. As a result, where a female correction officer bids for a particular shift and days off, it is extremely difficult to meet the needs of specific search procedures.

13. Another factor that must be considered with regard to the feasibility of a plan for strip searching Jane Doe under paragraph 1 of the Order is the fact that many of MCI-Norfolk's female correction officers have expressed concern over being required to conduct strip searches of transgender inmates who are anatomically male. DOC's search policy prohibits cross gender

3

strip searches of inmates. 103 DOC 506.04(1). Ordering female correction officers to conduct strip searches of Jane Doe, who is anatomically male, over their objections, will result in some female correction officers filing complaints that they are being subject to harassment.

14. Accordingly, I have determined in my professional judgment that, in light of MCI-Norfolk's staffing limitations, security needs, collective bargaining contracts, the concerns expressed by female correction officers, and the privacy concerns expressed by Jane Doe, the most feasible and effective plan for conducting strip searches of Jane Doe under paragraph 1 of the Order is to utilize both a female and a male correction officer. The female correction officer would first conduct a search of Jane Doe's upper body (above the waist) and a male correction officer would then conduct a search of Jane Doe's lower body (below the waist). The strip searches of Jane Doe will be conducted in a private area away from other inmates. The search procedure provides that the male correction officer would position himself in a "professional, respectful and least intrusive manner" while the female correction officer conducts a search of Jane Doe's upper body.

15. The strip search procedures for Jane Doe and other GD inmates at MCI-Norfolk utilizing both a female and a male correction officer will significantly reduce the operational and staffing burdens on the facility created by the limited number of female correction officers available. The strip search procedure will also minimize the objections raised by female correction officers with regard to conducting strip searches of GD inmates who are anatomically male.

16. Implementing a procedural statement to the DOC <u>Search</u> policy providing for conducting strip searches of Jane Doe and other GD inmates at MCI-Norfolk using both a female and a male correction officer will provide consistency with regard to conducting strip searches of GD inmates, enhance institutional security, and reduce potential disruptions to the orderly

running of the facility.

17. I also note that I have recently altered Jane Doe's showering period to take place at a time when the other inmates on the 3-2 housing unit are locked in their cells for the count. This change in showering period will ensure that Jane Doe can shower separately from other inmates without the need to take a correction officer away from other duties on the 3-2 unit.

18. A training focused on providing MCI-Norfolk staff with information concerning working with GD inmates, including proper communication techniques, is scheduled to take place in late March 2018. The training will be presented by clinical staff employed by the Massachusetts Partnership for Correctional Healthcare, Inc., the DOC's contractual provider of inmate medical, mental health and dental services, who have experience in the treatment of GD.

Signed under the pains and penalties of perjury this 15th day of March, 2018.

_____
Sean Medeiros, Superintendent