## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JANE DOE,

     Plaintiff,

     v.

MASSACHUSETTS DEPARTMENT OF
CORRECTION; THOMAS A. TURCO III;
SEAN MEDEIROS; JAMES M. O'GARA JR.;
and STEPHANIE COLLINS,

     Defendants.

Civil Action No. 1:17-CV-12255-RGS

## PLAINTIFF JANE DOE'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANTS' MOTION FOR CLARIFICATION

Jennifer Levi (BBO# 562298)
Bennett Klein (BBO# 550702)
GLBTQ Legal Advocates & Defenders
30 Winter Street, STE 800
Boston, Massachusetts 02108
Tel.: +1 617 426 1350
Email: jlevi@glad.org

Elizabeth Matos (BBO# 671505)
Joel Thompson (BBO# 662164)
Prisoners' Legal Services
10 Winthrop Square, 3rd Floor
Boston, MA 02110
Tel.: +1 617 482 6383
lmatos@plsma.org
jthompson@plsma.org

J. Anthony Downs (BBO# 552839)
Tiffiney F. Carney (*pro hac vice* pending)
Louis L. Lobel (BBO# 693292)
Ashley E. Moore (BBO# 694731)
Goodwin Procter LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
jdowns@goodwinlaw.com
tcarney@goodwinlaw.com
llobel@goodwinlaw.com
amoore@goodwinlaw.com

*Attorneys for Plaintiff*

## INTRODUCTION

Plaintiff Jane Doe asks this Court for reconsideration of Defendants' motion for "clarification" of the Court's March 5, 2018 Order granting partial preliminary relief.

By way of relevant background, Jane Doe is a transgender woman currently housed in a men's correctional facility.  She suffers from a serious medical condition, Gender Dysphoria, that results from an incongruity between her assigned birth sex of male and her gender identity, or brain sex, of female.  The treatment for her condition is gender transition, which entails living as a woman and undergoing medical treatments to bring her body into conformity with her brain sex.  After nearly four decades of living as a woman and being on female hormones, she has brought her body into conformity with her brain sex.  The undisputed facts of this case demonstrate that she is a woman.  Jane Doe experiences trauma and serious harm from the Defendants' continued treatment of her as a male, which is contrary to who she is and in direct contravention of her medical treatment needs based on the uncontested facts as set forth in the expert affidavit in support of her claims.

Defendants sought clarification of the Court's Order in two respects.  First, they asked this Court to allow that Ms. Doe shower in a room without a guard placed outside during her designated shower time.  Ms. Doe does not object to that part of Defendants' request for clarification to the extent that Defendants ensure that she can safely shower without the presence of men.[1]

It is with regard to the second clarification relating to strip searches that Ms. Doe strenuously objects.  Defendants asked the Court to authorize the Department of Corrections ("DOC") to assign a female corrections officers to search Ms. Doe from the waist up and to

---

[1] Plaintiff notes that the proposed modification shortens the time she previously had available to shower from a 30 minute window to a 15 minute window.

assign a male corrections officer to search Ms. Doe from the waist down.  The arrangement

Defendants seek will cause Ms. Doe serious and irreparable harm and is predicated on the

harmful and scientifically denounced view that Ms. Doe is not fully female or somehow part

male and part female.  In addition, Defendants' refusal to assign a female corrections officer to

do a complete search of Ms. Doe reflects the very stereotypes and bias that the ADA and

constitutional guarantees of equal protection are designed to prohibit and demonstrates that

Defendants lack any legitimate justification for their refusal to reasonably modify their policy to

ensure equal treatment of Ms. Doe.

## I.     The Proposed Strip Search Policy Will Cause Ms. Doe Serious and Irreparable Injury

As Ms. Doe has scrupulously set forth in her own affidavits (Affidavit of Jane Doe ¶¶ 9,

31, ECF No. 35-3; Supplemental Affidavit of Jane Doe ¶¶ 8-10, ECF No. 48), in the affidavit

submitted on her behalf by Dr. Randi Ettner in support of Plaintiff's motion for preliminary

injunction (Affidavit of Randi Ettner, Ph.D. ("Ettner Aff."), ¶¶ 33-37, ECF No. 35-2), and as

further set forth in an affidavit in support of this opposition (Second Affidavit of Randi Ettner,

Ph.D. ("Second Ettner Aff."), ¶ 5), DOC's rejection of Ms. Doe as a woman is traumatic and

psychologically harmful to her.  Forty years of treatment for gender dysphoria, including taking

female hormones and anti-androgens, have profoundly and irreversibly impacted Ms. Doe's

body. *See* Ettner Aff. ¶ 27.  She has female body fat distribution and structure, female secondary

sex characteristics including female breasts, diminished body hair, and softened skin.  *Id.* ¶ 28.

Her genitals are extremely atrophied from years of medical treatment and, as a result, do not

appear or function as typical male genitals.  *Id.* ¶ 30.  The expert testimony in this case supports

the determination that she is female.

