# United States District Court
# District of Massachusetts (Boston)
# CIVIL DOCKET FOR CASE #: 1:17-cv-12255-RGS

| | |
|---|---|
| Doe v. Massachusetts Department of Correction et al | Date Filed: 11/15/2017 |
| Assigned to: Judge Richard G. Stearns | Jury Demand: None |
| Cause: 42:1218(2) Americans with Disabilities Act | Nature of Suit: 550 Prisoner: Civil Rights |
| | Jurisdiction: Federal Question |

| Date Filed | # | Docket Text |
|---|---|---|
| 05/14/2018 | 74 | MOTION to Intervene and MOTION for Leave to Proceed in forma pauperis filed by Candace S. Africa. (Attachments: # 1 Motion to Proceed in Forma Pauperis, # 2 Exhibits) (Pacho, Arnold) (Entered: 05/14/2018) |
| 05/14/2018 | 75 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 74 Motion to Intervene; finding as moot 74 Motion for Leave to Proceed in forma pauperis. Intervenor Candace S. Africas Motion to Intervene is DENIED and the Motion to Proceed In Forma Pauperis (IFP) is dismissed as MOOT. The court, having reviewed Africa's motion, is of the view that her claims do not meet the requirements for permissive joinder under Federal Rule of Civil Procedure 24(b)(1)(B). As counsel for Jane Doe apparently informed Africa, her claims are dissimilar in some key respects from those of Doe -- including allegations of different statutory violations not at issue in Doe's case -- and can only be pursued as a separate court action. (RGS, law2) (Entered: 05/14/2018) |

**NATIONAL PREA RESOURCE CENTER**

Through a cooperative agreement between BJA and NCCD



# Cross-Gender Supervision

**1a. Does the standard that requires the facility to enable inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia apply equally to viewing that is done remotely via recorded or live video camera feed?**

**1b. Does this standard prohibit opposite-gender staff from viewing inmates in their beds either through direct viewing or remotely by video camera?**

**1c. How do these prohibitions affect the cross-gender staffing of dormitory settings and the viewing of video cameras in dormitory settings?**

(The following response answers all three questions.)

Yes. The intent of PREA Standards 115.15, 115.115, 115.215, and 115.315 (limits to cross-gender viewing and searches), subsection (d) is to provide inmates with the ability to shower, use the toilet, and change their clothes without being viewed by nonmedical staff of the opposite gender. The standard also functions to ensure that inmates have the information they need in order to cover up when opposite-gender staff members are working in their housing areas. The exception for viewing incidental to routine cell checks acknowledges that opposite-gender staff will work in housing areas and may see an inmate naked in his/her cell while conducting routine cell checks, but this is paired with the requirement that opposite-gender staff announce their presence to enable inmates to cover up during those periods if they do not wish to be viewed. Therefore, to the extent that cameras are focused on an area in which inmates are likely to be undressed or toileting, such as showers, bathrooms, and individual cells, the cameras should only be monitored by officers or nonmedical administrators of the same gender as the inmates viewed through the camera.

Practically, most cameras in correctional facilities are focused on common areas, including dayrooms, hallways, recreation areas, etc. In dormitory units, cameras may be in the common area that includes inmate beds. Cameras are rarely located within shower or toilet areas. It is acknowledged that there is a diminished expectation of privacy in the open area of a dormitory setting or other common areas of correctional facilities. In addition, most facilities have rules prohibiting inmates from disrobing or being unclothed in common areas. If this is the case and these rules are enforced, cameras focused on common areas, including dormitory sleeping units, may be monitored by either gender.

With the exception of close-observation or suicide watch cells, cameras generally are not located in single cells. It is reasonable to assume that inmates will change clothes or use the toilet within an individual cell. Attempts to provide privacy in instances of close observation or suicide watch, such as digitally obscuring the toilet area or providing a privacy screen for some portion of the cell, would likely negate the officer's ability to properly monitor the individual via camera. Therefore, unless exigent circumstances prevent it, cameras focused within single cells should only be monitored by officers or nonmedical administrators of the same gender as the inmates viewed through the camera. While same-gender observation is preferable because of the importance of monitoring inmates *identified as being at high risk for self-harm* or who are actively suicidal, cross-gender camera viewing of inmates in suicide watch cells is permissible if operationally indicated.

Finally, in order to maintain the ability to conduct thorough and effective investigations and incident reviews involving sexual abuse, sexual harassment, and other misconduct, appropriately trained internal and external investigators and senior facility and agency administrators are not prohibited by this rule from viewing cross-gender recorded camera footage in conjunction with an investigation or incident review.

