UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTION; THOMAS A. TURCO III; SEAN MEDEIROS; JAMES M. O'GARA JR.; and STEPHANIE COLLINS,<br><br>    Defendants. | Civil Action No. 1:17-CV-12255-RGS<br><br>**PLAINTIFF JANE DOE'S RENEWED MOTION FOR PRELIMINARY INJUNCTION AND REPORT OF PARTIES' JUNE 28, 2018 MEET & CONFER** |

## INTRODUCTION

Plaintiff Jane Doe ("Plaintiff" or "Ms. Doe") is a 53-year old transgender woman who was diagnosed with the serious medical condition known as Gender Dysphoria ("GD"). Despite living as and being accepted as a woman in the community for decades, *see* ECF No. 1, ¶¶ 24-29, Defendants Massachusetts Department of Correction and its representatives (collectively, "DOC") insist on housing her in a men's prison facility known as MCI-Norfolk. As a result, she continues to suffer irreparable injury from the daily distress and ongoing discrimination she experiences as a woman in a men's facility. In denying the DOC's Motion to Dismiss, the Court indicated that Ms. Doe "may very well prevail on her ADA and Equal Protection claims." ECF No. 79. As directed by the Court, the parties held a telephone conference to meet and confer on June 28, 2018 to assess whether the parties could agree on aspects of Plaintiff's requested injunctive relief without the Court's intervention. The communications between the parties and DOC's responses to Ms. Doe's other requests have narrowed the relief Ms. Doe seeks. The single request for relief Ms. Doe now seeks by this renewed motion is her transfer to an appropriate women's correctional facility.

In her original motion before this Court, Plaintiff requested that DOC provide accommodations that take into account Ms. Doe's needs associated with her Gender Dysphoria diagnosis and status as a transgender woman, including enjoining DOC from treating Ms. Doe differently than other women held by DOC.  In addition to a transfer to the women's correctional facility, Ms. Doe sought relief that would protect her against having her naked body being seen by men including when showering or being strip searched.  She additionally sought relief to protect her from being demeaned, degraded and discriminated against as a woman in a men's facility.

DOC confirmed at the meet and confer that it was providing searches by female officers, when possible.  DOC also stated that it was its policy to have correctional officers refer to transgender women in prison in ways consistent with their female identity including, in Ms. Doe's case, using her legal female name and pronouns when making reference to her.  DOC also stated that it had made efforts to ensure Ms. Doe's privacy in the showers.

But despite the steps taken by DOC, Ms. Doe continues to face denigration as a woman. Correctional officers regularly refer to her as "Mister Doe" and refer to her by her former male name.  She is made to wear an identification tag that includes her male name even though it has been legally changed.  Ms. Doe continues to risk being made to shower in the presence of men and continues to experience ongoing discrimination as a result of being a woman in a men's facility.  The fact that she remains vulnerable to sexual violence, harassment by both male guards and inmates, and, on a daily basis, suffers insult and diminishment for being a transgender woman, underscores the pressing need for her immediate transfer to a women's facility.

 Ms. Doe therefore renews her Motion for a Preliminary Injunction and supporting Memorandum of Law (ECF Nos. 34-35) but narrows the scope of immediate relief requested to

include an Order requiring the DOC to transfer her to an appropriate women's correctional facility.

In addition to the factual allegations and legal arguments in her prior pleadings and briefs (ECF Nos. 1, 33, 35, 48, 64), Ms. Doe submits this statement of additional facts (including a report on the parties June 28 meet & confer), supplemental legal argument, and revised request for relief in support of this Renewed Motion for a Preliminary Injunction.

## STATEMENT OF ADDITIONAL FACTS

### I.   Continued Harm Suffered by Ms. Doe at MCI-Norfolk.

Ms. Doe continues to experience discrimination by DOC and to suffer irreparable harm as a result of being a transgender woman in a men's prison. DOC has not transferred Ms. Doe to a women's facility nor has it agreed that it will do so. As a result, she continues to experience the despair, anxiety, and feelings of hopelessness resulting from the discrimination she faces and that caused her to seek preliminary relief in this case. *See generally* Ex. 1, Third Affidavit of Jane Doe ("Third Doe Aff."). Although DOC has had Ms. Doe medically evaluated for transfer since this Court's decision denying DOC's motion to dismiss, *id.* ¶ 1, it has not taken any action yet nor informed her of its intent to do so.

