UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE,<br><br>   Plaintiff,<br><br>   v.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTION; THOMAS A. TURCO III; SEAN MEDEIROS; JAMES M. O'GARA JR.; and STEPHANIE COLLINS,<br><br>   Defendants. | Civil Action No. 17-12255-RGS |

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION ATTORNEYS' FEES AND EXPENSES**

Under 42 U.S.C. §§ 1988 and Federal Rule of Civil Procedure 54, and this Court's April 22 and May 3, 2019 Orders (D.I. 117 & D.I. 119), Plaintiff Jane Doe, the prevailing party in this case, moves for an award of reasonable attorneys' fees and litigation expenses incurred in this action.

This is an important case, in which the relief obtained by Ms. Doe was unprecedented in that she was the first transgender woman to be transferred from a men's prison to a women's prison in Massachusetts, in response to claims that she was being discriminated against under Federal statutory and constitutional law based on her gender and her diagnosis of gender dysphoria. As described below, Ms. Doe initially obtained specific relief from this Court – including an order that Defendant arrange for appropriate strip searching of her, meet her housing needs, and ensure private showering time – in response to her complaint and preliminary injunction motion in order to alleviate discriminatory treatment she received while she was still a prisoner in the men's prison in Norfolk ("MCI-Norfolk"). She would not have obtained this relief, but for her determination to pursue this lawsuit and to seek relief under Federal law in this

1

Court.  This Court gave further relief to Ms. Doe when it denied the Defendants' motion to dismiss the complaint, *see* D.I. 79, thus allowing Ms. Doe to proceed with important novel claims under, *e.g.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq.  And after the Court's decision made it clear that this case would proceed on the merits of the Federal claims, the Commonwealth gave Ms. Doe the requested relief of a transfer to the women's prison in Framingham, relief it had previously specifically rejected.  In other words, Ms. Doe prevailed on essentially all of her requests for relief of discriminatory treatment against her as a transgender woman, and for a transfer from Norfolk to Framingham ("MCI-Framingham").  This Court dismissed this case only after reaching the conclusion that "all of the relief Doe sought in her Renewed Motion for Preliminary Injunction has been provided, including the principal request to be transferred to a women's prison."  D.I. 115.

Given the nature and history of this case, Ms. Doe's attorneys are entitled by statute to an award of attorneys' fees and litigation expenses.  Ms. Doe was represented in this case by experienced Massachusetts attorneys from GLBTQ Legal Advocates and Defenders ("GLAD"), Prisoners' Legal Services of Massachusetts ("PLS"), and Goodwin Procter LLP ("Goodwin"), each of whom brought to bear in this case expertise in legal issues relating to prisoners' rights, the rights of transgender persons, the rights of disabled persons under the Americans with Disabilities Act ("ADA"), and other aspects of Federal statutory and constitutional law.  And, as described below, the amounts requested for fees and costs in this lawsuit are based on fee requests from the attorneys involved that have been reduced both in rates and in time spent on this matter.  This request is for a reasonable amount of attorneys' fees and costs in light of the complexity and importance of this novel case.

**I.     MS. DOE PREVAILED IN THE LITIGATION BY DEFEATING A MOTION TO DISMISS, OBTAINING PRELIMINARY INJUNCTIVE RELIEF, AND ULTIMATELY OBTAINING A TRANSFER OF MS. DOE FROM THE MEN'S PRISON IN NORFOLK TO THE WOMEN'S PRISON IN FRAMINGHAM**

Ms. Doe's lawsuit was filed on November 15, 2017, in an effort to obtain relief from discriminatory practices that she experienced as a transgender woman while she was incarcerated at the men's prison in Norfolk. She sought to obtain a transfer from MCI-Norfolk into an appropriate women's prison, and to stop the defendants from discriminating against her based on her transgender status and her diagnosed disability, gender dysphoria. Complaint at Prayer for Relief. Ms. Doe moved early on for a preliminary injunction seeking certain relief that included not only improvements to her present treatment at the men's prison, but also that she be transferred to the women's prison in Framingham. D.I. 35. The Defendants – the Massachusetts Department of Correction and certain individuals involved in administering the prisons[1] – moved to dismiss the Complaint filed by Ms. Doe and opposed the preliminary injunction. This Court, after a hearing, and after giving the United States an opportunity to weigh in on the issues (which it declined to do), denied the Defendants' Motion to Dismiss, finding that Ms. Doe <u>had</u> stated a claim for relief under the ADA, based on *inter alia* her diagnosis of gender dysphoria. D.I. 79 at 11-22.

