UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| JANE DOE,<br><br>　　Plaintiff,<br><br>　　v.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTION; THOMAS A. TURCO III; SEAN MEDEIROS; JAMES M. O'GARA JR.; and STEPHANIE COLLINS,<br><br>　　Defendants. | Civil Action No. 17-12255-RGS |

### AFFIDAVIT OF J. ANTHONY DOWNS IN SUPPORT OF <u>PLAINTIFF'S MOTION FOR ATTORNEYS' FEES</u>

　　1.　　I, J. Anthony Downs, am a partner in the Boston, Massachusetts office of the law firm of Goodwin Procter LLP ("Goodwin"). I am one of the attorneys for the plaintiff Jane Doe in this case and make this affidavit in support of her application for attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988. This Affidavit addresses the fees and costs incurred by Goodwin in connection with its representation of Ms. Doe in this case, and for which Ms. Doe seeks recovery. To date, because Ms. Doe is indigent, Goodwin has not received any payment for its work or reimbursement for its costs spent on this case. The same is true for our co-counsel who are also representing Ms. Doe in this case. Two of our co-counsel – Jennifer Levi, Director of the Transgender Rights Project at GLBTQ Legal Advocates and Defenders ("GLAD"), and Elizabeth Matos, the Executive Director of Prisoners' Legal Services ("PLS") – are separately providing affidavits identifying the fees and costs for which their organizations are seeking recovery in this matter.

**The Goodwin Attorneys On This Case**

2.      I joined Goodwin in 1988 and became a partner of the firm in 1995. I have been involved in many different types of litigation over the years, including commercial litigation, securities litigation, antitrust litigation, trade secret litigation, medical device litigation, and most recently in patent and other IP litigation in various jurisdictions around the country. I am admitted to practice and am a member in good standing in the courts of the Commonwealth of Massachusetts and in the following Federal courts: the United States Supreme Court; the United States Courts of Appeals for the First Circuit, Second Circuit, Ninth Circuit, District of Columbia Circuit, and Federal Circuit; and the United States District Courts for the District of Massachusetts, the Eastern District of Texas, the District of New Jersey, and the Northern District of Illinois. I have been the lead trial counsel in a number of different cases in courts in Massachusetts, Delaware, Texas, New Jersey and Alabama, and have argued appeals in the appellate courts of Massachusetts, and in the Federal, First, Second, Ninth and D.C. Circuits.

3.      I received my JD from the University of Chicago Law School with honors in 1986 after serving as Executive Editor of the Law Review. Before joining Goodwin, I served first as a law clerk to Judge James L. Oakes of the United States Court of Appeals for the Second Circuit in 1986-1987, and then as a law clerk to Chief Justice William H. Rehnquist of the United States Supreme Court in 1987-1988.

4.      Working with me at Goodwin on this case are litigation associates Louis Lobel and Ashley Moore Drake. Mr. Lobel earned his BA from Middlebury College in 2009, and his JD from The University of Texas at Austin in 2015. He was an Associate Notes Editor on the Texas Law Review. He joined Goodwin in the fall of 2015 and is admitted in

Massachusetts. Ms. Drake earned her BA from the University of Virginia in 2011, and her JD from Howard University Law School in 2015. She was a Senior Articles Editor on the Howard Law Journal. She also joined Goodwin in the fall of 2015 and is admitted in Massachusetts.

5. Additionally, there were a number of other associates, paralegals, and other legal or administrative staff who were also involved in this case and performed work on the matter that, in a non-pro bono case, might be charged the client. However, in this case, we are limiting the fee request to a portion of the work done by myself, Mr. Lobel and Ms. Drake.

### The Scope of Work Included in the Fee Request

6. Ms. Doe's Complaint in this case (D.I. 1) was filed on November, 15, 2017. Goodwin along with its co-counsel performed critical work in this litigation, including drafting and filing Ms. Doe's complaint, researching and developing the arguments behind the claims that were pursued in this case, including under the Americans with Disabilities Act ("ADA"), and in preparing and drafting Ms. Doe's response to the Defendants' Motion to Dismiss (D.I. 027 – 028).

7. On March 1, 2018, this Court held a hearing on the Defendants' Motion to Dismiss and on Ms. Doe's Motion for Preliminary Injunction. Four days later, the Court issued an Order (D.I. 59) reserving ruling on Defendants' Motion to Dismiss and Granting in Part Plaintiff's Motion for a Preliminary Injunction, thus giving Ms. Doe certain relief relating to her treatment at the men's prison, MCI Norfolk, where she was incarcerated. The Court's order was modified by D.I. 63, to make certain changes in the relief to be given to Ms. Doe at MCI Norfolk. Ms. Doe's request for a reconsideration was denied. D.I. 067. During this time in the case, the Court gave notice of the case to the United States giving the United States the

opportunity to intervene. On May 30, 2018, the United States gave notice that it would not intervene in the case.

