UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-12255-RGS

JANE DOE,
                Plaintiff

V.

MASSACHUSETTS DEPARTMENT
OF CORRECTION; THOMAS A. TURCO, III;
SEAN MEDEIROS; JAMES M. O'GARA, JR., and
STEPHANIE COLLINS,
                Defendants

## **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

Defendants oppose Plaintiffs' Motion for Attorneys' Fees, Expenses and Costs. (Docket No. 12). The request for attorneys' fees fails to comply with long-standing judicial pronouncements in several key aspects and seeks excessive compensation.

## **INTRODUCTION**

Plaintiff Jane Doe (Plaintiff) is a former inmate previously incarcerated at MCI-Norfolk, a medium-security prison for men located in Norfolk, MA, and MCI-Framingham, a medium-security prison for women located in Framingham, MA. Plaintiff was released from custody of the Massachusetts Department of Correction ("Department" or "DOC") on April 26, 2019. Plaintiff's Complaint alleged that she has been diagnosed with Gender Dysphoria ("GD") and that the defendants failed to provide her with reasonable accommodations for her disability. (Docket #1). The Complaint alleged violations of plaintiff's rights under Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("RA"), the Fourteenth Amendment, and Articles 1, 7, 106, and 114 of the Massachusetts (Docket No. 1). The Complaint also sought the following injunctive relief: 1) transferring to MCI-Framingham; 2)

prohibiting male correction officers from conducting her strip searches; (3) training of MCI-Norfolk staff to communicate with her using female pronouns and her chosen nickname; 4) provision of a separate time for showering apart from male inmates; and 5) provisions of access to healthcare such as mammograms.  (Docket No. 1).

Defendants are the Department; Thomas A Turco III, in his official capacity as Commissioner of Correction; Sean Medeiros, in his official capacity as Superintendent of MCI-Norfolk; Stephanie Collins, in her official capacity as the Department's Assistant Deputy Commissioner of Clinical Services; and James M. O'Gara, in his official capacity as the Department's ADA Coordinator.  (Docket No. 1).

## PROCEDURAL BACKGROUND

Plaintiff filed her Complaint on November 15, 2017, which contained specific requests for injunctive relief.  (Docket No. 1).  On January 5, 2018, defendants filed a Motion to Dismiss the Complaint.  (Docket No. 27).  On February 2, 2018, plaintiff filed her Opposition to defendants' Motion to Dismiss, along with a Motion for a Preliminary Injunction, seeking the following relief:

> 1) transfer Doe to MCI-Framingham [a DOC facility for women]; 2) enjoin Defendants from using male correctional officers to conduct strip searches of Jane Doe, except in exigent circumstances; (3) enjoin Defendants from forcing Jane Doe to shower in the presence of men and with a shower curtain that does not adequately cover her; (4) enjoin Defendants from treating Jane Doe differently than other women held by the DOC; (5) train all staff on how to appropriately accommodate, treat and communicate with individuals with Gender Dysphoria within 60 days of this order; (6) enjoin Defendants from using male pronouns when speaking to or about Jane Does; (7) enjoin Defendants from referring to Jane Doe by her former male name (or any abbreviated version thereof); (8) refer to Jane Doe by her chosen female name; and (9) award such other relief as is just and proper.   (Docket No. 35).

On February 21, 2018, defendants filed an Opposition to plaintiff's Motion for a Preliminary Injunction. (Docket No. 45). On March 5, 2018, the Court reserved ruling on defendants' Motion to Dismiss, and granted in part and denied in part plaintiff's Motion for Preliminary Injunction. (Docket No. 59). Specifically the Court ordered:

> 1) The defendants shall, consistent with staffing concerns and the collective bargaining agreements in place between prison administrators and corrections officers, utilize female correctional officers whenever feasible when conducting strip searches of Jane Doe.
> 2) The defendants shall, absent exigent circumstances, continue to house Jane Doe in the individual cell in Unit 3-2 and shall continue to offer the separate shower time to Jane Doe that the parties agree is currently provided.
> 3) To the extent staffing needs allow, the defendants shall make available a separate correctional officer to ensure that male inmates do not enter the shower area during the period of time in which Jane Doe is showering. (Docket No. 59).

All other relief requested by plaintiff in her Motion for Preliminary Injunction was denied. On March 15, 2018, defendants filed a Motion for Clarification regarding the Order on the Motion to Dismiss and Motion for Preliminary Injunction, which the Court allowed on March 16, 2018. (Docket No. 63). After receiving notification from the United States Attorney's Office that it would not be intervening in this matter, the Court denied defendants' Motion to Dismiss.

