UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE,<br><br>  Plaintiff,<br><br>  v.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTION; THOMAS A. TURCO III; SEAN MEDEIROS; JAMES M. O'GARA JR.; and STEPHANIE COLLINS,<br><br>  Defendants. | Civil Action No. 17-12255-RGS<br><br>**LEAVE TO FILE GRANTED ON 6/21/19** |

**PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Defendants' attacks against the reasonable fee proposal requested by Ms. Doe should be rejected. This is a unique case establishing important rights and remedies for transgender persons, like Ms. Doe, whose medical condition require reasonable accommodation while in prison. Plaintiff's fee request was carefully considered and narrowly tailored to ensure the request covered only core tasks performed by the leading team members involved, over a narrowed time period, and at significantly reduced rates that are well within an appropriate range for a case of this complexity, novelty, and level of success. Defendants' primary assertion – that "an award of attorney's fees and costs should be denied" altogether (D.I. 124 at 1) – is contrary to law, given that, as discussed below, Ms. Doe indisputably "prevailed" in this case having secured an injunction and being transferred to MCI-Framingham, the women's corrections facility, after this Court denied Defendants' motion to dismiss.

I. **MS. DOE PREVAILED IN THIS CASE BY OBTAINING PRELIMINARY INJUNCTIVE RELIEF, BY DEFEATING THE MOTION TO DISMISS AND ESTABLISHING HER RIGHT TO SUE UNDER THE ADA, AND BY OBTAINING A TRANSFER AFTER FILING HER RENEWED MOTION FOR A TRANSFER**

Defendants concede, as they must, that Ms. Doe "prevailed" in securing this Court's order requiring changes in the way Ms. Doe was being treated in the men's prison.  D.I. 124 at 5-6.  Accordingly, Defendants have no basis for their wholesale opposition to Plaintiff's motion.

In addition, Defendants mischaracterize this Court's decision on the initial motion for a preliminary injunction, stating falsely that this Court "ultimately denied plaintiff's request that the Department transfer her to MCI-Framingham." (D.I. 124 at 12).  That is not true.  In its initial order for preliminary relief, this Court merely deferred consideration of the transfer issue, stating: "[C]onsideration of further relief – in particular a transfer to MCI-Framingham – is premature and should await the resolution of the constitutional issue."  D.I. 59 at 5.  This Court then decided the constitutional issue in Ms. Doe's favor and allowed Ms. Doe's claims under the ADA to proceed.  It never denied Plaintiff's transfer request.

In its order denying the Defendants' Motion to Dismiss, this Court rejected the Defendants' arguments that Ms. Doe had no legal claim under the Americans With Disabilities Act ("ADA").  D.I. 79.  Perhaps most important, the Court rejected the Defendants' argument that the ADA excludes from its coverage claims rooted in discrimination on the basis of gender dysphoria.  *Id.* at 15-16.  The Court ruled that "the continuing re-evaluation of GD [Gender Dysphoria] underway in the relevant sectors of the medical community is sufficient, for present purposes, to raise a dispute of fact as to whether Doe's GD falls outside the ADA's exclusion of gender identity-based disorders as they were understood by Congress twenty-eight years ago."  D.I. 79 at 17.  The Court also ruled that the doctrine of "constitutional avoidance" required the

ADA claim to proceed, *id.* at 17-20, and that under the Equal Protection Clause, Ms. Doe had "met her burden" of establishing a viable claim. *Id.* at 26. Put another way, Ms. Doe prevailed on the issue of whether a transgender inmate has the right to sue under the ADA.

Defendants also ignore that Ms. Doe prevailed in this case because she sought a transfer to MCI Framingham, and as a result of her claim *ultimately obtained that transfer*. Very shortly after the Court denied the Defendants' Motion to Dismiss and ruled that the law *does* support a claim by Ms. Doe under the ADA, Ms. Doe renewed her request for a preliminary injunction, this time seeking *only* that she be transferred to the women's prison in MCI Framingham. D.I. 81. Ms. Doe's papers state: "As directed by the Court, the parties held a telephone conference to meet and confer on June 28, 2018 to assess whether the parties could agree on aspects of Plaintiff's requested injunctive relief without the Court's intervention. The communications between the parties and DOC's responses to Ms. Doe's other requests have narrowed the relief Ms. Doe seeks. *The single request for relief Ms. Doe now seeks by this renewed motion is her transfer to an appropriate women's correctional facility*." D.I. 81 at 1 (emphasis added). The renewed motion described how "Ms. Doe continues to experience discrimination by DOC and to suffer irreparable harm as a result of being a transgender woman in a men's prison. DOC has not transferred Ms. Doe to a women's facility nor has it agreed that it will do so." *Id.* at 3.