The "solution" proposed by Defendants will predictably exacerbate her gender dysphoria; it will not alleviate it. According to Dr. Randi Ettner, an expert in treating people with Gender Dysphoria, who evaluated Ms. Doe:

> The single most important aspect of medical treatment for a transgender woman is to be recognized and treated as female. The DOC proposal is psychologically devastating to Ms. Doe because it disregards her female identity and presumes that she is not a woman, but rather somehow female from the waist up and male from the waist down. Even if well-intentioned, it is difficult to think of an approach that would be more traumatizing to a transgender woman or more likely to exacerbate her gender dysphoria.

Second Ettner Aff. ¶ 3. According to Dr. Ettner, DOC's "proposal will humiliate, denigrate and traumatize Ms. Doe, as it challenges her identity and undermines her medical treatment plan." *Id.* ¶ 6.

In addition to ignoring her female identity, DOC's proposal signals that she is less than human, which reflects one of the most pernicious stereotypes about transgender people being neither male nor female. "That proposal not only negates her female identity, it treats her as less than human—as an objectified 'it' rather than a person." *Id.* ¶ 4. It is based on the "false notion that Jane Doe is somehow half female and half male. That false notion has no medical basis and directly contradicts medical science, which recognizes that a transgender woman is female, even when she may retain some physiological characteristics of her birth sex." *Id.* ¶ 3.

The proposal to divide Ms. Doe's strip-searches into top and bottom "inflicts a unique injury on Ms. Doe because it conveys that she is not even a person in DOC's system. The DOC system is based on classifying people as male or female and, more broadly, in our society, being classified as male or female is a fundamental aspect of human identity and dignity. The DOC proposal singularly harms Jane Doe by treating her—and her alone—in a crude fashion as half

female and half male." *Id.* ¶ 4.  By excluding Ms. Doe from any definitive identification as either female or male, DOC "effectively excludes her from the category of human as well" because being seen as male or female is such a fundamental aspect of human identity.  *See* Paisley Currah & Shannon Minter, *Unprincipled Exclusions: The Struggle to Achieve Judicial and Legislative Equality for Transgender People*, 7 WM. & MARY J. WOMEN & L. 37, 42 (2000).

## II.    DOC's Proposal Demonstrates Bias

The dehumanizing arrangement proposed by Defendants whereby they refuse to authorize a female corrections officer to do a complete strip search of Ms. Doe *even when one is available to do so* highlights the Americans with Disabilities Act and Equal Protection violations for which Ms. Doe seeks redress in the case.  Both by DOC regulations and federal law, all other inmates are generally subjected to strip searches by someone of the same gender identity – except for inmates, like Ms. Doe, who suffer from gender dysphoria.  *See* 103 DOC 506.04; Prison Rape Elimination Act ("PREA"), 28 C.F.R. § 115.315.  This Court's Order dated March 5, 2018, provided partial relief by requiring a female corrections officer to search Ms. Doe when one is available.

Now Defendants come forward to say that even when they can staff a search with a female corrections officer, they will not do so because of a concern that female corrections officers will bring claims of harassment if made to complete a search of Ms. Doe.[2]  Second Affidavit of Sean Medeiros ("Medeiros Aff."), ¶ 13, ECF No. 62-1.  Defendants' clarification reflects bias because it is predicated on the unfounded assertion that staffing female corrections officers to do a complete strip search of Ms. Doe will somehow expose Defendants to liability.

---

[2] DOC also argues, without support or explanation, that requiring female corrections officers to search Ms. Doe violates the collective bargaining agreement.  Medeiros Aff. ¶ 12.  Plaintiff cannot respond to that argument without further details regarding the agreement.  And with none having been provided either in the first or most recent affidavit from Superintendent Medeiros, Plaintiff can only surmise that argument is based on speculation and conjecture, neither of which are sufficient to justify the differential treatment.

Having a female corrections officer strip search Ms. Doe will not expose Defendants to liability for harassment because there is nothing inherently harassing about a female corrections officer being made to strip search Ms. Doe.  Indeed, there is nothing inherently harassing about a female corrections officer being made to strip search any inmate at MCI-Norfolk.  Federal rules implementing PREA, consistent with DOC regulations, prohibit cross gender strip searches except in exigent circumstances.  28 C.F.R. § 115.315(a); 103 DOC 506.04.  The discussion by the Department of Justice to comments submitted in response to proposed rulemaking makes clear that the PREA rule, and the DOC regulation by extension, is intended to ensure protection of inmates against sexual violence by corrections officers.  National Standards to Prevent, Detect, and Respond to Prison Rape, 77 Fed. Reg. 37106, 37133 (June 20, 2012).

The discussion further makes clear that having female corrections officers do both strip searches and pat searches of any inmate – male or female – is a basic part of the job of being a corrections officer.[3]  "The Department has chosen not to include in the final standard a [] prohibition on female staff conducting pat-down searches of male inmates."  *Id*. at 37134.[4]  The PREA rules could not permit or prescribe conduct which is inherently unlawful or actionable.