*Last updated March 26, 2014*

**2. Please explain the adult cross-gender viewing and searches standard.**

At its most basic, the standard has three parts. First, it prohibits all cross-gender strip and body cavity searches except in exigent circumstances and disallows the use of cross-gender pat searches for female inmates in jails, prisons, and community confinement facilities (the juvenile facility standards prohibit cross-gender pat searches of both male and female residents). Second, it provides for a "knock and announce" practice when an opposite gender staff member enters a housing unit and, more generally, provides that facilities are to implement policies and procedures that enable inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks. Third, the standard also provides protection from intrusive searches for the purpose of determining gender for transgender or intersex inmates.

As a practical matter, many agencies already do only same-gender pat-down searches. For example, some juvenile agencies have BFOQ positions based on the privacy rights of girls, and some adult jails that house immigration detainees who are Muslim have banned female staff from searching those detainees. Other agency practices consistent with this standard include knock and announce policies, the use of privacy shields in shower and bathroom areas, and staffing patterns that ensure the availability of male and female staff to perform searches when necessary.

**6. Does the use of a virtual scanner by an opposite-gender staff person violate the prohibition against cross-gender viewing and/or cross-gender strip searches?**

Section 115.15(a) states, "The facility shall not conduct cross-gender strip searches or cross-gender visual body cavity searches (meaning a search of the anal or genital opening) except in exigent circumstances or when performed by medical practitioners." The regulations define "strip search" as "a search that requires a person to remove or arrange some or all clothing so as to permit a visual inspection of the person's breasts, buttocks, or genitalia." See § 115.5. The standards also state, "The facility shall implement policies and procedures that enable inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender reviewing their breasts, buttocks, or genitalia, except in exigent circumstances." See § 115.15(d).

Whether or not a virtual scanner or other electronic search complies with this provision will depend on the technology involved. For example, some technologies provide images similar to an x-ray, with no discernable body contours. Other technologies only provide an image representing a human form, with no actual body images. The cross-gender use of these technologies complies with the PREA standards.

Other technologies can be more detailed and will provide outlines of breasts, buttocks, or genitalia. Cross-gender use of these technologies by non-medical staff would not comply with the PREA standards, unless used with privacy filters that can blur body contours. If used by cross-gender staff during exigent circumstances without the appropriate filters, the search must be documented under § 115.15(c).

*Last updated March 25, 2015.*

**7. What gender should transgender staff be considered for the purposes of complying with cross-gender viewing and search prohibitions established in § 115.15?**

Facilities should verify whether there are any specific legal authorities, statutes, or personnel policies that may be relevant to this determination. Absent any specific authorities, facilities should make an individualized determination based on the identified gender of the staff member, and not solely on the basis of the biological gender. This decision should be made at the request of, and in conjunction with, the transgender staff member. The determination may also change during the course of employment, as part of an on-going adjustment process, or as the staff member gains real-life experience living as a person of the identified gender.

*Last updated April 23, 2014*

**8. What is required by the cross-gender announcement in Standard 115.15(d) (adult prisons and jails; and 115.315(d) (juvenile facilities with discrete housing units)?**

In adult prisons and jails, and in juvenile facilities with discrete housing units, "staff of the opposite gender" are required to "announce their presence when entering an inmate housing unit." This is sometimes referred to as the "cover-up rule" and is intended to put inmates on notice when opposite-gender staff may be viewing them. The announcement is required any time an opposite-gender staff enters a housing unit; however, the Department has determined that the purpose of the Standard may be fully realized by requiring the announcement only when an opposite-gender staff enters a housing unit where there is not already another cross-gender staff present. Accordingly, the Department has determined that compliance with the Standard will be achieved when an announcement is made, as follows:

When the status quo of the gender-supervision on a housing unit changes from exclusively same gender, to mixed- or cross-gender supervision, the opposite-gender staff is required to verbally announce their arrival on the unit. The announcement is required for both custody and non-custody staff, and may include, for example, a clinician or case worker who spends time on the unit, or senior staff making supervisory rounds.

Note, a distinct buzzer, bell, or other noisemaking device may be substituted for a verbal announcement, so long as: (1) the buzzer emits a distinctive sound that is noticeably different from other common noisemakers; (2) inmates are adequately educated on the meaning of the buzzer sound and understand its purpose; and (3) the buzzer is not also used for other events at the facility. If used, such buzzers should be used in the identical manner that verbal announcements as required by the above guidance (e.g., when opposite-gender staff enter a housing unit).