The steps that DOC has taken to try to limit or minimize the harms Ms. Doe experiences as a woman in a men's facility underscore the fact that the only way to protect Ms. Doe against the discrimination she faces is a transfer to a women's facility. Until this week, Ms. Doe was housed on the 3-2 unit where she was permitted to shower for only a few minutes during the morning "count time," *i.e.*, when prisoners are purportedly locked in their cells to be accounted for. However, many cells on the 3-2 unit do not lock properly and prisoners can, and did, easily open the cell doors during count time. *See id.* ¶ 4. On multiple occasions, prisoners left their cells and entered the bathroom during Ms. Doe's allotted shower time. *Id.* ¶ 3, 6. They

continued to ignore or be completely unaware of the DOC's rule requiring them to stay out of the bathroom during Ms. Doe's designated shower time. *Id.* ¶ 3.

As recently as Saturday, June 23rd, two male prisoners entered the shower area while Ms. Doe was there. *Id.* ¶ 6. Ms. Doe informed Correctional Officer Vinimie that the unit and hallway doors should have been locked. *Id.* But the officer had no idea that this was the protocol during Ms. Doe's shower time. *Id.* Because of DOC's persistent inability to prevent men from entering the showers, Ms. Doe remains anxious and scared that male prisoners can walk into the shower, see her female body, make degrading comments to her, or threaten her safety. *Id.* ¶ 7.

After repeated, unsuccessful attempts to implement practices that guarantee Ms. Doe's showering privacy, the DOC sent notice to Ms. Doe's counsel on July 9, 2018 that she would be transferred to unit 6-2 where, according to Ms. Doe, there are more functioning locks on the unit and a door that can be locked during her shower time.[1] When Ms. Doe arrived in unit 6-2, the lock to her cell was not functioning and had to be repaired. Whether Ms. Doe will continue to face the problems she has had in the shower remains to be seen. But the experiences she has endured have caused her distress, fear, and anxiety, and send a message to her that denigrates her identity as a woman. Moreover, even if 6-2 were to afford Ms. Doe more safety while she showers, it is problematic that she is relegated to this unit in order to be more secure. If Ms. Doe were to want to avail herself of certain programming only available in other parts of the facility, she would have to compromise her safety.[2]

---

[1] Ms. Doe was moved to unit 6-2 after she executed her Affidavit on July 5, 2018, and thus the Affidavit does not address this transfer.

[2] The fact that Ms. Doe can only identify a single unit where there is a chance that she can access showers without the presence of men – an arrangement that has to be tested – underscores the inappropriateness of housing transgender women in men's facilities. In *Henderson v. Thomas*,

In addition, numerous DOC officers continue to refer to Ms. Doe by "Mister Doe" and continue to use her former male name, even though she legally changed her name to reflect her female identity. *See id.* ¶ 12. DOC has not updated Ms. Doe's records to reflect her legal name. *Id.* Without changing these records and because Ms. Doe remains in a men's facility, DOC officials will likely continue to assume that Ms. Doe should be treated as a man and referred to using male pronouns. Each time this happens, Ms. Doe feels degraded because her very existence as a transgender woman is being rejected. *Id.*[3]

Finally, Ms. Doe was recently prohibited from working for 4 consecutive days because of an incident where a correctional officer reported to her boss that she might file a charge of discrimination against him because she had done so against the correctional officer. Ms. Doe had reported the correctional officer for sexual harassment months prior. *See id.* ¶ 13. While she spoke to her boss and resolved the misunderstanding, she continues to face ongoing discrimination for being a transgender woman at MCI-Norfolk. *Id.* ¶¶ 13-14, 16.