Earlier, on March 5, 2019, the Court granted in part Ms. Doe's motion for a preliminary injunction and ordered specific relief including (1) that Ms. Doe be searched by female correctional officers when feasible; (2) that Ms. Doe be housed in an individual cell at the men's prison; and (3) that Ms. Doe be provided with a separate shower time outside of the presence of

---

[1] The individual defendants are Commissioner Thomas A. Turco III; MCI-Norfolk Superintendent Sean Medeiros; Americans with Disabilities Act Coordinator James M. O'Gara Jr.; and Assistant Deputy Commissioner of Clinical Services Stephanie Collins.

male inmates.  D.I. 59 at 4-5.  In the Court's Order denying Defendants' Motion to Dismiss, the Court also ordered the parties to meet and confer on which aspects of the requested injunctive relief could be agreed upon by the parties without the Court's intervention.  D.I. 79 at 32.

Following the ruling in Ms. Doe's favor on the Motion to Dismiss, the parties did meet and confer as directed by the Court, but did not reach agreement.  On July 13, 2018, which was the deadline for the parties to report on their meet and confer, Ms. Doe filed a Renewed Motion for Preliminary Injunction and Report of the Parties' June 28, 2018 Meet & Confer.  D.I. 81.  The Commonwealth had not, at that time, agreed to transfer Ms. Doe to MCI-Framingham, although the Defendants did provide some accommodations to Ms. Doe (*see, e.g.*, p. 2 of D.I. 81).  Even with those accommodations, Ms. Doe continued to face denigration in the men's prison.

Accordingly, Ms. Doe renewed her Motion for Preliminary Injunction and specifically focused on obtaining a transfer of Ms. Doe from the men's prison at MCI-Norfolk to the women's prison at MCI-Framingham.  *Id.* at 2-3.  The renewed motion included detailed facts concerning Ms. Doe's treatment at MCI-Norfolk, including lack of privacy in the showers, and continued treatment by prison officers who called her, *e.g.*, "Mister Doe" and continued to use her former male name.  *Id.* at 4-5.  Even so, with respect to the possibility of a transfer of Ms. Doe to MCI-Framingham, the Defendants as of mid-July 2018 continued to deny the transfer.  *Id.* at 6-7.

Because of this delay, and expected further delay from Defendants, Ms. Doe's Renewed Motion for Preliminary Injunction explained in detail why the failure of Defendants to transfer Ms. Doe to the women's prison constituted a violation of Ms. Doe's rights under the ADA/Rehabilitation Act and the Equal Protection and Due Process Clauses.  D.I. 81 at 7-11.

Ms. Doe explained how Ms. Doe was harmed because "she remains in the men's prison and continues to face conditions that deny she is a woman and that exacerbate the gender dysphoria from which she suffers," and she is "demeaned regularly by officers and inmates who treat her as male." *Id.* at 11 (referring also to her diagnosis of Post-Traumatic Stress Disorder and Anxiety Disorder). An expert retained by Ms. Doe, Dr. Randi Ettner Ph.D., confirmed how the denigration of Ms. Doe's womanhood undermined her health and caused damaging anxiety and trauma for her. *Id.* at 11; Affidavit of Randi Ettner, D.I. 35-2, ¶¶ 33, 35.

The filing of Ms. Doe's Renewed Motion for Preliminary Injunction resulted in the Commonwealth asking for an extension of time to respond to the motion in order "to evaluate and attempt to resolve Plaintiff's remaining concerns set forth in her motion," *i.e.*, the transfer. D.I. 84 (July 24, 2018). There then followed a series of agreed-upon joint motions extending the time to respond to Ms. Doe's motion. *See, e.g.*, D.I. 87, 89, 92, 94, 96, 99, 101. During this time, the parties held off on formal discovery, thus reducing the cost of litigation.

And during this agreed-upon extension of the Commonwealth's response to the pending injunction motion, the parties continued to work together to try to resolve the issues in the case. In or around September 2018, the Commonwealth decided that it would, in fact, transfer Ms. Doe to MCI-Framingham. The transfer occurred on September 25, 2018, and Ms. Doe entered MCI-Framingham at that time. This was reported to the Court in the status report D.I. 103, filed on January 14, 2019. The parties stated: "In light of the transfer, and the fact that Ms. Doe has now been at MCI-Framingham for over three months, the parties agree that the request for a preliminary injunction order from this Court requiring that Ms. Doe be transferred to a women's facility … is essentially moot." *Id.* at 1-2.