8.      On June 14, 2018, this Court then issued its Memorandum and Order on Defendants' Motion to Dismiss (D.I. 79), denying the Defendants' motion, and allowing the case to proceed. The Court's decision was a first of its kind in providing that a transgender person who was diagnosed with gender dysphoria could state a claim for discrimination and seek reasonable accommodations under the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973. *See* D.I. 79 at 1-2, 11-23. The Court also noted that Ms. Doe had also stated a claim for violation of the Equal Protection Clause of the Fourteenth Amendment, and for violation of the Due Process Clause. *Id.* at 23-30 & 30-32.

9.      On July 13, 2018, Ms. Doe filed a Renewed Motion for Preliminary Injunction and Report of Parties' June 28, 2019, Meet and Confer (D.I. 81), with sealed exhibits. Ms. Doe again reiterated her request to be transferred to MCI Framingham. Over the next few months, the parties engaged in discussions about whether Ms. Doe would be transferred from the men's prison at MCI Norfolk, to the women's prison at MCI Framingham.

10.     While this renewed motion was pending, Defendants transferred Ms. Doe to MCI Framingham in September 2018. But even after Ms. Doe arrived at MCI Framingham, there were various issues that arose relating to Ms. Doe's treatment at MCI Framingham, which the parties sought to work out. The parties obtained extensions of time to respond to the Court's order for status reports and counsel for Ms. Doe continued to monitor Ms. Doe's status and treatment at Framingham and to work out any issues if possible. On January 3, 2019, the Court found Ms. Doe's pending Renewed Motion for Preliminary Injunction to be moot, and asked for a status report on outstanding issues by January 14, 2019 (D.I. 103), which the

parties provided (D.I. 103), and they also provided another status report on March 11, 2019 (D.I. 105-106). The Court then dismissed the case on March 14-15, 2019, finding that the case should be closed, and stating that the question of transfer was now moot, and the case should be dismissed. (D.I. 108-109). Ms. Doe's motion for reconsideration of the dismissal was filed on March 25, 2019 (D.I. 110) and denied by the Court on April 8, 2019 (D.I. 115).

11.     Ms. Doe was subsequently released from her incarceration at MCI Framingham on April 26, 2019.

### **Goodwin's Timekeeping and Billing Practices**

12.     As a partner at Goodwin for many years, I am familiar with Goodwin's timekeeping and billing practices. Goodwin generally bills its clients monthly for services rendered and expenses incurred in the previous month. In most cases, Goodwin charges its clients for legal services based primarily on the time dedicated to performing the services related to a particular matter. Charges for pro bono clients are recorded in the same fashion. However charges for time spent on pro bono matters are not actually billed to the client.

13.     To provide the information for its monthly bills to clients, and for records regarding its pro bono efforts, Goodwin uses a computer program that keeps track of time spent on matters throughout the firm. Goodwin's system lists the client, matter, date, task performed, and the time (in tenths of an hour) taken to perform the services associated with each time entry.

14.     The information contained in the time entry record is electronically transferred into the accounting system used by the firm's Finance and Accounting Department.

15.     From this information, the Accounting Department prepares a "pro forma statement" for each matter the firm handles for each client. The statement lists all attorney and paralegal services performed during the relevant period, the date on which each task was

performed, the attorney or paralegal performing the task, the time required to perform the task (in tenths of an hour), and other information, such as a description of the legal task performed.

16. From these pro forma statements, the attorney primarily responsible for that client prepares an invoice that states the fees and expenses for each of the client's matters, which is then forwarded to the client for payment. In most cases, the fees are calculated based upon the respective attorney and paralegal hourly rate charges for the legal services provided. The benchmark rates for individual lawyers can be, and typically are, adjusted on a year to year basis. The benchmark rates may or may not be the rate charged to a particular matter.

17. For calendar years 2017 and 2018, my established benchmark rate as a litigation partner at Goodwin exceeded $1000 per hour. Generally speaking, my rates charged to clients in 2017 and 2018 exceeded $950, taking into account negotiated discounts provided to certain clients.

18. The two associates on this case, Mr. Lobel and Ms. Drake are both in the same years-of-service class since they both joined the firm in 2015. In 2018, their benchmark billing rates were $590 per hour.