On July 13, 2018, plaintiff filed a Renewed Motion for a Preliminary Injunction and Report of the Parties. (Docket No. 81). In her Motion, plaintiff "narrow[ed] the scope of immediate relief requested to include an Order requiring the DOC to transfer her to an appropriate women's correctional facility(Docket No. 81). The parties filed several Joint Motions for Extension of Time for defendants to reply to Plaintiff's Renewed Motion for a Preliminary Injunction and Report of the Parties in order for the Department to review the GD Treatment Committee's recommendation that plaintiff be transferred to MCI-Framingham,

pursuant to 103 CMR 562, *Identification, Treatment and Correctional Management of Inmates Diagnosed with Gender Dysphoria*.    (Docket No. 84, 86, 89, 92, 99).

On September 25, 2019, after having conducted a security review of the GD Treatment Committee's recommendation, the Department transferred plaintiff to MCI-Framingham, independent of any Court order.  On January 3, 2019, in response to another Joint Motion for an Extension of Time for defendants to reply to Plaintiff's Renewed Motion for a Preliminary Injunction, the Court entered the following Order:

> Because the circumstances have changed since Doe's filing of the Renewed Motion for a Preliminary Injunction, a Response to that Motion would no longer be useful.  The court, therefore, moots the Renewed Motion for Preliminary Injunction and denies Defendants' Motion for an Extension of Time.  Instead, the court requests that the parties file a status report regarding what issues are outstanding no later than January 14, 2019.  Thereafter, the Court will reinstate a briefing schedule. (Docket No. 101, 102).

The parties filed a joint status report as requested on January 14, 2019.  (Docket No. 103).  The Court requested an updated status report by March 11, 2019.  (Docket No. 104).

On March 11, 2019, the parties filed a Joint Status Report with divergent reports of the status of the case, the details of which are noted in the report, but filed under seal.  (Docket No. 106).  On March 17, 2019, the Court made the following Order:

> The sole remaining request in the Renewed Motion for Preliminary Injunction was for Doe to be "transfer[ed] to an appropriate women's facility."  Dk. # 81 at 1.  In September of 2018, the Department of Correction did just that, transferring Doe to MCI-Framingham.  In the first Joint Status Report, the parties acknowledged that Doe's request "is now moot."  Dkt. # 103 at 2.  However, Doe now seeks to inject new claims that were never previously raised in this lengthy litigation.  *See* Dkt., # 107.  Accordingly, the court denies Doe's request to proceed with discovery.  The clerk will close the case. Dkt. # 108.

On March 15, 2019, the case was dismissed with prejudice.  (Docket No. 109).  On March 25, 2019, plaintiff filed a Motion for Reconsideration, and defendants filed an Opposition.  (Docket No. 110, 111).  On April 8, 2019, the Court denied plaintiff's Motion for Reconsideration.

On May 10, 2019, plaintiff filed a Motion for Attorneys' Fees and Costs, seeking fees of $209,259.06 for work done by the attorneys and $11,740.94 in costs. (Docket No. 126). The request for an award of attorney's fees and costs should be denied. If the Court is inclined to consider plaintiff's request for attorney's fees and costs, her request should be significantly reduced.

## ARGUMENT

As will be argued further below, plaintiff is not a "prevailing party" in this matter as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1988. As such, she is not entitled to attorneys' fees and costs incurred in the prosecution of this matter. At best, plaintiff may be considered a partially prevailing party because she only prevailed on three of her nine requests for relief raised in her first Motion for a Preliminary Injunction, which three claims became moot after seven (7) months. At no other time during this litigation was plaintiff a prevailing party. Her partial success on only three of the nine claims made in the initial Motion, which claims became moot upon her transfer to MCI-Framingham, does "'not mean that [she] can recover for all the time spent in this litigation.'" *Alfonso v. Aufiero*, 66 F.Supp.2d 183, 191 (D. Mass. 1999). Rather, if fees are to be awarded, they must be reasonable. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).

## I.    APPLICABLE LEGAL STANDARDS

### A.    Attorney's Fees Must Be Fair and Reasonable.

A plaintiff prevails "'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012), *quoting Farrar v.*

*Hobby,* 506 U.S. 103, 111–112 (1992).  Under this standard, it is clear plaintiff did not prevail in this matter.  At best, plaintiff may be considered a partially prevailing party, and only for a short period of time.