Then, on September 25, 2018, while Ms. Doe's motion seeking a transfer was still pending, the Commonwealth transferred Ms. Doe from the men's prison in Norfolk to the women's prison in Framingham. Ms. Doe had thus, through the lawsuit, and the pursuit of her preliminary injunction motion, prevailed on her claims and obtained the transfer she sought.

Notably, Defendants provide no affidavit or other evidence demonstrating that Ms. Doe's transfer to MCI Framingham was *not* a result of (i) the Court's grant of initial preliminary relief,

3

(ii) the Court's denial of the Motion to Dismiss, and (iii) the pendency of Ms. Doe's renewed Motion for Preliminary Injunction, which specifically sought an order requiring Ms. Doe's transfer.

Put simply, Ms. Doe *did* prevail in this case. Indeed, when this Court dismissed this case with prejudice on March 15, 2019 (*see* D.I. 108 & 109) this Court acknowledged that "all of the relief Doe sought in her Renewed Motion for Preliminary Injunction has been provided, including the principal request to be transferred to a women's prison." D.I. 115.

It does not matter that the Court did not issue an order to transfer Ms. Doe. A plaintiff who is prevented from seeking final relief may still be a prevailing party if a preliminary injunction was obtained based on an "unambiguous indication of [the plaintiff's] probable success on the merits," but "events outside the control of the plaintiff moot the case." *Kansas Judicial Watch v. Stout*, 653 F.3d 1230, 1238 (10th Cir. 2011); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717-18 (9th Cir. 2013) (after Plaintiff obtained a preliminary injunction, parties settled and agreed to terms that gave Plaintiff what it had intended to receive through permanent injunction; Plaintiff was considered prevailing party).

Furthermore, a party is the prevailing party when the resolution of the dispute between the plaintiff and the defendant results in a material alteration in the legal relationship between the two. *See Lefemine v. Wideman*, 568 U.S. 1, 4 (2012). The form of the relief awarded to a prevailing party is not important as long as the relief is that sought by the prevailing party. *Klamath Siskiyou Wildlands Ctr v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009).

Here, Ms. Doe obtained the relief she sought – the vindication of her rights under the Americans with Disabilities Act as a transgender woman, the alleviation of discriminatory

treatment while she was incarcerated at Norfolk, and her transfer to the women's prison in Framingham – all through this litigation. *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293 (1st Cir. 2001) (party that obtained an injunction against the enforcement of a statute was the prevailing party); *LaChance v. Comm'r of Correction*, 475 Mass. 757, 764 (2016) ("under § 1988, plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit") (internal quotation marks omitted).

**II.     THE FEES AND EXPENSES REQUESTED BY MS. DOE'S COUNSEL ARE REASONABLE. THEY HAVE BEEN VOLUNTARILY REDUCED BY COUNSEL, AND ARE WITHIN THE PREVAILING HOURLY RATES IN THIS DISTRICT FOR SIMILAR SERVICES BY COMPARABLY CREDENTIALED COUNSEL**

Defendants do not dispute that in civil rights cases a "reasonable" fee is to be a "fully compensatory fee," *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), and is to be "calculated on the basis of rates and practices prevailing in the relevant market." *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989). As the First Circuit has stated: "'awards in favor of prevailing civil rights plaintiffs are virtually obligatory.'" *Diaz-Rivera v. Rivera-Rodriguez*, 377 F. 3d 119, 124 (1st Cir. 2004) (quoting *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293 (1st Cir. 2001)). Here, Ms. Doe's fee request is tailored to a specific time period, beginning with the preparation and filing of the complaint and ending at the time Ms. Doe was transferred to MCI Framingham.[1] The request seeks recovery for much less than the number of hours counsel spent on the case. The request is also based on claims for fees only for certain core attorneys (and even then with time reduced to focus on core activities).