As long as an inmate does not engage in harassing conduct, the search *itself* does not amount to sexual harassment.  Sexual harassment requires proof of conduct that is severe and pervasive "so as to alter the conditions of plaintiff's employment and create an abusive work environment."  *Forrest v. Brinker Int'l Payroll Co., LP*, 511 F.3d 225, 228 (1st Cir. 2007) (quoting *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 395 (1st Cir. 2002)).  Any inmate who engages in harassing conduct of a corrections officer would be subject to discipline – and should

---

[3] Female corrections officers in male prisons may be called to do searches of male inmates in exigent circumstances even where cross gender searches are not the rule.

[4] In evaluating the possibility of employment discrimination claims as a result of the prohibition against cross-gender searches, the focus of the Department of Justice's analysis was on restrictions on women's opportunities, not the expansion of them.  *Id*. at 37131-37135.

be.  But the argument that having a female corrections officer strip Ms. Doe – or any inmate – is sexual harassment is legally baseless.

Justifications for discriminatory treatment must rest on a strong basis in evidence.  *Ricci v. DeStefano*, 557 U.S. 557, 585-87 (2009).  Even a discriminatory act based on a "good faith" belief that a discriminatory decision would result in claims against the Defendants does not justify disparate treatment.  *Id.*

DOC's assertion that female corrections officers could file baseless harassment complaints for having to search Ms. Doe is insufficient to justify harmful and discriminatory treatment of her, particularly given that federal and state regulations contemplate her transfer to a female facility where she would, by DOC's own admission, be subject only to searches by female corrections officers.

If Defendants can assign one female correction officer to strip search Ms. Doe, there is no legitimate, nondiscriminatory reason why that female officer cannot do the entire strip search. The fact that Defendants persist in seeking to avoid having female correction officers do a complete strip search of Ms. Doe can only be understood to be based on the kind of ignorance, prejudice, or disability-based animus that both the ADA and the Equal Protection clause forbid as justifications or as defenses for the denial of either reasonable accommodation or equal treatment.  *Compare Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 281-82 (1987) (holding that defendant's adverse action against plaintiff based on fears of contagiousness constituted discrimination based on "disability" under Rehabilitation Act), *and id.* at 287 (stating that the goal of the Rehabilitation Act is to "protect[] handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such *legitimate* concerns of grantees as avoiding exposing others to significant health and safety risks"

(emphasis added)), *with Adkins v. City of New York*, 143 F. Supp. 3d 134, 137, 140 (S.D.N.Y. 2015) (holding that transgender male stated claim that city discriminated against him in violation of equal protection by removing him from a general cell holding other male detainees and holding him by himself in more deleterious conditions).

While DOC's proposal may superficially appear to be reasonable or designed to strike a compromise, it reflects a common misconception—that a transgender person is neither male nor female—that unfortunately accounts for much of the prejudice that causes transgender people to be seen as freakish, subhuman, or simply "other." As the Supreme Court has explained,

> Prejudice, we are beginning to understand, rises not from malice or hostile animus alone. It may result as well from insensitivity caused by simple want of careful, rational reflection or from some instinctive mechanism to guard against people who appear to be different in some respects from ourselves.

*Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (Kennedy, J., concurring).

In this case, the DOC's proposal reflects a lack of knowledge and understanding about gender dysphoria, irreparably injures Ms. Doe, and reinforces the very harm the law is designed to address.

## CONCLUSION

Plaintiff asks this Court to reaffirm its March 5, 2018 Order and deny Defendants' request to authorize strip searches as set forth in their Request for Clarification filed with this Court on March 15, 2018.

/s/ J. Anthony Downs_____
J. Anthony Downs (BBO# 552839)
Tiffiney F. Carney (*pro hac vice*
pending)
Louis L. Lobel (BBO# 693292)
Ashley E. Moore (BBO# 694731)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
E-mail: jdowns@goodwinlaw.com
tcarney@goodwinlaw.com
llobel@goodwinlaw.com
amoore@goodwinlaw.com

Jennifer Levi (BBO# 562298)
Bennett Klein (BBO# 550702)
GLBTQ Legal Advocates & Defenders
30 Winter Street, STE 800
Boston, Massachusetts 02108
Tel.: +1 617 426 1350
Email: jlevi@glad.org
bklein@glad.org

Elizabeth Matos (BBO# 671505)
Joel Thompson (BBO# 662164)
Prisoners' Legal Services
10 Winthrop Square, 3rd Floor
Boston, MA 02110
Tel.: +1 617 482 6383
E-mail: lmatos@plsma.org
jthompson@plsma.org

Dated: March 20, 2018

## CERTIFICATE OF SERVICE

I, J. Anthony Downs, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on March 20, 2018.

/s/ J. Anthony Downs

## LOCAL RULE 7.1(A)(2) CERTIFICATION

The undersigned counsel hereby certifies that counsel for Plaintiff has conferred in good faith with opposing counsel regarding this motion but we were unable to narrow the issues.

/s/ J. Anthony Downs