The Department has received a number of inquiries about whether the following activities would constitute compliance:

- Posting a notice on the housing unit informing the inmates that they may be subject to cross-gender supervision at any time.

- Making a single announcement at the beginning of each shift indicating that inmates may be subject to cross-gender supervision at any time.

- Making a single announcement at the beginning of a shift indicating that an opposite-gender staff is assigned to the unit for that particular shift.

- Toggling a certain color light or flickering the lights in the unit as a signal to the inmates that opposite-gender staff may be on the unit.

The Department has determined that, while these other practices may be helpful supplements to the required verbal announcement, none of them is sufficient to comply with the Standard and compliance measure, as articulated above.

http://www.prearesourcecenter.org/faq/cross-gender-supervision

✱ ✱ ✱ TIME SENSITIVE ✱ ✱ ✱

**COMMONWEALTH OF MASSACHUSETTS**
**DEPARTMENT OF CORRECTION**
**INFORMAL COMPLAINT FORM**

Attachment I
NIC18-2-47

*COPY*

Inmate Name **Ms. Africa, C.S.**   Commitment # **W63710**   Incident Date **2/14/18 (Wed)**
Institution **MCI-Norfolk**   Housing Unit **Six-Two #303**

CHECK OFF AREA OF CONCERN (one issue per form allowed)
___ HOUSING ASSIGNMENT/STATUS     ___ LAUNDRY     ___ PROGRAMS     ___ MAIL
___ CLOTHING/LINEN EXCHANGE     ___ RELIGION     ___ PROPERTY     ___ VISITS     ___ FOOD
___ LEGAL EXCHANGE     ___ LIBRARY     ___ PHONE     **X** OTHER **P.R.E.A./GID - SHOWER(S) AND RELIGIOUS MODESTY FOR WOMEN**

State completely, but briefly, the single issue of concern and your requested resolution

RE: U.S. DEPT. OF JUSTICE'S PREA AUDIT-YEAR COMPLIANCE AND/OR ASSURANCE TO PROVIDE ALTERNATE SHOWERTIME FOR WOMEN HOUSED IN MALE-UNITS AT NORFOLK.

a.) PRIOR TO ARRIVAL OF PREA-AUDITOR, MS. AMY FAIRBANKS, ON AROUND (2/5/18), I (MS. AFRICA) WAS ISSUED A LETTER AUTHORIZING A SHOWERTIME (IN UNIT #3-2). IT WAS DATED (1/18/18) AND I NO LONGER RESIDE IN UNIT #3-2. HOWEVER, MY EXTREME GENDER-DYSPHORIA, BODY-SHAME, FEARS OF MALE-INTRUSION(S) & RELIGIOUS MORALS ARE STILL INCREASING CONCERNS.

List any previous steps you have taken to resolve your concern

b.) A POSITIVE-IMPACT NOTIFICATION TO PREVENT FORFEITURE OF FEDERAL GRANT FUNDING, PURSUANT PREA STATUTE, SENT TO THE ATTENTION OF THE NAT'L. PREA COMMISSION, AS WELL AS THE BUREAU OF JUSTICE ASSISTANCE & PREA MGT. OFFICE ADVISOR.

(Use other side of page if more space is needed)
c.) DEPTY. SUPT. FOR PREA ENFORCEMENT SENT A WRITTEN REQUEST.

Inmate Signature: **By: C_____, Atty.p.**   Date: **2018 0214**

*Note: if you follow instructions in preparing your request, it can be addressed more readily. Your complaint will be reviewed and replied to within ten (10) business days from the date of receipt.*

(DO NOT WRITE BELOW THIS LINE Reserved for Staff Response)

**RECEIVED**

Received By.: **N. Beckles**   Date Received: **FEB 21 2018**   BY: N/A

**DECISION**
Complaint: Has merit___   Has some merit **✓**   Has no merit___
Resolution: Granted___   Partially Granted___   Denied___   Alternate Resolution offered___   N/A **✓**

Comments **new letter provided to you on 2/21/18 with your shower times within your new housing unit 6-2.**

Decision By **Micciucci**   Date **3/1/18**

05/21/2014     491-1

CC: FILE

*The Commonwealth of Massachusetts*
*Executive Office of Public Safety and Security*
*Department of Correction*
*Massachusetts Correctional Institution Norfolk*
*2 Clark Street, P.O. Box 43*
*Norfolk, Massachusetts 02056*
*Telephone (508)660-5900*