## II.     Report on the June 28, 2018 Meet & Confer Between Plaintiff and DOC Attorneys.

On June 28, 2018, pursuant to the Court's June 14 Order, the parties' counsel met and conferred to determine "which aspects of injunctive relief can be agreed to without the court's intervention" following the decision denying DOC's Motion to Dismiss.[4] In that discussion and

---

for example, the Court held that a blanket policy of categorically segregating all HIV-positive inmates in one special housing unit violated the Americans with Disabilities Act and Rehabilitation Act.   913 F. Supp. 2d 1267, 1291-1307 (M.D. Ala. 2012).

[3] Since being moved to unit 6-2, DOC has provided Ms. Doe with a new showering time. However, in the letter sent to Ms. Doe acknowledging this change, Deputy Superintendent Tiana Bennett continues to use Ms. Doe's former male name. *See* Ex. 2.

[4] Prior to the meet and confer, on June 25, Ms. Doe's counsel asked DOC counsel to inform them what relief was still at issue, and what could be agreed to before the meeting. *See* Ex. 3 (June 25, 2018 email from Ms. Matos to Mr. McFarland). DOC counsel was unable to do so before the June 28 meet & confer.

by email correspondence since, counsel for parties discussed Ms. Doe's continued requests for relief, namely:[5]

(1) Transfer to women's prison facility.  In response to Ms. Doe's transfer request, DOC counsel stated that Drs. Andrade and Thompson evaluated Ms. Doe on June 25th to determine whether she should be transferred to the women's facility.  DOC counsel could not say what the doctors had recommended or exactly how long the process would take.  Nor could they provide further details of that evaluation.  Surprisingly, DOC counsel stated that a "security review" is required under DOC 652 before Ms. Doe could be transferred and explained this review could take as long as *30 to 60 days*.  According to that policy, a "security review" is necessary only when a "treatment recommendation is made that may potentially present overwhelming security, safety, or operational difficulties within the correctional environment."  DOC 652.08.  It is unclear why this additional review is necessary or why DOC could not report on it on June 28th.  Ms. Doe had already undergone a security risk assessment for transfer as part of her last classification hearing as DOC counsel explained to the Court at the hearing on Plaintiff's motion for preliminary injunctive relief.  *See* Ex. 5, Feb. 28, 2018 Hearing Tr. at 32:23-25 ("In the December – late November, early December of 2017 the plaintiff underwent an individualized assessment with regard to her placement within the DOC custody.").  Likewise, DOC counsel stated that the Gender Dysphoria Committee conducts regular assessments of transgender

---

[5] In a letter dated July 3, 2018, three business days following the meet and confer, counsel for Ms. Doe asked DOC by noon on July 5 to provide an answer on whether (and when) DOC will provide Ms. Doe with the relief requested. *See* Ex. 4 (July 3, 2018 Letter from Ms. Matos to Mr. McFarland). DOC counsel responded that her colleague was on vacation that week; that she had reached out to DOC about the issues discussed; and that she would not respond until early the following week. *See* Ex. 5 (July 3, 2018 10:38 am email from Ms. Staples to Ms. Matos). Ms. Doe's counsel explained this kind of delay causes continued irreparable harm to Ms. Doe. *See id.* (July 3, 2018 2:56pm email from Ms. Matos to Ms. Staples).

prisoners' "medical and mental health needs, their treatment for GD, their history of crimes and disciplinary histories, as well as program needs." *Id.* at 14:17-15:3. Thus, by now – 8 months after Ms. Doe filed her Complaint and more than a year since Ms. Doe entered DOC custody – DOC should have everything it needs to move forward with Ms. Doe's transfer request. Accordingly, Ms. Doe renews her request for preliminary injunctive relief to include a transfer to an appropriate women's facility.

(2) <u>Other Issues</u>. The parties discussed the other issues included in Ms. Doe's original motion for preliminary injunctive relief including to ensure her: privacy in showers, appropriate strip searches, proper identification, and respect for her female gender identity. As set forth above, the changes DOC recently made to address those issues demonstrate that the discrimination Ms. Doe experiences at MCI-Norfolk can only be fully resolved by her transfer to a women's correctional facility and that she will continue to suffer irreparable injury as long as her transfer is denied.