Ms. Doe's transfer to MCI-Framingham was the first time that a transgender prisoner like Ms. Doe has been transferred into a women's prison in Massachusetts. D.I. 103 at 1. The transfer was a direct result of the filing of this litigation, and of the Court's rulings on the merits of the case with respect to the Defendants' early Motion to Dismiss and the Motion for Preliminary Injunctive Relief.

This Court dismissed this case with prejudice on March 15, 2019 (see D.I. 108 & 109) on grounds that did not affect or overturn any of the relief that this Court had already granted to Ms. Doe, or that Ms. Doe had obtained as a result of this litigation[2], including the transfer of Ms. Doe to MCI-Framingham. Indeed, as noted above, this Court acknowledged in dismissing the case that "all of the relief Doe sought in her Renewed Motion for Preliminary Injunction has been provided, including the principal request to be transferred to a women's prison." D.I. 115.

Ms. Doe was, pursuant to the procedures of the Commonwealth, released from incarceration at MCI-Framingham on April 26, 2019.

## II.     MS. DOE WAS THE PREVAILING PARTY, AND AS SUCH IS ENTITLED TO REASONABLE ATTORNEYS' FEES IN THIS CASE

It is well-settled that in civil rights cases a "reasonable" fee is to be a "fully compensatory fee," *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), and is to be "calculated on the basis of rates and practices prevailing in the relevant market." *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989). The First Circuit has held that "'awards in favor of prevailing civil rights plaintiffs are virtually obligatory.'" *Diaz-Rivera v. Rivera-Rodriguez*, 377 F. 3d 119, 124 (1st Cir. 2004) (quoting *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293 (1st Cir. 2001)).

---

[2] Ms. Doe recognizes that the Massachusetts Criminal Justice Reform Act provides that "[a] prisoner of a correctional institution, jail or house of correction that has a gender identity. . . that differs from the prisoner's sex assigned at birth, with or without a diagnosis of gender dysphoria or any other physical or mental health diagnosis, shall be . . . housed in a correctional facility with inmates with the same gender identify." Mass. Gen. Law. Ch. 127, §32A. This statute, however, was not effective until December 31, 2018, three months after DOC transferred Ms. Doe to MCI-Framingham.

Awarding fees under Section 1988 "requires a two-part inquiry: 1) whether the plaintiff is the prevailing party, and 2) if the plaintiff is a prevailing party, what constitutes a reasonable fee award." *Boston's Children First v. City of Boston*, 395 F.3d 10, 14 (1st Cir. 2005). With respect to determining a "reasonable fee award," this Court applies the "lodestar" method, which is "the product of the number of hours appropriately worked times a reasonable hourly rate or rates." *Hutchinson v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011). Constructing the appropriate "lodestar" involves "establishing the prevailing hourly rate (or schedule of rates) in the community for the performance of similar legal services by comparably credentialed counsel." *Hutchinson*, 636 F.3d at 16.

Here, as discussed above, there is no question that Ms. Doe was the prevailing party as the relief she sought – the vindication of her rights under the Americans with Disabilities Act as a transgender woman, the alleviation of discriminatory treatment while she was incarcerated at Norfolk, and her transfer to the women's prison in Framingham – were obtained through this litigation. *See Gay Officers Action League*, 247 F.3d 288, 293 (party that obtained an injunction against the enforcement of a statute was the prevailing party); *LaChance v. Comm'r of Correction*, 475 Mass. 757, 764 (2016) ("under § 1988, plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit") (internal quotation marks omitted). Furthermore, since Ms. Doe obtained relief pursuant the ADA, which has its own fee provision, the attorneys' fees sought here are not limited by the Prison Litigation Reform Act (PLRA). *Armstrong v. Davis*, 318 F.3d 965, 973-74 (9th Cir. 2003).