19. For purposes of this fee request, Goodwin is not using the benchmark billing rates for myself, Mr. Lobel or Ms. Drake. Rather, we are only seeing a fee award that is based on rates that are significantly below the usual rates actually charged for clients. Specifically, tor purposes of this fee request, we are seeking only $475 per hour for myself and $250 per hour for each of Mr. Lobel and Ms. Drake.

20. As referenced in our Motion, we have looked at a series of cases involving fee awards in the District of Massachusetts over the past ten years or so. It is my belief and understanding that the hourly rates for which we are seeking recovery in this matter are

6

reasonable and comparable to the rates granted in fee rewards in recent cases in Massachusetts federal courts as reported in published decisions.

**Goodwin's Time Entries For This Fee Request**

21.　Attached as Exhibit A is an Excel document compiled from Goodwin's records identifying time spent by myself, Mr. Lobel, and Ms. Drake on substantive legal work in this litigation, for which we are seeking recovery as attorneys' fees. Each time entry provides the date on which the work was performed, the name of the attorney performing the work, a brief description of the work performed, and the dollar value of the work performed calculated using the discounted rates discussed above.

22.　In addition to seeking recovery of fees using a highly discounted rate structure, we have also been conservative by only seeking a fee award for a portion of the work that was actually undertaken at Goodwin. Specifically, the fee request *excludes* the following categories of work performed by Goodwin:

1) time spent on the matter by paralegals, case assistants, and other attorneys whose time is not included in this fee request;

2) time spent by Goodwin on administrative, logistical, or less substantive matters (including proofreading and checking the citations of briefs, and preparing materials for hearings);

3) time spent by Goodwin on work done before October 7, 2017, which was shortly before Ms. Doe's complaint was finalized and filed on November 15, 2017; and

4) time spent on filings after Ms. Doe's filed her Renewed Motion for Preliminary Injunction on July 13, 2018, and before this Court dismissed the

7

case on March 15, 2019 and any subsequent filings (including the present fee application).

23.   In addition, we have conducted a search of recent attorneys' fee awards in Massachusetts U.S. District Court cases and in Massachusetts state court cases over the past ten years to determine what level of fees have been considered appropriate in this District for fee awards. As stated in the accompanying Plaintiff's Motion for Attorneys' Fees and Expenses, the fees sought in this case by Goodwin and by our co-counsel, fall within the range of fees that have been allowed in fee awards in cases in this District.

24.   As shown on the final page of Exhibit A, Goodwin seeks a total of $93,377.50 for 302.5 hours of attorney work on substantive legal tasks. This amounts to an average of just under $309 per hour of work for which Goodwin is seeking a fee recovery in this case.

**Expert Expenses**

25.   In addition to the time spent by Goodwin attorneys on this matter, Goodwin also incurred expenses in obtaining expert affidavits for this case. The invoices from the experts are attached as Exhibit B. The cost of those disbursements, reflected in Exhibit B, comes to $11,740.94.

26.   The aforementioned expenses were incurred in in obtaining expert affidavits from two experts. First, Dr. Randi Ettner, Ph.D., provided two declarations (D.I. 35-2 and D.I. 65) in support of Ms. Doe's opposition to the Defendants' motion to dismiss and her motion for reconsideration of this Court's ruling on Defendants' Motion for clarification (D.I. 62). Dr. Ettner is a clinical and forensic psychologist who specializes in the diagnosis, treatment, and management of individuals with gender dysphoria. She has over 40 years of experience and has published four books on the topic. As shown in Exhibit B, Goodwin paid Dr. Ettner $8,680.94

for the work related to the two expert declarations she provided in this matter. Second, Mr. James Aiken, who had over 45 years of experience in prison administration, operation and management, submitted a declaration (D.I. 35-1) describing his experience as to how transgender inmates, including Ms. Doe, were subjected to discriminatory treatment, how that discriminatory treatment resulted in harm to the transgender inmate (including Ms. Doe), and how that discriminatory treatment could be alleviated by transferring her to a women's prison. As shown in Exhibit B, Goodwin paid Mr. Aiken $3,060.00 for the work related to the expert declaration he provided in this matter.

    I hereby declare under penalties and perjury that the forgoing is true and accurate.

Dated: May 10, 2019

                                                              J. Anthony Downs

## CERTIFICATE OF SERVICE

  I, J. Anthony Downs, do hereby certify that the foregoing document is being filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on May 10, 2019. The foregoing document will be available for viewing and downloading from the ECF system.

                  /s/ J. Anthony Downs