This action was, in fact, dismissed by this Court on March 14, 2019, as the Court found that, upon the Department's transfer of plaintiff to MCI-Framingham, independent of this litigation, plaintiff's claims became moot.  (Docket No. 108).  There was never a Court Order that the Department transfer plaintiff to MCI-Framingham.  As such, the only instance where plaintiff might be deemed to have prevailed, albeit partially and for approximately seven (7) months, would be on her initial Motion for a Preliminary Injunction, which the Court allowed in part and denied in part.  (Docket No. 59).  For that Motion, the Court allowed three of plaintiff's requests, but ultimately denied plaintiff's request that the Department transfer her to MCI-Framingham.  (Docket No. 59).

As such, plaintiff cannot be considered a prevailing party with regard to her ultimate transfer to MCI-Framingham.  Her only prevailing claims are limited to those granted by the Court on plaintiff's initial Motion for a Preliminary Injunction.    Cf. *Alfonso v. Aufiero*, 66 F.Supp.2d 183, 191 (D. Mass. 1999); *Guckenberger v. Boston Univ.,* 8 F.Supp.2d 91, 99 (D. Mass. 1998).

The fee awarded must be a reasonable one:  "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).  Statutory fees are intended to be "adequate to attract competent counsel," but not to "produce windfalls to attorneys,"[1]  "not to enable counsel to obtain munificent fees,"[2] not "'to serve as full employment or continuing education programs

---

[1]    *Blum v. Stenson*, 465 U.S. 886, 897 (1984).
[2]    *Lewis v. Kendrick*, 944 F.2d 949, 956 (1st Cir. 1991).

for lawyers and paralegals,'"[3] and not to provide a "'form of economic relief to improve the financial lot of attorneys.'"[4]    Attorney's fees are compensatory – not punitive.    *Furtado v. Bishop*, 84 F.R.D. 671, 676 (D. Mass. 1979), *modified*, 635 F.2d 915 (1st Cir. 1980).    And, "[t]here must be an element of reason; the fee must not be such as to encourage the overpressing of marginal claims, a by no means idle fear."    *Furtado*, 84 F.R.D. at 676 (D. Mass. 1979). Further, the attorney's "fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that fund vital public services."    *Perdue,* 559 U.S. at 559.

In exercising their discretion in the award of attorney's fees, "trial courts need not, and indeed should not, become green-eyeshade accountants.    The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.    So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."    *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011).    *See Gabriele v. Southworth*, 712 F.2d 1505, 1507 (1st Cir. 1983) (trial judge must draw on her "own experience and wisdom" to determine whether time sent on each phase was excessive and must retain "an overall sense of proportion").    "A trial court has wide discretion when, but only when, it calls the game by the right rules."    *Fox,* 131 S.Ct. at 2217.    *See Blum,* 465 U.S. at 897.

The plaintiff bears the burden of proving reasonableness.    A "request for attorney's fees is required to be in good faith and in reasonable compliance with judicial pronouncements, and not an opening gambit in negotiations to reach an ultimate result."    *Lewis,* 944 F.2d at 958. Indeed, the fee-seeker in the first instance must exercise "billing judgment" and "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise

---

[3]    *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001), *quoting Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992).

[4]    *Perdue*, 559 U.S. at 552 (citation omitted).

unnecessary, just as a lawyer in private practice is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (internal quotations omitted). Simply put, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (citation and quotations omitted, emphasis in original).

### B.    The Lodestar is the Preferred Method to Calculate Fees.

The lodestar approach of multiplying the number of hours reasonably spent by a reasonable hourly rate is the appropriate method of computing reasonable attorney's fees to be awarded to a prevailing party pursuant to 42 U.S.C. § 1988. *Hensley*, 461 U.S. at 433. *See Gay Officers Action League*, 247 F.3d at 297; *Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 337 (1st Cir. 1997) (lodestar method is the "strongly preferred method" for calculating attorney's fees under § 1988 and a court "shuns this tried-and-true approach at its peril").

To compute the lodestar, the trial court "calculates the time counsel spent on the case, subtracts duplicative, unproductive or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Gay Officers Action League*, 247 F.3d at 296. *See Hensley*, 461 U.S. at 433.