---

[1] PLS and GLAD request fees staring from July 2017, as the attorneys at both organizations were doing preparation work that ultimately enabled Ms. Doe to file the Complaint. Goodwin requests fees starting in November 2017, around the time the Complaint was filed.

5

### A. The Attorneys Involved in this Complex and Novel Case Were Highly Qualified And Have Carefully Limited The Scope of the Fees They Are Seeking.

Here, there is no real dispute that Ms. Doe was able to achieve the results obtained in significant part because of the expertise of the attorneys representing her with respect to the Federal law and state corrections practices. The declarations of Jennifer Levi of GLAD, Elizabeth Matos of PLS, and Anthony Downs of Goodwin explain in detail how the fees were calculated for this case, D.I. 120-2, D.I. 120-5, & D.I. 120-8, including how the request has been pared down to focus only on core work, and on the specific time period between the preparation and filing of the Complaint and Ms. Doe's transfer to MCI Framingham[2]. Defendants provide no counter-affidavits contesting any of the statements made in these supporting affidavits.

The Court should reject the implication by Defendants that in this case the lawyers for Ms. Doe were "tag teaming" on this case by, *e.g.*, more than one lawyer appearing at court appearances, doing research or drafting legal documents. D.I. 124 at 19. The reality is that this is an unprecedented and unique case. Expertise was required in the area of anti-discrimination law (through GLAD), the procedures and practices of prison officials in Massachusetts and the treatment of inmates while in prison (through PLS), in case strategy, legal arguments, and briefing (GLAD, PLS and Goodwin). This case did not involve excessive hearings, as there was only one substantive hearing. The legal papers that were filed were of necessity, complex and detailed, given the importance of this case and the complexity and novelty of the issues raised.

---

[2] Plaintiff also notes that the Declaration of Jennifer Levi (D.I. 120-5) details the fact that another GLAD attorney contributed significant hours to the case but did not submit fees as part of this petition to ensure no duplicative billing.

### B. The Rates Proposed by Counsel Are Reasonable and In Line with Rates Approved by This and Other Courts in Boston in Fee Awards Over the Last Six to Eight Years.

As described below and in the affidavits filed with the Court, the Court should approve the rates sought for the GLAD, PLS and Goodwin attorneys in this case.

First, the Court should reject Defendants' assertion that the Plaintiff's fee requests are unreasonable because they do not comport with the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997(e )(1). *See* D.I. 124 at 13. Because Ms. Doe obtained relief pursuant to the ADA, which has its own fee provision, her attorneys' fees are not limited by the PLRA. *See Rodriguez v. County of Los Angeles*, 891 F. 3d 776, 808 (9th Cir. 2018) ("the PLRA attorney's fees cap does not apply even to federal law claims for which attorney's fees *are* available under 42 U.S.C. § 1988, as long as those claims are brought under statutes with their own attorney's fee provisions")*; Armstrong v. Davis*, 318 F.3d 965, 973-74 (9th Circ. 2003) ("The PLRA cap on attorney's fees, therefore, does not apply to fees awarded under the ADA or the RA."); *Beckford v. Irvin*, 60 F. Supp. 2d 85, 88 (W.D.N. Y. 1999) ("The PLRA does not limit the award of attorney's fees to a prevailing plaintiff whose award is authorized under a statute separate from § 1988.").

Second, a series of decisions in Massachusetts in recent years confirms that the rates sought by experienced counsel in this case are appropriate for a fee award and in line with other recent fee awards in this District. Ms. Doe's opening brief, D.I. 120-1 at 10, lists a number of those cases, establishing exemplary attorney rates in the Boston area at the time, including rates that encompass the rates sought here by the undersigned counsel. *See, e.g.*, *Aguiar Dias v. De Souza*, 2016 WL 6821067, at *3 (D. Mass. Nov. 17, 2016) ($400 per hour for partner level attorney in Boston); *Smith v. Jenkins*, 818 F. Supp.2d 336, 346 (D. Mass. 2011) (Stearns, J.)