*www.mass.gov/doc*

**CHARLES D. BAKER**
Governor

**KARYN E. POLITO**
Lieutenant Governor

**DANIEL BENNETT**
Secretary

**THOMAS A. TURCO III**
Commissioner

**JOHN A. O'MALLEY**
Chief of Staff

**PAUL DIETL**
**BRUCE I. GELB**
**MICHAEL G. GRANT**
**PAUL J. HENDERSON**
**CAROL A. MICI**
*Deputy Commissioners*
**BRAD COWEN**
*Superintendent*

April 4, 2018

Candace Africa, W63710
MCI-Norfolk
P.O. Box
Norfolk, MA 02056

Dear Ms. Africa,

The Religious Services Review Committee has reviewed your Religious Services Request that the following be considered for approval. You are a practicing Baha'I at MCI-Norfolk and are requesting the following:

- Approval to have a designated shower area that has a step out curtain area whereby your practice of religious modesty is not substantially burdened via the expose of your : hair/head, genitalia, breasts and wrist and arms which comprise the very sincerely adhered to edicts of modesty;
- Approval to access the men's barber school area and/or female hair salon location so that you may safely remove your sacred Hijab religious headdress and administer the application of women's haircare products..

The committee denied the request for a designated shower area that has a step out curtain area. You have a designated shower time and if need be, can deviate from the schedule by contacting the unit officer.

In regard to your request to have access to the barber shop with female staff only, the committee is modifying this request. You currently have access to the barber shop where you are already able to apply hair care products. Staff are assigned to this area by facility need and cannot guarantee that a female officer will be present. The committee acknowledges your Baha'I faith and has provided numerous religious accommodations to you, in replying to your prior request, which include permitting you to purchase hijabs and acquire "lady sleeves" insofar as your faith asks adherents to be modest in appearance. However, as noted by the Superintendent, compelling security issues arise in permitting you solo access to the barber school area, including access to tools, such as scissors and razors and caustic haircare products.

Per 103 CMR 471.08 (10) Denied requests shall inform you of your right to appeal.

Sincerely,

Brad Cowen
Superintendent

cc:   Jaileen Hopkins, Director of Program Services
      Tiana Bennett, Deputy Superintendent
      Lisa Curto, Director of Treatment
      File



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety and Security*
*Department of Correction*
*Massachusetts Correctional Institution Norfolk*
2 Clark Street, P.O. Box 43
*Norfolk, Massachusetts 02056*
*Telephone (508)660-5900*

*www.mass.gov/doc*

**CHARLES D. BAKER**
Governor

**KARYN E. POLITO**
Lieutenant Governor

**DANIEL BENNETT**
Secretary

**THOMAS A. TURCO III**
Commissioner

**JOHN A. O'MALLEY**
Chief of Staff

**PAUL DIETL**
**BRUCE I. GELB**
**MICHAEL G. GRANT**
**PAUL J. HENDERSON**
**CAROL A. MICI**
Deputy Commissioners

**BRAD COWEN**
Superintendent

April 4, 2018

Candace Africa, W63710
MCI-Norfolk
P.O. Box
Norfolk, MA 02056

Dear Ms. Africa,

The Religious Services Review Committee has reviewed your Religious Services Request that the following be considered for approval. You are a practicing Baha'I at MCI-Norfolk and are requesting the following:

- The religious exercise of (Holistic) Baha' I faith healing pursuant to ancient vibrato and concerto sounds;
- The religious exercise of (Holistic) Baha'I faith healing rubrics whereby (divine mind) is the basis of health;
- The religious exercise of (Holistic) Baha'I faith healing rubrics whereby a pre-approved department volunteer will provide spiritual guidance via divine science; thereby using infinite mind to give existence and intelligence and healing through ancient vibrato.

The committee denied the request for ancient vibrato and concerto sounds and faith healing rubrics until such a time as you can articulate what you are requesting. The Volunteer Services Coordinator has been actively searching for and will continue to search for a Baha'I volunteer.

Per 103 CMR 471.08 (10) Denied requests shall inform you of your right to appeal.

Sincerely,

Brad Cowen
Superintendent

cc:   Jaileen Hopkins, Director of Program Services
      Tiana Bennett, Deputy Superintendent
      Lisa Curto, Director of Treatment
      File