## SUPPLEMENTAL ARGUMENT

### I.  Ms. Doe Has An Even Greater Likelihood of Success Following the Court's June 14, 2018 Order.

The Court's June 14, 2018 Order makes clear that Ms. Doe has a substantial likelihood of success on her ADA/Rehabilitation Act, Equal Protection, and Due Process claims. On June 14, 2018, the Court denied DOC's Motion to Dismiss the Complaint for Failure to State a Claim. With respect to her ADA claims, the Court held that Ms. Doe "has established a *prima facie* claim to being a qualified individual with a disability under the ADA." ECF No. 79 at 20. Moreover, the Court found that she adequately pled all other ADA requirements, namely: "that Doe has been denied some benefit or excluded from some public program or otherwise discriminated against by a public entity, and that the exclusion, denial, or discrimination has a

causal connection to her GD." *Id.* at 20-21. The Court thus denied DOC's Motion to Dismiss Counts One (ADA) and Two (FRA) of Ms. Doe's Complaint. *Id.* at 22.

As set forth in Ms. Doe's Reply Memorandum, ECF 48 at 1-3, DOC's assertion during the meet and confer that it is evaluating Ms. Doe for a transfer under its own policy does not meet its obligation to respond to a request for a reasonable accommodation under the Americans with Disabilities Act ("ADA") and so does not, in any way, diminish Plaintiff's likelihood of success on her ADA claim. Plaintiff has met her burden of requesting a reasonable accommodation: transfer to the appropriate women's correctional facility. Once she has requested such an accommodation, the burden of proof shifts to the defendant, who must either provide the accommodation or establish that the requested relief requires an unduly burdensome or fundamental alteration of state policy. *See id.* at 3-5.

The DOC has failed, to date, to explain or come forward with evidence that satisfies its burden for showing that Ms. Doe's requested accommodation for a transfer is unreasonable, unduly burdensome, or would result in a fundamental alteration of the women's prison.[6] The DOC's representation that it has undertaken a medical evaluation of her and is awaiting a safety assessment and final decision by the Superintendent is unresponsive to its burden and insufficient to provide grounds to deny the requested relief in the form of a transfer. And, in any case, DOC cannot demonstrate undue burden or fundamental alteration because it has represented to Ms. Doe and to this Court that its policy provides for the placement of transgender women in the women's correctional facility. *See, e.g.*, ECF No. 45 at 3 ¶ 4, 19-21. In addition, as noted by this Court in its June 14 decision and Order, Massachusetts law effective December 2018 will require housing of transgender inmates based

---

[6] Plaintiff more fully sets forth her argument on this point in her Reply. *See* ECF No. 48 at 1-5.

8

on their gender identity.[7]  Accordingly, Ms. Doe has a likelihood of success in proving that DOC's refusal to transfer her to a women's correctional facility is discrimination under the ADA.

With respect to Ms. Doe's Equal Protection and § 1983 claims, the Court applied intermediate scrutiny, likening Ms. Doe's transgender status to "other sex-based classifications." ECF 79 at 24.[8]  Under this standard, the "burden of justification for the classification is demanding and it rests entirely on the State, and the reviewing court must determine whether the proffered justification is exceedingly persuasive." *Id.* at 25 (internal citations and quotation marks omitted).  The justification "will only survive review if the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* at 26-27 (citations and internal quotation marks omitted).  Turning to the case at hand, the Court held: "the DOC has not met its burden of demonstrating that housing [Ms. Doe] and other similarly-situated transgender prisoners in facilities that correspond to their birth sex serves an important governmental interest." *Id.* at 27.

With respect to Ms. Doe's Due Process claim, the Court held that her Complaint "clearly sets out allegations that meet the requirement of demonstrating an 'atypical and significant hardship' imposed on Doe in relation to the normal incidents of prison life as compared to other inmates in the Massachusetts prison system." *Id.* at 31.

In conclusion, the Court stated that Ms. Doe "may very well prevail on her ADA and Equal Protection claims" and recognized that she may "renew the motion for broad injunctive

---

[7] The new law, Mass. Acts of 2018, c. 69, § 91, will go into effect on December 31, 2018.