**III.    THE FEES AND EXPENSES REQUESTED BY MS. DOE'S COUNSEL ARE REASONABLE, AND HAVE BEEN VOLUNTARILY REDUCED BY COUNSEL, AND ARE WITHIN THE PREVAILING HOURLY RATES IN THIS DISTRICT FOR SIMILAR SERVICES BY COMPARABLY CREDENTIALED COUNSEL**

Ms. Doe was able to achieve the results obtained in this case because of the expertise of the attorneys representing her with respect to the Federal law and state practices at issue in this case. Filed with this motion are affidavits from the lead attorneys who represented Ms. Doe in this *pro bono* case.

First, Jennifer Levi of GLAD has extensive legal expertise in dealing with the rights of transgender, gay and lesbian persons under Federal and state law, and in particular with the current state of the law regarding discrimination against transgender persons, and with the ADA. Her experience is described in detail in her affidavit submitted with this motion. Ms. Levi, as the Court will recall, argued for the Plaintiff against the Commonwealth's motion to dismiss Ms. Doe's claims based, *inter alia*, on the ADA. *See* D.I. 72 (Transcript of Motions hearing on 2/28/2018). And, Ms. Levi, in her affidavit, explains how the fee request she is making on behalf of GLAD is reasonable and has been pared down to focus on the core issues of this case, and not include time spent by others at GLAD who were also involved in this case.

Elizabeth Matos has extensive experience in dealing with clients who are incarcerated in Massachusetts prisons. As described in her affidavit, she is the Executive Director of PLS, an organization that has worked with persons incarcerated in Massachusetts since 1972 to promote the safe, humane and lawful treatment of Massachusetts prisoners through civil rights litigation, advocacy, counseling and outreach to policy makers and the public. Ms. Matos and her staff were instrumental in understanding the detailed operations of the Massachusetts state prisons where Ms. Doe was incarcerated, in identifying the many problems Ms. Doe faced while

8

incarcerated at MCI-Norfolk, in maintaining communications with Ms. Doe while she was incarcerated at both MCI-Norfolk and MCI-Framingham, and in discussions with the Defendants.

Anthony Downs, a partner at Goodwin, and associates Louis Lobel and Ashley Drake of Goodwin are the three private firm attorneys for whom fees are sought for this pro bono case. As described in his affidavit, Mr. Downs has been at Goodwin in Boston for over 30 years with a practice that includes general civil litigation, intellectual property litigation, and appellate advocacy in courts in this District and across the country. Before joining Goodwin in 1988, he served as a law clerk in the Second Circuit for Judge James L. Oakes and as a clerk on the U.S. Supreme Court for Chief Justice William Rehnquist. Downs Aff. at ¶ 2. Mr. Lobel and Ms. Drake are associates at Goodwin with great interest in civil rights and liberties. Mr. Lobel graduated from the University of Texas, School of Law in 2015, where he was a member of the Law Review, and he joined Goodwin in the fall of 2015. Ms. Drake graduated from the Howard University School of Law, where she was also a senior articles editor for the Howard Law Journal. She also joined Goodwin in the fall of 2015. Downs Aff. at ¶ 4.

As explained in Mr. Downs' affidavit, because Ms. Doe was indigent and this case was being handled on a *pro bono* basis, Goodwin did not submit regular monthly invoices for this case. Instead, Goodwin recorded time spent and expenses for this case using its internal tracking software. The fees and costs described in Mr. Downs' affidavit are based on these records, but the amounts requested in this case for time spent by Goodwin have been significantly reduced in several ways. First, the time spent on this matter by Mr. Downs, Mr. Lobel and Ms. Drake has been pared down to focus on the work done on the core matters at issue in this case, starting with the preparation of the complaint and associated filings for this case. In addition, for each of

9

these attorneys, their rates have been reduced to amounts that are less than 50% of the rates they would ordinarily charge for their time. *See* Downs Aff. at ¶¶ 12-13, 19.