While the attorneys' "contemporaneous billing records constitute the usual starting point, the court's discretion is by no means shackled by those records. For example, it is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like. . . ." *Gay Officers Action League*, 247 F.3d at 295-296 (citations omitted). *See Guckenberger*, 8 F.Supp.2d at 99-100 (the District Court "'has a right – indeed, a duty – to see whether counsel substantially exceeded the bounds of reasonable effort'" and "need not feel

handcuffed by counsel's submission of time records, no matter how elaborate.") (citation omitted).  As this Court has previously stated, the "'law firm's bill need not be swallowed whole by the client's litigation adversary just because it is the law firm's bill.'"  *Guckenberger*, 8 F.Supp.2d at 100 (citation omitted).   By segregating time spent on unsuccessful claims, eliminating excessive or unproductive hours and assigning "more realistic rates" for the work done, the Court may thus fashion a lodestar that "differs substantially from the fee requested by the prevailing party."  *Coutin*, 124 F.3d at 337.  *See Guckenberger,* 8 F.Supp.2d at 100.  "'In applying for judicial approval of a fee award, it is the plaintiff's burden to furnish the evidence required, not the court's burden to seek it out.'"  *Rolland v. Cellucci*, 106 F.Supp.2d 128 (D. Mass. 2000).

### C.    The Fee-Seekers Must Submit Detailed Time Records.

To facilitate the Court's review, the fee-seeking attorney is required to exercise "billing judgment" and "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  *Hensley*, 461 U.S. at 436.  *See Nadeau v. Helgemoe*, 581 F2d 275, 279 (1st Cir. 1978) ("As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorneys' fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.").

Over the ensuing thirty years since *Hensley*, the First Circuit has repeatedly made the need for proper billing records crystal clear:  "Attorneys who anticipate requesting their fees from the court would be well advised to maintain detailed, contemporaneous time records that will enable a later determination of the amount of time spent on particular issues."  *Wojtkowski v. Cade*, 725 F.2d 127, 130 (1st Cir. 1984).  *See, e.g., Grendel's Den v. Larkin*, 749 F.2d 945, 952

(1st Cir.1984); *Lipsett*, 975 F.3d at 938; *Burke v. McDonald*, 572 F.3d 51, 63 (1st Cir. 2009).

Time records are required to describe "with particularity the date, activity and time spent on each litigation task." *Rosie D. v. Patrick*, 593 F.Supp.2d 325, 329 (D. Mass. 2009).

"The prevailing party has the burden of proving the reasonableness of the hours claimed . . . When that party furnishes time records that are ill-suited for evaluative purposes, the court is hampered in ascertaining whether those hours were excessive, redundant, or spent on irrelevant issues. . . in such a circumstance, the court may adjust those entries to achieve an equitable result." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008); *see id.* (where entries are "too generic" to permit the court to evaluate for "excessiveness, redundancy and the like, the court "may either discount or disallow the hours").   In short, the District Court's "discretion in separating wheat from chaff is quite broad." *Torres-Rivera*, 524 F.3d at 340. The Court may "eliminate billed hours that are not precise enough to assess whether the time spent was reasonable" or "engage in a global reduction." *Rogers v. Cofield*, 935 F.Supp.2d 351, 363 (D. Mass. 2013).

The need for detailed records is obvious:  "The problem with imprecise records is that 'they fail to allow [ ] the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent." *Parker v. Swansea*, 310 F. Supp. 2d 376, 392 (D. Mass. 2004) (internal citations omitted). "[T]ime entries that amount to no more than 'gauzy generalities' will be 'substantially discounted.'" *Lipsett*, 975 F.2d at 938 (discounting 81.2 hours where time entries were "so nebulous" that they failed to allow the opposing party to challenge their accuracy or reasonableness) (citation omitted). *See Phetosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4, 7 (1st Cir, 1993) (time entries for "library" and "letters to opposing counsel" excluded because they "left the court guessing about their purposes"); *Furtado*, 635 F.2d at 922

(excluding time where records were ambiguous or inconsistent); *Walsh v. Boston Univ.,* 661 F.Supp.2d 91, 107 (D. Mass. 2009) (eliminating time where entries do not adequately describe task performed).

## II.    <u>PLAINTIFF IS NOT A PREVAILING PARTY.</u>

As previously noted, plaintiff is not a "prevailing party" in this matter as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1988.   To be a prevailing party, the plaintiff must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *De Jesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 199 (1st Cir. 2009) (quoting  *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (additional citation omitted)). This action was in fact, dismissed by the Court on March 14, 2019, after the Court determined that, upon the Department's transfer of plaintiff to MCI-Framingham, independent of this litigation, all of plaintiff's claims were moot.  (Docket No. 108).  There was never a Court Order that the Department transfer plaintiff to MCI-Framingham.  Rather, pursuant to 103 DOC 652, *Identification, Treatment and Correctional Management of Inmates Diagnosed with Gender Dysphoria,* plaintiff's transfer to MCI-Framingham on September 25, 2019, was the result of the Commissioner's approval of the Gender Dysphoria Treatment Committee's July 17, 2018, recommendation that she be housed at the female facility.  The transfer was also the result of the Section 91 of Chapter 69 of the Acts of 2018 (a.k.a. Criminal Justice Reform Act).  As such, plaintiff is not entitled to any attorneys' fees and/or costs incurred in the prosecution of this matter.