($450 and $350 per hour for a partner and $150 for an associate); *Tuli v. Brigham & Women's Hospital, Inc.*, No. 07-cv-12338, 2009 WL 10693567, at *2 (D. Mass. Jun. 8, 2009) (in 2009, approving rates ranging from $570 to $735 for partners and $250 to $495 for associates).  State courts in Massachusetts have approved comparable rates.  *See Juan Juan Chen v. Wen Jing Huang*, 2016 WL 4729307, at *9 (Mass. Super. Sept. 7, 2016) ($350 for a junior associate and $500 for a senior associate); *Fronk, et al. v. Fowler, et al.*, 22 Mass. L. Rptr. 366, 2007 WL 1130381, at *5-6 (Mass. Super. Feb. 23, 2007) (rates from $450 to $575 for partners and $195 to $360 for associates).  Even Defendants cite cases establishing rates in the range of $300 - $350 per hour for two ADA cases and a case involving a prison inmate.

Completely lacking in Defendants' opposition to the fee request is any *evidence* that the rates and fees requested by Ms. Doe's counsel in this case are not reasonable.  Defendants complain about "punitive" fees, as opposed to compensatory, but they provide no evidence that the fees in this case – and the narrowing of the scope of fees reflected in counsel's fee submissions – are in fact "punitive" in any way.

Defendants' heavily annotated spreadsheets should be given little or no weight.  None of the many annotations that Defendants' counsel made to nearly every entry on the spreadsheets are backed up by any affidavit or any *evidence* that there is anything amiss or improper about the various entries.

Finally, there is no reason why the fee award should not include the fees of the two experts who were retained by Ms. Doe and whose testimony was highly relevant to this case.  These expert reports – by Dr. Ettner and Mr. Aiken – addressed specific issues in the case that were reviewed by the Court in connection with the Court's decision on the motion for preliminary injunction and the motion to dismiss and were specifically tied to the issues in this

8

case. *See* D.I. 35-1 & 35-2; D.I. 65. The total expense for the experts, at $11,740.94 is reasonable and justified. No other costs that were incurred in this case are being sought by this motion.

## CONCLUSION AND SUMMARY

Wherefore, for all the reasons stated herein, Plaintiff Ms. Doe respectfully requests that the Court award payment for the following attorneys' fees and litigation expenses:

| Attorney fees of Jennifer Levi | $95,400.00 |
|---|---|
| Attorney fees of PLS | $30,445.50[3] |
| Attorney fees of Goodwin | $102,562.50 |
| Costs | $11,740.94 |
| **Total** | **$240,148.94** |

---

[3] Upon further review, PLS removed the following billing entries from its fee request:

| Timekeeper | Date | Hours | Rate | Cost | Activity Type/Notes |
|---|---|---|---|---|---|
| Kate Piper | 10/19/2017 | 0.1 | $125.00 | $12.50 | Telephone call: w/ Sherri Elliot re: media |
| Kate Piper | 11/29/2017 | 0.3 | $125.00 | $37.50 | Telephone call: calls w/ probate court re: AR name change |
| Lizz Matos | 5/17/2018 | 2.9 | $300.00 | $870.00 | Visit to MCI-Norfolk: interviewed Plaintiff and other potential plaintiffs |

Respectfully submitted,

Jane Doe

By her attorneys,


/s/ J. Anthony Downs
J. Anthony Downs (BBO# 552839)
Louis L. Lobel (BBO# 693292)
Ashley M. Drake (BBO# 694731)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
E-mail: jdowns@goodwinlaw.com
tcarney@goodwinlaw.com
llobel@goodwinlaw.com
amoore@goodwinlaw.com

Jennifer Levi (BBO# 562298)
Bennett Klein (BBO# 550702)
GLBTQ Legal Advocates & Defenders
30 Winter Street, STE 800
Boston, Massachusetts 02108
Tel.: +1 617 426 1350
Email: jlevi@glad.org
bklein@glad.org

Elizabeth Matos (BBO# 671505)
Prisoners' Legal Services
50 Federal Street, 4th Floor
Boston, MA 02110
Tel.: +1 617 482 6383
E-mail: lmatos@plsma.org

Dated: July 1, 2019

## CERTIFICATE OF SERVICE

      I, J. Anthony Downs, do hereby certify that the foregoing document is being filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 1, 2019.  The foregoing document will be available for viewing and downloading from the ECF system.

                                            */s/* J. Anthony Downs