[8] The Court acknowledged that two recent cases have applied heightened scrutiny to claims brought by transgender individuals.  ECF 79 at 24 (citing *Equal Emp't Opportunity Comm'n v. R.G. & G.R. Harris Funeral Homes, Inc.*, 2018 WL 1177669, at *5 (6th Cir. Mar. 7, 2018), and *Doe 1 v. Trump*, 275 F. Supp. 3d 167 (D.D.C. 2017)).

relief that she sought on February 2, 2018." *Id.* at 32.  The Court directed the parties "to meet and confer as to which aspects of injunctive relief can be agreed to without the court's intervention."  *Id.*  They have now done so and narrowed the scope of requested relief to the transfer she sought in her original filing.

For all these reasons, and those set forth in her prior briefing (ECF No. 33 at 11-30; ECF No. 35 at 19-39; ECF No. 64), Ms. Doe has a substantial likelihood of success on her ADA/Rehabilitation Act, Equal Protection, and Due Process claims.

## II. Preliminary Injunctive Relief Is Necessary To Prevent Immediate and Irreparable Harm to Ms. Doe.

Preliminary injunctive relief is also necessary because Ms. Doe continues to suffer irreparable injury at MCI-Norfolk.  The DOC has not transferred her to a women's facility nor agreed to do so.  DOC cannot provide her nondiscriminatory housing or housing that does not harm her as long as it incarcerates her in a male facility.  Ms. Doe continues to have her identity as a woman demeaned and degraded by her retention in the men's facility.  Dr. Ettner's testimony in support of Ms. Doe's original motion confirms that a key component of medical treatment for gender dysphoric individuals is to live, function, and be regarded by others *consistent with their gender identity*.  ECF No. 35-2, Ettner Aff. ¶ 19.  "If any aspect of this social role transition is impeded, it will undermine an individual's core identity and psychological health."  *Id.*

As set forth in her prior briefing, *see, e.g.*, ECF No. 1 ¶¶ 24-29; ECF No. 35-3, Doe Aff. ¶¶ 1-8, Ms. Doe has a diagnosis of Gender Dysphoria and lived as a woman her entire adult life before being incarcerated.  She suffers as a result of having her female identity and life experience as a woman denied and denigrated in a men's prison.  She is harmed because she cannot live and function as a woman in a men's facility.  *See* ECF No. 35-2.  Being treated and

referred to as male and put at risk of sexual violence makes her feel anxious, depressed, sad, and hopeless. Ex. 1 ¶¶ 11-12, 16; ECF 35-3, Doe Aff. ¶¶ 12-31. Despite the steps DOC has recently taken to address Ms. Doe's needs as a transgender woman in response to this lawsuit, she remains in the men's prison and continues to face conditions that deny she is a woman and that exacerbate the gender dysphoria from which she suffers. In addition, she continues to risk having her female body seen unclothed by men and is demeaned regularly by officers and inmates who treat her as male. She has also been diagnosed with Post-Traumatic Stress Disorder and Anxiety Disorder as a result of being placed in a male prison. *See, e.g.*, ECF No. 35 at 30-31. Her continued placement at MCI-Norfolk and the deprivation of her constitutional rights exacerbate these conditions and continue to cause her irreparable harm. *Id.*

    In sum, the factual record to date demonstrates that, as long as Ms. Doe remains in a men's correctional facility, there is no policy or training the DOC could implement that can guard Ms. Doe from the ongoing harm and denigration of her womanhood that plaintiff's expert, Randi Ettner, Ph.D., testified undermines Ms. Doe's psychological health and results in damaging anxiety and trauma to her. This harm to Ms. Doe cannot be remediated while Ms. Doe remains in a men's correctional facility. The record shows a pattern of ongoing unsuccessful attempts to ensure bodily privacy for Ms. Doe at MCI Norfolk. Further, based on Ms. Doe's experiences, correctional guards in a men's prison will, regardless of intervention or training, continue to call her by a male name and use male pronouns. As Dr. Ettner explained, these intractable problems exacerbate Ms. Doe's condition and are responsible for the psychological harm to Ms. Doe that has, and will, continue unabated as long as she is housed in a men's correctional facility rather than at a women's facility.