As described below and in the attached affidavits, the rates sought for the GLAD, PLS and Goodwin attorneys are in line with rates approved by this and other courts in Boston in fee awards over the last six to eight years. Exemplary rates can be found in a number of decisions by this Court over recent years. *See, e.g., Aguiar Dias v. De Souza*, 2016 WL 6821067, at *3 (D. Mass. Nov. 17, 2016) ($400 per hour is a reasonable rate for a partner level attorney in Boston); *Smith v. Jenkins*, 818 F. Supp.2d 336, 346 (D. Mass. 2011) (Stearns, J.) (finding rates of $450 and $350 per hour for a partner and $150 for an associate to be reasonable); *Tuli v. Brigham & Women's Hospital, Inc.*, No. 07-cv-12338, 2009 WL 10693567, at *2 (D. Mass. Jun. 8, 2009) (finding, in 2009, that hourly rates ranging from $570 to $735 for partners and $250 to $495 for associates was reasonable). State courts in Massachusetts have approved comparable rates. *See Juan Juan Chen v. Wen Jing Huang*, 2016 WL 4729307, at *9 (Mass. Super. Sept. 7, 2016) (finding that an hourly rate of $350 for a junior associate and $500 for a senior associate were reasonable); *Fronk, et al. v. Fowler, et al.*, 22 Mass. L. Rptr. 366, 2007 WL 1130381, at *5-6 (Mass. Super. Feb. 23, 2007) (finding, in 2007, that hourly rates ranging from $450 to $575 for partners and $195 to $360 for associates was reasonable).

In determining what litigation expenses to award separate from the fees, the benchmark is the ordinary practice of the firm of the prevailing party's counsel with respect to the expenses in question. *See Boston & Me. Corp. v. Moore*, 776 F.2d 2, 11 (1st Cir. 1985); *Cushing v. McKee*, 853 F. Supp. 2d 163, 176-77 (allowing "reasonable out-of-pocket expenses in conjunction with the fee award); *see also Thayer v. City of Worcester*, 2017 WL 1190366, at *5 (D. Mass. Mar.

29, 2017) (awarding over $9000 in costs); *Chen*, 2016 WL 4729307, at *11 (awarding over $10,000 in costs incurred for filing fees, deposition transcripts, and interpreters).

In this case, Plaintiff's request for recovery of expenses seeks reimbursement only for expenses incurred in obtaining expert affidavits from two experts. First, Dr. Randi Ettner, Ph.D., a licensed clinical and forensic psychologist with a specialization in gender dysphoria and in the diagnosis, treatment and management of gender dysphoric individuals, provided a detailed declaration in support of Ms. Doe's Motion for Preliminary Injunction (D.I. 35-2), and a second declaration (D.I. 65) in opposition to the Commonwealth's then pending proposal to have Ms. Doe strip searched above the waist by a female officer, and below the waist by a male officer. Goodwin paid Dr. Ettner a total of $8,680.94 for the work related to the two expert declarations she provided in this matter. *See* Downs Aff. at ¶ 26.

Second, Mr. James Aiken, who had over 45 years of experience in prison administration, operation and management, submitted a declaration (D.I. 35-1) describing his experience as to how transgender inmates, including Ms. Doe, were subjected to discriminatory treatment, how that discriminatory treatment resulted in harm to the transgender inmate (including Ms. Doe), and how that discriminatory treatment could be alleviated by transferring her to a women's prison. Goodwin paid Mr. Aiken $3,060.00 for the work related to the expert declaration he provided in this matter. Downs Aff. at ¶ 26.

Ms. Doe thus seeks to recover the costs of the expert fees charged by these important declarants.

## IV. CONCLUSION AND SUMMARY

Wherefore, for all the reasons stated herein and in the accompanying affidavits and exhibits, Plaintiff Ms. Doe respectfully requests that the Court award payment for the following attorneys' fees and litigation expenses:

| | |
|---|---|
| Attorney fees of Jennifer Levi | $95,400.00 |
| Attorney fees of PLS | $32,222.50 |
| Attorney fees of Goodwin | $93,377.50 |
| Costs | $11,740.94 |
| **Total** | **$221,000** |

Respectfully submitted,

Jane Doe

By her attorneys,

/s/ J. Anthony Downs
J. Anthony Downs (BBO# 552839)
Louis L. Lobel (BBO# 693292)
Ashley M. Drake (BBO# 694731)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
E-mail: jdowns@goodwinlaw.com
tcarney@goodwinlaw.com
llobel@goodwinlaw.com
amoore@goodwinlaw.com

Jennifer Levi (BBO# 562298)
Bennett Klein (BBO# 550702)
GLBTQ Legal Advocates & Defenders
30 Winter Street, STE 800

Boston, Massachusetts 02108
Tel.: +1 617 426 1350
Email: jlevi@glad.org
bklein@glad.org

Elizabeth Matos (BBO# 671505)
Prisoners' Legal Services
50 Federal Street, 4th Floor
Boston, MA 02110

Dated: May 10, 2019