However, if the Court were to determine that plaintiff is entitled to some fee and/or cost recovery, the only instance where plaintiff might be deemed to have prevailed, albeit partially

and for a very short period of time, would be on her initial Motion for a Preliminary Injunction,

which the Court allowed in part and denied in part on March 5, 2018. (Docket No. 59). For that

Motion, the Court allowed three of plaintiff's nine requests for relief, but ultimately denied

plaintiff's request that the Department transfer her to MCI-Framingham, along with plaintiff's

five other requests for relief. (Docket No. 59). As such, plaintiff cannot be considered a

prevailing party with regard to her ultimate transfer to MCI-Framingham. Her only prevailing

claims are limited to those three claims granted by the Court on plaintiff's initial Motion for a

Preliminary Injunction.    Cf. *Alfonso v. Aufiero*, 66 F.Supp.2d 183, 191 (D. Mass. 1999);

*Guckenberger v. Boston Univ.,* 8 F.Supp.2d 91, 99 (D. Mass. 1998).

> The Court may award fees only for the successful claim. Where a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Hensley*, 461 U.S. at 436. *See Coutin,* 124 F.3d at 339 ("If a plaintiff prevails on only some of

multiple claims, then a fee reduction may be in order."). "The fee award, of course, should not

reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief:

Such work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'"

*Fox*, 131 S.Ct. at 2214, *quoting Hensley*, 461 U.S. at 435.   Where the claims are severable, the

unsuccessful claims must "be treated as if they had been raised in separate lawsuits, and

therefore no fee may be awarded for services on the unsuccessful claim." *Hensley*, 461 U.S. at

435.

"Claims are severable when they 'rest on different facts and legal theories.'" *Alfonso*, 66

F.Supp.2d at 194, *quoting Coutin*, 124 F.3d at 339. Where the unsuccessful and successful

claims "involve a common core of facts" or are "based on related legal theories," much of the attorney's time "will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. "'Where it would be an exercise in futility to separate out the legal services rendered for each claim, the fee should simply be determined as a function of degree of success.'" *Lipsett*, 975 F.2d at 940-941 (citation omitted).

When the claims are inextricably interrelated, the District Court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. In short, the "result is what matters." *Hensley*, 461 U.S. at 435. *See Hart v. Bourque*, 798 F.2d 519, 523 (1st Cir. 1986) ("the real test cannot be the number of hours logged, but what was done"). The "degree of success achieved in the litigation is a 'critical' factor in fixing the amount of an award under section 1988." *Domegan v. Ponte*, 972 F.2d 401, 421 n. 36 (1st Cir. 1992), *vacated on other grounds,* 507 U.S. 956 (1993)*, citing Texas Teachers Assn. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789-790 (1989).

Finally, any fee award must comport with the dictates of the attorney fee provision of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997(e)(d), which provides:

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that—

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and

(B)    (i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

To begin with, based upon the above analysis, plaintiff should not be compensated for any fees or costs incurred after March 5, 2018, the date of the Court's Order on plaintiff's initial Motion for a Preliminary Injunction, which is the only motion upon which plaintiff partially prevailed. As such, plaintiff's fee and cost request should initially be reduced from $209,259.06 to $185,080.00. (See Exhibit A, attached hereto)[5]. Furthermore, because plaintiff prevailed on only three of the nine requests for relief she asserted in her initial Motion for a Preliminary Injunction, she is entitled to only a third of the fees and costs incurred in preparation for the Motion. According to the billing documentation filed by plaintiff, counsel spent a total of 329.3 hours working on the Motion for Preliminary injunction, for a total of $119,727.50 of the $185,080.00 billed prior to March 5, 2018, leaving $65,352.50 for fees incurred prior to March 5, 2018, which are not related to the Motion for a Preliminary Injunction. Because plaintiff only prevailed on a third of her claims raised in her Motion for Preliminary Injunction, she should only be able to recover a maximum of $39,909.16 for any fees incurred because of the Motion for Preliminary Injunction. That amount, plus the $65,352.20 for other fees incurred prior to March 5, 2018, totals $105, 261.66. As such, the Court should begin its analysis with consideration of plaintiff's request at a maximum total of $105,261.66 for all attorneys' fees incurred by plaintiff related to this action.