### III.   The Balance of the Equities and The Public Interest Still Warrant Injunctive Relief.

As described in prior briefing (ECF No. 35 at 31-32) and above, Ms. Doe's harm in staying at MCI-Norfolk far outweighs DOC's purported difficulty in transferring her to a women's correctional facility.  DOC Policy already recognizes that transgender prisoners diagnosed with Gender Dysphoria suffer from "clinically significant distress or impairment in social, occupational, or other important areas of functioning," DOC 652.01(A), and must be assessed for the "risk of victimization," among other things, when they enter the prison environment, DOC 652.09(A).

Likewise, current federal regulations (*see* C.F.R. § 115.42(c)) and DOC Policy (*see* DOC 652.09) prohibit housing assignments for transgender prisoners to be based solely on a prisoner's birth sex.  Thus, current law already contemplates that a transgender woman, like Ms. Doe, should be placed in a women's facility in appropriate circumstances.  As set forth above and in her earlier briefing, those circumstances are met: (i) Ms. Doe has been diagnosed with GD; (ii) Ms. Doe transitioned to being female decades ago; (iii) Ms. Doe experiences anxiety, depression, and stress on a daily basis as a result of being held at MCI-Norfolk; and (iv) Ms. Doe is serving time for a non-violent drug offense and presents no threat to women if transferred to a women's facility.  Ms. Doe filed her Complaint requesting this relief *in November of 2017*.  DOC has had plenty of time to conduct whatever assessment is necessary to transfer her to MCI-Framingham, or any other appropriate women's correctional facility, and to prepare DOC officers and staff at the women's facility for her arrival.

There is no public interest served by holding Ms. Doe at a men's facility, particularly given a recently passed law that anticipates transgender women being housed in women's facilities.  As this Court noted in its June 14, 2018 Order, the Criminal Justice Reform Act, signed into law by Governor Baker on April 13, 2018, provides that a transgender prisoner:

12

> **shall be . . . housed in a correctional facility with inmates with the same gender identity;** provided, that the placement shall be consistent with the prisoner's request, unless the commissioner, the sheriff or a designee of the commissioner or sheriff certifies in writing that the particular placement would not ensure the prisoner's health or safety or that the placement would present management or security problems.

Mass. Acts of 2018, c. 69, § 91 (amending Chapter 127 of Mass. Gen. Laws by inserting a new Section 32A) (emphasis added).  Although this Act does not take effect until December 31, 2018, it underscores the public's interest in housing Massachusetts prisoners according to their gender identity and demonstrates that there is no public interest in barring them from being so housed.

## **REQUESTED RELIEF**

      For the foregoing reasons, Ms. Doe's Renewed Motion for a Preliminary Injunction should be granted, and the DOC should be ordered to transfer Ms. Doe to an appropriate women's correctional facility.

Dated: July 13, 2018

*/s/ J. Anthony Downs*
J. Anthony Downs (BBO# 552839)
Tiffiney F. Carney (*pro hac vice* pending)
Louis L. Lobel (BBO# 693292)
Ashley E. Moore (BBO# 694731)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
E-mail:
jdowns@goodwinlaw.com
tcarney@goodwinlaw.com
llobel@goodwinlaw.com
amoore@goodwinlaw.com

Jennifer Levi (BBO# 562298)
Bennett Klein (BBO# 550702)
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, Massachusetts 02108
Tel.: +1 617 426 1350
Email: jlevi@glad.org
bklein@glad.org

Elizabeth Matos (BBO# 671505)
Joel Thompson (BBO# 662164)
Prisoners' Legal Services
10 Winthrop Square, 3rd Floor
Boston, MA 02110
Tel.: +1 617 482 6383
E-mail: lmatos@plsma.org
jthompson@plsma.org

**LOCAL RULE 7.1(A)(2) CERTIFICATION
AND CERTIFICATE OF SERVICE**

I, J. Anthony Downs, hereby certify that counsel for Plaintiff, Jane Doe, conferred by e-mail and phone with opposing counsel in an effort to resolve or narrow the issues presented in this motion prior to filing, and opposing counsel does not assent to the relief sought herein.

I further certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 13, 2018.

*/s/ J. Anthony Downs*