Furthermore, the Court should reject plaintiff's request for $11,740.94 in costs for several reasons. To being with, 42 U.S.C.A. §1988(c) specifically bars awarding expert fees unless plaintiff has brought an action to enforce a provision of 42 U.S.C.A. § 1981 or § 1981(a). *See* 42 U.S.C.A. § 1988. Because plaintiff did not bring an action to enforce a provision of 42 U.S.C.A. § 1981 or § 1981(a), she cannot seek to recover any expert fees or costs associated with this

---

[5] Defendant has attached a detailed list of objections to each of plaintiff's submissions for attorney's fees and costs as Exhibit A.

action.  Second, plaintiff was not a prevailing party with regard to her A.D.A. claim.  In addition, neither of plaintiff's experts ever testified in Court, and there is no evidence that either expert contributed to plaintiff's partial success on the Motion for Preliminary Injunction.  As such, plaintiff should not be reimbursed for any expert fees or costs related to this matter.  *See Norkunas v.HPT Cambridge, LLC.,*   969 F. Supp. 2d 184 (D. Mass. 2013).  Also, plaintiff is not entitled to expert fees because plaintiff has not submitted the appropriate documentation to prove that the fees are reasonable.  Expert fees, like attorneys' fees, may only be awarded if the Court determines that they are "reasonable." *See* 42 U.S.C. §§ 1988(b) & 12205; 29 U.S.C. § 794a(b); *Guckenberger v. Boston Univ.*, 8 F.Supp.2d 91, (D. Mass. 1998).  Here, plaintiff offers absolutely no grounds for assessing the "reasonableness" of the fees charged. The submissions are merely costs and fees incurred, and, as such, are entirely insufficient as a matter of law. *See Id.*  Finally, the costs were incurred prior to March 5, 2018, and are associated with expert fees incurred in relation to plaintiff's request to be transferred to MCI-Framingham.  Because the Department transferred plaintiff independent of this action, plaintiff did not prevail on this claim, and any costs associated with plaintiff's request to be transferred should be denied.

## II.    PLAINTIFF HAS PROVIDED NO BASIS FOR THE HIGH HOURLY RATES SHE SEEKS.

Plaintiff has failed to demonstrate that the attorney rates she seeks are reasonable.  To begin with, the PLRA caps fees at 150 percent of the hourly rate established for payment of court-appointed counsel. The current rate for non-capital cases is $148 per hour.  See *Criminal Justice Act, Chapter 2, § 230: Compensation and Expenses of Appointed Counsel*.  As such, 150 percent of $148 would be $222 per hour, which is the maximum rate the Court should consider for any attorney.

15

In particular, the asserted fee for Attorney Downs is $475 per hour, and for Attorney Levi the fee is $600 per hour. The affidavits submitted by these and several other attorneys are insufficient to support the requested hourly rates. Specifically, "[t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). None of the attorneys have provided such evidence. Indeed, the "First Circuit requires that affidavits be submitted attesting to the reasonableness of the rates by knowledgeable attorneys unconnected to the underlying litigation." *Rosie D. v. Patrick*, 593 F.Supp.2d 325 (D. Mass. 2009). *See Martino v. Massachusetts Bay Transp. Auth.,* 230 F.Supp.2d 195, 205 (D. Mass. 2002) (even where plaintiff provides affidavits from attorneys unconnected to the litigation, court need not accept the affidavits at face value); *Williams v. Town of Randolph,* 574 F.Supp.2d 250, 252-253 (D. Mass. 2008) (affidavit of plaintiff's own attorney was insufficient to allow court to determine that the proposed rates were reasonable and, combined with other egregious deficiencies, led to denial of fee request). Furthermore, Attorney Levi works for GLBTQ Legal Advocates & Defenders, Inc., which is registered with the Secretary of State's Office as a non-profit corporation. As such, she should be compensated at a fee rate comparable to Massachusetts Legal Services attorneys, and certainly at no higher rate that an attorney employed by Prisoners' Legal Services of MA.

Also, plaintiff cannot "show merely that higher rates exist in the market;" rather, she must show that "'the requested rates are in line with those prevailing in the community *for similar services* by lawyers of reasonably comparable skill, experience and reputation.'"

16

*Guckenberger v. Boston Univ.*, 8 F.Supp.2d 91, (D. Mass. 1998), *quoting Blum*, 465 U.S. at 895 n. 11 (emphasis added in *Guckenberger*).  Plaintiff has done nothing of the sort here.  She has merely supplied the Court with her own attorney's attestation that the requested rates. (Document No. 120)  These conclusory statements tell the Court nothing about whether the "similarly-experienced attorneys at comparable law firms" are performing *similar services*.  *See Wilson v. McClure,* 135 F.Supp.2d 66, (D. Mass. 2001) (list of Boston law firm hourly rates from *Massachusetts Lawyers Weekly* not useful in setting hourly rate because "such figures simply do not speak to whether those lawyers provide similar services").

The Court "should not accept attorney submissions at face value but rather should 'assign more realistic rates to time spent.'" *Guckenberger*, 8 F.Supp.2d at 103, *quoting Coutin v. Young & Rubicam P.R., Inc.,* 124 F.3d 331, 337 (1st Cir. 1997).  *See Grendel's Den, Inc. v. Larkin*, 749 F.2 945, 955-956 (1st Cir. 1984) (reducing hourly rate awarded to acknowledged constitutional scholar Lawrence Tribe by $100 where the record contained no evidence of comparable rates for other such scholars and "Professor Tribe was not a particularly experienced litigator during this period").

In other ADA cases in this jurisdiction that were successful, unlike plaintiff, the Court has awarded attorney fees at the hourly rate of $300 per hour for a case that spanned a longer time period than the present case (2013-2016) but settled short of trial. Marshall v. Rio Grande River Limited Partnership, 162 F.Supp. 3d 54, 59-60 (D.Mass. 2016).  In Marshall, the Court noted that the reasonable rate of compensation was $300 per hour in a more complex ADA case that had gone to trial, Norkunas v. HPT Cambridge, L.L.C., 969 F.Supp.2d 184 (D.Mass. 2013),.

In other prison litigation at which a state inmate won damages at a jury trial during the same time period (2012-2016), the court rejected the billed rate of $400 per hour, and reduced it

to $350 per hour for the primary counsel, with an additional rate for trial second chair at $275 per hour. *Giorgio et al. v. Duxbury*, USDC Civil Action No. 12-11171-LTS (D.Mass. 2016) (Sorokin, J.). The Court noted in its decision that although it had awarded $400 per hour in a prior case, the prior case had involved "substantially greater complexity" in both facts and legal issues, citing *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015).

Therefore, the defendant contests the hourly rates of $475 per hour and $600 per hour sought by plaintiff's attorneys Downs and Levi, and request that the Court reduce the hourly rate to $350 per hour for Attorney Downs and $300 per hour for Attorney Levi as reasonable rates for the time period as set forth in other litigation of this type.

## IV.  "DUPLICATIVE, UNPRODUCTIVE, EXCESSIVE OR OTHERWISE UNNECESSARY" HOURS MUST BE ELIMINATED.

Related to, but independent of, the degree of success, hours spent on tasks that are "duplicative, unproductive, excessive, or otherwise unnecessary" must be excluded. *Grendel's Den*, 749 F.2d at 950. *See Alfonso*, 66 F.Supp.2d at 192 (same).  Thus, the Court may disallow time spent litigating failed claims, subject to interconnectedness, and may also adjust the lodestar itself based on multiple factors including degree of success obtained and "the time and labor actually required for the efficacious handling of the matter." *Torres-Rivera*, 524 F.3d at 336.

A trial court "should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." *Gay Officers Action League*, 247 F.3d at 297. *See Hart*, 798 F.2d at 523 (dual attendance at motion hearings "may have been good experience for the onlooker; it did not advance the case.").  While "there is no mathematically precise formula for staffing complex litigation," the District Court must evaluate the staffing needs, the reasonableness of the attorneys' handling of the case and "'the quality and the relevance of the services rendered.'"

*See Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 14 (1st Cir. 2011), *quoting Gay Officers Action League,* 247 F.3d at 298.  "Everything turns on the reasonableness of the staffing patterns employed and the overall time spent."  *Hutchinson*, 636 F.3d at 14-15.

"But just as a criminal defendant is entitled to a fair trial and not a perfect one, a litigant is entitled to attorney's fees under 42 U.S.C. § 1988 for an effective and completely competitive representation but not one of supererogation."  *Grendel's Den,* 749 F.2d at 953-954.  *See Guckenberger*, 8 F.Supp.2d at 104 (same).  "Where tag teams of attorneys are involved, fee applications should be scrutinized with especial care.  Moreover, the level of scrutiny should increase in direct proportion to the number of lawyers employed."  *Gay Officers Action League*, 247 F.3d at 298.  *See Grendel's Den,* 749 F.2d at 953 (seeing "no justification for the presence of two top echelon attorneys" at each oral argument); *King v. Greenblatt*, 560 F.2d 1024 (1st Cir. 1977) ("The time of two or three lawyers in a courtroom or conference when one would do may obviously be discounted."); *Lipsett,* 975 F.2d at 938 ("A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism.").

In the present case, there were seventy-nine time entries that are duplicative tasks, including court appearances, research, and drafting legal documents. These entries consist of 166.6 hours, $56,790.00, billed by plaintiff's counsel.  (Exhibit A, attached hereto).  Several of the duplicates noted are tasks that the same attorney repeated on different days. Other entries are from different attorneys who attended the same court appearance, did similar research for the same motion, or drafted the same motion.  (Exhibit A, attached hereto).

Because of the frequent use of block billing, one cannot determine the amount of time spent on calls or conferences in each instance.  (Exhibit A, attached hereto).  "Excessive

telephone calls and conferences represent a duplication of effort for which less than full fare should logically be charged for all participants." *Guckenberger*, 8 F.Supp.2d at 101 (noting that courts in this circuit, "faced with similar facts, have significantly reduced the charges for co-counsel conference time"). *See, e.g., Hart*, 798 F.2d at 523 (165 hours of telephone calls to be excessive and duplicative); *Weinberger v. Great N. Nekoosa Corp.*, 801 F.Supp. 804, 819 (D. Me. 1992) (where fee-seeker in shareholder suit provided "sparse" records, court excluded 80% of time billed for telephone conferences and also reduced co-counsel conferences by 80%), *aff'd*, 47 F.3d 463 (1st Cir. 1995). Where an attorney has used "block billing" and failed to differentiate time spent on particular tasks, the Court has discretion to disallow the entries. *See Domegan*, 972 F.2d at 425 (disallowing 37.8 hours of time for mixed entries); *Furtado*, 635 F.2d at 922 (disallowing compensation for mixed entry detailing conference and travel where entry did not indicate the time spent in conference). Alternatively, the Court may discount the time.

Given the excessive, duplicative, and/or block time reported by plaintiff's counsel, fees and costs for such time should not be recoverable.

## V.    NON-CORE WORK WARRANTS COMPENSATION AT A REDUCED RATE.

Where a federal claim is at issue, courts have long distinguished between "core" and "non-core" legal work in determining attorneys' fees awards. *Brewster v. Dukakis*, 3 F.3d 488, 492 n. 4 (1st Cir. 1993); *see, e.g., Parker*, 310 F.Supp.2d at 391; *Alfonso*, 66 F.Supp.2d at 195-197; *Guckenberger*, 8 F.Supp.2d at 101. The Court should follow that discretionary practice here. "Core work 'includes legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring and implementation of court orders.'" *Guckenberger*, 8 F.Supp.2d at 101, *quoting Brewster*, 3 F.3d at 491 n. 4. "Non-core work"

includes time spent writing and reviewing correspondence and telephone calls including those to opposing counsel and co-counsel, conferences or consultations with third parties, meetings with plaintiffs other than preparing for their depositions or immediately before trial, meetings with co-counsel after trial, responding to discovery requests, writing file memoranda, scheduling and travel. *Alfonso,* 66 F.Supp.2d at 196; *Guckenberger,* 8 F.Supp.2d at 101; *see Brewster,* 3 F.3d at 491 n. 4. The approved First Circuit standard rate for non-core work is two-thirds the billing rate for core work. *Alfonso*, 66 F.Supp.2d at 197.

Plaintiff's attorneys have not differentiated between core and non-core work, but a review of the billing shows that, of the four hundred and eighty-one time entries, three hundred and ninety-three entries appear to be non-core and/or block billing. These entries consist of 504.7 hours, $188,712.50, billed by plaintiff's counsel. (See Exhibit A, attached hereto) These fees should be reduced to reflect the rate for non-core work, i.e. at two-thirds of the hourly rate that the Court deems reasonable.

## Conclusion

For the foregoing reasons, the Court should deny plaintiff's request for attorneys' fees and costs. Should the Court consider some award of attorneys' fees, the Court should limit the attorneys' fees as described above.

Dated: June 18, 2019

Respectfully submitted,

NANCY ANKERS WHITE
Special Asst. Attorney General

/s/ Jennifer M. Staples
Jennifer M. Staples, Counsel
BBO# 631399
Department of Correction Legal Division
70 Franklin Street, Suite 600

Boston, Massachusetts 02110
(617) 727-3300, Ext. 1144
Jennifer.Staples@DOC.state.ma.us

## CERTIFICATE OF SERVICE

I, Jennifer M. Staples, counsel for the defendants, hereby certify that on June 18, 2019, I served a copy of the forgoing document on the all parties through the Court's electronic filing system (ECF).

Dated: 6/18/2019                              /s/ Jennifer M. Staples
                                             Jennifer M. Staples